# EXHIBIT I

Location: NASD > Notices > 2001 > 01-79 NASD Reminds Members Of Their Responsibilities Regarding Private Securities Transactions Involving Notes And Other Securities And Outside Business Activities

‹‹ Previous                                                                                                                                           Next

## 01-79 NASD Reminds Members Of Their Responsibilities Regarding Private Securities Transactions Involving Notes And Other Securities And Outside Business Activities



NASD Rules (2 links)

View PDF File

**INFORMATIONAL**

Selling Away And Outside Business Activities

| SUGGESTED ROUTING | KEY TOPICS |
|---|---|
| Executive Representatives<br>Insurance<br>Legal & Compliance<br>Operations<br>Registered Representatives<br>Senior Management | Outside Business Activities<br>Private Securities Transactions<br>Promissory Notes<br>NASD Rule 3030<br>NASD Rule 3040<br>Supervision |

**Executive Summary**

NASD Regulation, Inc. (NASD Regulation) has brought a number of formal disciplinary actions against registered representatives for selling securities without prior notice to and approval from the representative's employer member firm and for engaging in outside business activities without prior notice to the employer member firm. A registered person who sells a security away from his or her firm without first obtaining written approval from the firm violates NASD Rule 3040, and a registered person who engages in an outside business activity without prior notice to his or her firm, including the sale of non-securities products, violates NASD Rule 3030.

Recently, NASD Regulation has seen an increase in selling away involving independent insurance agents registered solely as Series 6 Investment Company and Variable Contracts Products representatives. These Series 6 representatives are increasingly being targeted by issuers, promoters, and marketing agents to sell short-term promissory notes to their customers. Although in many instances these notes are securities, promoters of these products are marketing them to registered persons as nonsecurities products that do not have to be sold through a broker/dealer by a registered person. In a significant number of cases, associated persons have sold these notes to their customers away from their firms and without firm approval as required by Rule 3040.

Associated persons are required, either under Rule 3030 or Rule 3040, to report, in writing, any and all types of business that they plan to conduct away from their firms, whether or not it involves a security. Rule 3040 requires associated persons to obtain written approval from their firms before they sell any security, including securities in the form of promissory notes, and Rule 3030 requires prompt written notice to a member of any outside business activity for which an associated person receives compensation, including the sale of a promissory note that is not a security. Since there has been some confusion among associated persons as to whether particular financial instruments are securities, this *Notice* advises associated persons to provide written notice to their firms **before** they engage in the sale of any financial instrument.

This *Notice* also reminds members that they should: (1) review their supervisory procedures to make sure that they are reasonably designed to achieve compliance with NASD Rules 3030 and 3040 regarding outside business activities and private securities transactions; and (2) appropriately educate their associated persons regarding the requirements of Rules 3030 and 3040.

**Questions/Further Information**

Questions concerning this *Notice* may be directed to Shirley H. Weiss, Associate General Counsel, Office of General

Counsel, NASD Regulation, at (202) 728-8844.

**Private Securities Transactions Involving Promissory Notes Have Significantly Increased**

There has been a significant increase in private securities transactions involving the sale of promissory notes. In 2000, NASD Regulation brought more than 100 formal disciplinary actions involving violations of NASD Rule 3040, including cases against 39 individual representatives who sold more than $12 million in notes to more than 300 investors. In 2000, the Securities and Exchange Commission (SEC), acting in conjunction with state securities regulators, also brought a series of disciplinary actions against hundreds of individuals and entities that had raised more than $300 million from the sale of fraudulent promissory notes to thousands of investors.[1]

**Types Of Notes Being Marketed To The Public Through Associated Persons**

Various types of schemes are being marketed to the public through associated persons, including promissory notes, payphone and ATM schemes, prime bank schemes, and Ponzi schemes.[2] Promoters also are actively marketing associated persons to sell "viatical settlements" away from their firms.[3] Members and associated persons should be aware that, depending on its structure, a viatical product may or may not be a security.[4]

Members and associated persons should be on the lookout for the various types of fraudulent statements that are used to market these notes to associated persons. Associated persons may be falsely told that the notes are low risk, with "guaranteed," high returns, or that they are collateralized. Associated persons also are being told that the notes are not securities, and therefore, persons selling them are not required either to be registered or to report the sales to their firms. Associated persons often are urged to invest themselves and, in some instances, are being offered large commissions for selling to their customers. Associated persons can avoid the regulatory pitfalls associated with selling notes away from their firms by first obtaining written approval from their firms, as required by Rule 3040, before they sell any note.

**How Can An Associated Person Determine Whether A Note Is A Security**

There appears to be some uncertainty among associated persons as to whether notes being sold to the public are securities, especially when issuers and marketing agents may insist that they are not. Except for some commercial loans,[5] most notes are securities. A promissory note is most likely a security if the seller is selling notes to the general public to raise money for the general use of a business enterprise and the buyer is lending money as an investment and is interested primarily in the profit that the note is expected to generate.[6]

Thus, it is likely that promissory notes that are marketed and sold to the general public are securities, and a registered person may not sell these notes without prior notice to and the express written permission of his or her firm. Further, it is not sufficient to have a Series 6 registration to sell promissory notes. An individual who sells promissory notes to public customers must be registered as a Series 7 registered representative.

Associated persons at times solely rely on information provided to them by issuers, issuers' counsel, or promoters, and they fail to confirm the facts. NASD Regulation strongly urges registered persons not to make the assessment of whether a particular note is a security, but to give their firms the opportunity to determine whether sale of the note is merely an outside business activity or the sale of a security that requires written notice to the firm and firm permission. Associated persons are reminded that even if the product they wish to sell is a non-securities product, they may not accept compensation away from their firms unless and until they have provided prompt written notice to their firms.

**Associated Persons' Reporting Responsibilities**

Associated persons are required, either under Rule 3040 or Rule 3030, to report *any* kind of business activity engaged in away from their firms. Rule 3040 prohibits an associated person from selling any security "away" from the member firm unless the firm has authorized the associated person to make the sale. Rule 3040 applies to all sales of securities, including promissory notes that are securities. Rule 3040 ensures that, if a firm approves an associated person's participation in a securities transaction,[7] the firm assumes certain critical regulatory responsibilities that go with offering and selling securities to customers. In addition to requiring that the transactions be recorded on the firm's books and records, the firm must exercise appropriate supervision over the associated person in order to prevent violations of the securities laws. As recently stated by the SEC, Rule 3040 "protects investors from the hazards of unmonitored sales and protects the firm from loss and litigation."[8]

Rule 3040 requires registered persons to provide notice of the proposed transaction, in writing, to his or her firm, before the sale is made. The notice must describe the proposed transaction(s) in detail and the associated person's proposed

role and must also state whether the individual has received or may receive selling compensation (including any type of referral fee). Oral notice to the firm is not sufficient to meet the requirements of Rule 3040. If the associated person expects to receive compensation, the firm must advise the registered person, in writing, whether it approves or disapproves the person's participation in the proposed transaction. If the firm disapproves the person's participation, he or she may not participate in the transaction in any manner, directly or indirectly. If the member approves the person's participation in the proposed transaction, the firm must record the transaction on its books and records and supervise the person's participation in the transaction as if the transaction were executed on behalf of the member.

If the note in question is not a security, the registered person is required under Rule 3030 to provide prompt written notice to his/her member firm that he or she has accepted compensation outside the scope of his relationship with the firm. Because of the differences in the requirements of Rule 3030 and Rule 3040, it is important for registered persons to establish with their firms whether a particular note is a security and to follow the appropriate NASD rule requirements.

Associated persons are reminded that it is not sufficient to verify the non-securities status of a note solely by relying on the advice of the issuer or issuer's counsel. An associated person who attempts to conduct his or her own investigation of the issuer does so at his or her own regulatory risk, because an associated person's conclusions may be erroneous and because failure to report the proposed sales to the associated person's firm deprives the firm of the opportunity to challenge the issuer's analysis and conclusion. NASD Regulation strongly urges all associated persons to notify their firms in advance of any sales, so that the legal status of the note may be determined, and the proper notice given to the firm prior to any sales.

**Members' Supervisory Obligations**

Given the significant number of fraudulent promissory note schemes that have been uncovered, members should review their supervisory and compliance procedures to make sure that their reporting requirements are clear and complete and that each associated person receives appropriate education and training regarding the sale of notes. Problems may arise, for example, when insurance sales persons, who also are registered as Series 6 representatives, are not required by their firms to report certain outside business activities, such as the sales of other insurance products. To avoid confusion, members are urged to adopt procedures that would require registered persons to report any kind of income-producing activity.

NASD Regulation also suggests that firms review their supervisory and compliance programs to determine whether they are adequately educating their registered persons regarding the current proliferation of promissory note schemes and the importance of reporting all sales of notes under either Rule 3030 or Rule 3040. Firms should review their annual compliance checklists to make sure that their registered persons understand that all outside sales of notes, whether securities products or not, should be reported to their firms prior to any sales. Annual audits, compliance meetings, and continuing education programs also should include issues regarding the sale of notes. Firms also might consider conducting "preventive compliance conferences" that specifically address selling notes away from the firm.

**Endnotes**

[1] See NASD Regulation Investor Alert, "Promissory Notes Can Be Less Than Promised," Jan. 11, 2001, which can be found on NASD Regulation Web Site (www.nasdr.com).

[2] For a description of some of these schemes, see "Top 10 Investment Scams List Released by State Securities Regulators" which can be found on the North American Securities Administrators Association (NASAA) Web Site (www.nasaa.org).

[3] Viatical settlements are interests in the death benefits of terminally ill patients. In a viatical settlement, investors acquire fractional interests in individual insurance policies. In general, the insured gets a percentage of the death benefit in cash, and the investors get a share of the death benefit when the insured dies.

[4] See SEC v. Life Partners, Inc., 87 F.3d 356 (D.C. Cir), reh'g denied, 102 F.3d 587 (D.C. Cir. 1996); Timothy James Fergus, et al., C10990025 (NAC May 5, 2001).

[5] For example, consumer financing notes, notes secured by mortgages on homes, and short-term business notes secured by the assets of the business or an assignment of accounts receivable generally are not securities.

[6] *Reves v. Ernst & Young*, 494 U.S. 56, 64 (1990).

[7] Associated persons are reminded that "participation" in a securities transaction includes not only making the sale, but referring customers, introducing customers to the issuer, arranging and/or participating in meetings between customers and the issuer, or receiving a referral or finder's fee from the issuer.

[8] *Robin Bruce McNabb*, Exchange Act Rel. No. 43411 (Oct. 4, 2000).

Previous     Next

©2007 FINRA. All rights reserved.