UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEVEN S. NOVICK, | : ECF Case |
| Plaintiff, | : 1:07-cv-7767 (AKH)(KNF) |
| -against- | |
| AXA NETWORK, LLC, | |
| Defendant. | |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO STAY ACTION

**GUSRAE, KAPLAN, BRUNO & NUSBAUM PLLC**
120 WALL STREET
NEW YORK, NEW YORK 10005
212.269.1400
Attorneys for Plaintiff

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ................................................................................................ i

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS
PERTINENT TO THE MOTION ....................................................................................... 1

ARGUMENT........................................................................................................................ 2

    I.    SUBJECT MATTER JURISDICTION
        EXISTS PURSUANT TO 28 U.S.C. § 1332(A) ................................................... 2

    II.    DEFENDANT CANNOT COMPEL
        FINRA ARBITRATION BECAUSE IT IS
        NOT A FINRA MEMBER OR A PERSON
        ASSOCIATED WITH A FINRA MEMBER ........................................................ 2

    III.   DEFENDANT HAS NO RIGHT TO A STAY ..................................................... 7

        A.    FAA Is Inapplicable Since Defendant
              Was Not a Party to the Arbitration Agreement ............................................ 7

        B.    Judicial Discretion Militates Against a Stay ................................................ 8

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**                                                                                                        **Page No.**

American Shipping Line, Inc. v. Massan Shipping Industries, Inc,
885 F.Supp. 499 (S.D.N.Y. 1995). ....................................................................................11

AT&T Technologies, Inc. v. Communications Workers of Am.,
475 U.S. 643 (1986). ..........................................................................................................3

Burns v. New York Life Insurance Co.,
202 F.3d 616 (2d Cir. 2000). .......................................................................................4,5,6

Cantor Fitzgerald, L.P. v. Prebon Sec. (USA) Inc.,
731 A.2d 823 (Del.Ch. 1999). ..........................................................................................6

Citrus Marketing Board of Israel v. J. Lauritzen A/S,
943 F.2d 220 (2d Cir. 1991). .............................................................................................7

Dittmer v. County of Suffolk,
146 F.3d 113 (2d Cir. 1998). .............................................................................................8

Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
725 F.2d 192 (2d Cir. 1984). .............................................................................................7

Gardner v. Benefits Communications Corp.,
175 F.3d 155 (D.C. Cir. 1999). ..........................................................................................6

General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.,
891 F.Supp. 946 (S.D.N.Y. 1995). ....................................................................................8

Goldstein v. Visconti,
No. 00 Civ. 5729 (WHP) 2001 WL 585633
(S.D.N.Y. May 30, 2001). .................................................................................................5

Haviland v. Goldman, Sachs & Co.,
947 F.2d 601 (2d Cir. 1991). ......................................................................................3,4, 6

IDS Life Ins. Co. v. SunAmerica, Inc.,
103 F.3d 524 (7th Cir. 1996). .........................................................................................8,9

Ladd v. Scudder Kemper Investments, Inc.,
741 N.E.2d 47 (Mass. 2001). ............................................................................................6

Marciano v. MONY Insurance Co.,
470 F.Supp.2d 518 (E.D.Pa. 2007)......................................................................................6

McCowan v. Sears, Roebuck & Co.,
908 F.2d 1099 (2d Cir. 1990)..........................................................................................9, 10

Mehling v. N.Y. Life Ins. Co.,
163 F.Supp.2d 502 (E.D.Pa. 2001). ....................................................................................6

Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp.,
916 F.2d 402 (7th Cir. 1990). .......................................................................................9, 10

Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.,
339 F.2d 440 (2d Cir. 1964). ...............................................................................................8

Paul Revere Variable Annuity Ins. Co. v. Kirschofer,
226 F.3d 15 (1st Cir. 2000) .................................................................................................6

Phoenix Companies, Inc. v. Abrahamsen,
No. 05 Civ. 4894 (WHP)
2006 WL 2847812 (S.D.N.Y. Sept. 28, 2006). ...................................................................5

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
388 U.S. 395 (1967). ...........................................................................................................3

Sands Brothers & Co., Ltd. v. Nasser,
No. 03 Civ. 8128 (BJS)
2004 WL 26550 (S.D.N.Y. January 5, 2004). ....................................................................6

Sierra Rutile Ltd. v. Katz,
937 F.2d 743 (2d Cir. 1991). .............................................................................................12

Tays v. Covenant Life Ins. Co.,
964 F.2d 501 (5th Cir. 1992). .............................................................................................6

Thomson-CSF, S.A. v. Amer. Arbitration Assoc.,
64 F.3d. 773 (2d Cir. 1995). ................................................................................................3

Volt Info. Sciences, Inc. v. Board of Trustees,
489 U.S. 468 (1989). ...........................................................................................................3

World Financial Group, Inc. v. Steele,
2002 WL 31045354
(S.D.Ind. Aug 15, 2002). .....................................................................................................6

WorldCrisa Corp. v. Armstrong,
129 F.3d 71 (2d Cir. 1997). ...................................................................................8,9

**STATUTES & RULES**

Federal Rules of Civil Procedure
Fed. R. Civ. P. 12(b)(1)...............................................................................................1

Federal Arbitration Act
9 U.S.C. § 1 et seq......................................................................................................3

NASD RULES

General Provisions
Rule 0120(n) ..............................................................................................................6

10000 Series (Code of Arbitration Procedure)
Rule 10101 .................................................................................................................5
Rule 10201 .................................................................................................................4

120000 Series (Code of Arbitration Procedure for Customer Disputes)
Rule 12201 .................................................................................................................5

13000 Series (Code of Arbitration Procedure for Industry Disputes)
Rule 13100 .................................................................................................................5
Rule 13200 .................................................................................................................4

**OTHER AUTHORITIES**

Securities and Exchange Commission Releases

Exchange Act Release No. 34-51587 (June 15, 2005) ..............................................4
SR-NASD-2004-11; 56 Fed. Reg. 36430 (June 23, 2005) .......................................4

Exchange Act Release No. 34-44158 (Jan. 24, 2007) ...............................................5
SR-NASD-2004-011; 72 Fed. Reg. 4574-01 (Jan. 31, 2007)....................................6

Plaintiff Steven S. Novick ("Plaintiff" or "Novick") respectfully submits this memorandum of law in opposition to the motion of AXA Network, LLC ("Defendant" or "AXA Network") to dismiss Plaintiff's claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), compel arbitration pursuant to the Federal Arbitration Act and rules of the Financial Industry Regulatory Authority ("FINRA"), or alternatively, stay the action. For the reasons stated herein, Defendant's motion should be denied in its entirety.

## Introduction

The Complaint seeks declaratory relief with respect to two notes for which Defendant was the lender (Compl. ¶¶ 21-33; Ex. B; Ex. D), compensatory damages for breach of the insurance agent agreement between the parties (Compl. ¶¶ 34-41; Ex. A), and compensatory damages for Defendant's wrongful termination of Plaintiff and conspiracy to destroy Plaintiff's reputation and steal his book of business (Compl. ¶¶ 5-20; 42-57).

## Statement of Facts Pertinent to the Motion

From 2002 to 2006, Plaintiff was affiliated with AXA Network for insurance business and nonparty AXA Advisors, LLC for securities business. (Compl. ¶¶ 5, 6, 14). Plaintiff's affiliation with AXA Advisors, LLC was subject to a Registered Representative Agreement whereas Plaintiff's affiliation with Defendant was subject to a separate and distinct Agent Agreement. (Solanto Aff. ¶ 4; Compl. ¶ 22).

Defendant issued two loan notes to Plaintiff, one for $500,000 on January 15, 2003, and the other for $1 million on August 28, 2003. (Compl. ¶¶ 24-33). Defendant does not claim to have assigned either note and both provide that:

> The Undersigned irrevocably consents to the sole and exclusive jurisdiction of the Courts of the State of New York and of any Federal court located in New York in connection with any action or proceeding arising out of, or related to, this Note.

(Compl. Ex. B at 4 and Ex. D at 2).

Defendant was to reduce principal and interest due and owing under the $500,000 note based upon Plaintiff's satisfaction of sales targets. (Compl. Ex. B). Plaintiff believes he generated enough sales to offset most or all of the Note. (Compl. ¶ 28). Defendant, however, has refused to provide an accounting, thus necessitating the instant action. (Compl. ¶ 29).

## ARGUMENT

### I. SUBJECT MATTER JURISDICTION EXISTS PURSUANT TO 28 U.S.C. § 1332(a)

Defendant boldly asserts that this Court lacks subject matter jurisdiction, yet refers to no facts or authority in support of dismissal pursuant to Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction clearly exists because the Complaint pleads diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. (Compl. ¶¶ 1-3). Defendant's offers no authority whatsoever to rebut the applicability of 28 U.S.C. § 1332(a).

### II. DEFENDANT CANNOT COMPEL FINRA ARBITRATION BECAUSE IT IS NOT A FINRA MEMBER OR A PERSON ASSOCIATED WITH A FINRA MEMBER

Defendant concedes that its own contracts, that it drafted, required Plaintiff to submit this dispute to the state or federal courts of New York. (Defendant's Br. at 17-18; see also Compl. Ex. B ¶ (h) and Ex. D at 2). Although the inquiry should end there,

Defendant nevertheless moves to compel arbitration in reliance upon an arbitration clause within Plaintiff's Uniform Application for Securities Industry Registration or Transfer ("Form U4") which states:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register....

(Defendant's Br. at 10-12; Solanto Aff., Ex. A, p. 11). Defendant acknowledges that the relevant "rules" and "by-laws" in the arbitration clause are those of the NASD (now known as FINRA), specifically, the NASD Code of Arbitration Procedure for Industry Disputes (the "NASD Code"). (Defendant's Br. at 4; Murphy Aff., Ex. G).

To compel arbitration, this Court must "find that the dispute lies within the scope of the U-4 agreement that [Plaintiff] signed ...", Haviland v. Goldman, Sachs & Co., 947 F.2d 601, 604 (2d Cir. 1991), because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986). Arbitration agreements "must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." Thomson-CSF, S.A. v. Amer. Arbitration Assoc., 64 F.3d 773, 776 (2d Cir. 1995). Indeed, the purpose of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., "'is to make arbitration agreements as enforceable as other contracts, but not more so.'" Volt Info. Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 478 (1989) (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12 (1967)).

The Second Circuit has repeatedly rejected the Form U4 argument advanced by AXA Network in cases with facts strikingly similar to those herein. See Burns v. New York Life Insurance Co., 202 F.3d 616 (2d Cir. 2000) (interpreting the old NASD Code of Arbitration Procedure) and Haviland, 947 F.2d at 601 (interpreting the NYSE Arbitration Rules).[1] In Burns, like here, the plaintiff was simultaneously employed by an NASD member broker/dealer (New York Life Securities, Inc.) and an insurance company (New York Life Insurance Co.). Id. at 617. The plaintiff filed an action for employment discrimination in this Courthouse and the defendant, like here, moved to compel arbitration in reliance upon the identical Form U4 arbitration clause. Id. at 619. In Burns, like here, the relevant "rules" and "by-laws" in the arbitration clause were those of the NASD (now FINRA), specifically, the old NASD Code. Id.

NASD Rule 13200(a), entitled "Required Arbitration", requires arbitration of disputes arising out of the business activities of its members or associated persons and is between or among them. (See Murphy Aff. ¶ 4; Ex. G). In Burns, the Second Circuit interpreted the old NASD Rule 10201, entitled "Required Submission", Burns, 202 F.3d at 619-620, which is the predecessor to the current NASD Rule 13200. (Herskovits Aff. Ex. A and B).[2] With regard to industry disputes such as this, the Burns court held that only NASD members (now FINRA members) or persons associated therewith had the authority to compel arbitration in accordance with the NASD Rule 10201 (now NASD

---

[1] On January 24, 2007, the SEC approved amendments to the NASD Code thereby adopting a new "customer code" and "industry code". 72 Fed.Reg. 4574-01 (Jan. 31, 2007); Exchange Act Release No. 34-55158 (Jan. 24, 2007).

[2] In 2004, the NASD submitted to the SEC proposed rule changes to the NASD Code of Arbitration Procedure (SR-NASD-2004-011), including "an old-to-new conversion guide" for the proposed Industry Code. See 56 Fed.Reg. 36430 (Jun. 23, 2005); Exchange Act Release No. 34-51857 at 2 (Jun. 15, 2005). SR-NASD-2004-011 is available on the FINRA website and a copy of the body of which is attached as Exhibit 1 to Herskovits Aff. SR-NASD-2004-011 contains Exhibits 1 through 5 all of which are available on the FINRA website. Exhibit 4 to SR-NASD-2004-011, entitled "Old-to-New Conversion Guide" is attached as Exhibit 2 to Herskovits Aff.

Code Rule 13200). Burns, 202 F.3d at 621.[3] See also Phoenix Companies, Inc. v. Abrahamsen, No. 05 Civ. 4894 (WHP) 2006 WL 2847812, at *4 (S.D.N.Y. Sept. 28, 2006) (only NASD members or persons associated with NASD members may compel arbitration as per old NASD Rule 10201); Goldstein v. Visconti, No. 00 Civ. 5729 (WHP) 2001 WL 585633, at *4 (S.D.N.Y. May 30, 2001) (same).

The controlling issue, therefore, is whether AXA Network is a FINRA "member" or "associated person." With regard to the former, AXA Network acknowledges, as it must, that it is not a FINRA member. (Defendant's Br. at 11). With regard to the latter, the NASD Code defines an "associated person" as:

> A natural person registered under the Rules of the NASD; or [a] sole proprietor, partner, officer, director, or branch manager of a member, or a natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member....

NASD Rule 13100(a) and (r).

AXA Network, as a corporate entity, does not and cannot properly claim to be an "associated person." Although Plaintiff cannot find any cases interpreting the definition of "associated person" under the new NASD Code, the Second Circuit interpreted a materially identical definition of "associated person" in the NASD By-Laws and held that it is limited to natural persons. Burns, 202 F.3d at 620.[4] The First, Fifth and D.C.

---

[3] The Court distinguished old NASD Code Rule 10101, "matters that *may* be arbitrated", versus old NASD Code Rule 10201, "parties that may *compel* arbitration." Id. at 619 (emphasis in original). Old NASD Code Rule 10101 is now in the NASD Customer Code as Rule 12201, entitled Elective Arbitration. Comparison Chart of old and new NASD Arbitration Codes for Customer Disputes, FINRA website at http://www.finra.org/web/groups/rules_regs/documents/rule_filing/p018366.pdf at p. 25 and Exchange Act Release No. 34-55158 at 11 (Jan. 24, 2007).

[4] Since the old NASD Code did not define "associated person", the Burns court looked to the NASD By-Laws which then defined the operative language as:

Circuits have reached the same conclusion, as have other courts throughout the country. See Paul Revere Variable Annuity Ins. Co. v. Kirschofer, 226 F.3d 15, 20-21 (1st Cir. 2000) (definition of associated person excludes corporate entities); Tays v. Covenant Life Ins. Co., 964 F.2d 501, 503 (5th Cir. 1992) (per curiam); Gardner v. Benefits Communications Corp., 175 F.3d 155, 162 (D.C. Cir. 1999). See also Sands Brothers & Co., Ltd. v. Al Nasser, No. 03 Civ. 8128 (BSJ) 2004 WL 26550, at *4 (S.D.N.Y. Jan. 5, 2004); Marciano v. MONY Insurance Co., 470 F.Supp.2d 518, 527 (E.D.Pa. 2007); Mehling v. N.Y. Life Ins. Co., 163 F.Supp.2d 502, 511 (E.D.Pa. 2001); World Financial Group, Inc. v. Steele, 2002 WL 31045354, at *3 (S.D.Ind. Aug. 15, 2002); Cantor Fitzgerald, L.P. v. Prebon Sec. (USA) Inc., 731 A.2d 823, 828 (Del.Ch. 1999); Ladd v. Scudder Kemper Investments, Inc. 741 N.E.2d 47, 50 (Mass. 2001).[5] Moreover, had the NASD intended the term "associated person" to include corporate entities it would have explicitly included them within the definition, as it did when defining the word "person" in its General Provisions to "include any natural person, partnership, corporation, association, or other legal entity." NASD Rule 0120(n) (April 2007). Further, FINRA itself confirmed that "associated person", as defined in the new NASD Code, must be a natural person. (Herskovits Aff. ¶ 5, Ex. 4). Therefore, in accord with Burns and

---

> [A] sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member....

Burns, 202 F.3d at 620.

[5] In SR-NASD-2004-011, the NASD states that the definition of "person associated with a member" within the new NASD Code based on the definition found within the NASD By-Laws. Comparison Chart of old and new NASD Arbitration Codes for Industry Disputes, Ex. 3, FINRA website at http://www.finra.org/web/groups/rules_regs/documents/rule_filing/p009298.pdf at p. 126. (A copy of the relevant section is attached as Exhibit 3 to Herskovits Aff.).

Haviland, AXA Network cannot compel FINRA arbitration, since to do so would violate NASD Rule 13200 which is incorporated by reference in the Form U4 arbitration clause.

Not a single case Defendant relies upon undertook the requisite Form U4/NASD Rule 10201 (or 13200) analysis needed to compel arbitration of the instant dispute. Accordingly, Defendant's "alternative estoppel" theory is unavailing as it stems from distinguishable cases interpreting arbitration agreements which bear no relation to the arbitration clause or NASD rules at issue.

### III.    DEFENDANT HAS NO RIGHT TO A STAY

#### A.    FAA is Inapplicable Since Defendant Was Not a Party to the Arbitration Agreement

Defendant moves to stay this dispute pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. (Defendant's Br. at 20). However, to seek a stay under the Federal Arbitration Act, the movant must be a party to the agreement to arbitrate. Citrus Marketing Board v. J. Lauritzen A/S, 943 F.2d 220, 224-25 (2d Cir. 1991). Defendant was not a party to the Form U4 – nor does it claim to be – and is thus ineligible for a stay pursuant to 9 U.S.C. § 3. Furthermore, for the reasons previously addressed, the instant dispute is not referable to arbitration in any event, since to do so would violate the NASD rules incorporated within the arbitration clause Defendant relies upon. (Point II, *infra*). Absent a right compel arbitration, a stay is not authorized under 9 U.S.C. § 3. Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 725 F.2d 192, 195 (2d Cir. 1984) ("Since [Plaintiff] has no present right to compel arbitration, [Plaintiff] is not entitled to a stay under Section 3.").

Likewise, Defendant's reliance upon General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp., 891 F.Supp. 946, 954-55 (S.D.N.Y. 1995) is misplaced. General Textile merely states that a court can stay an entire action if certain claims are arbitrable while others are not. Id. at 954. None of the claims here are arbitrable and, thus, General Textile has no application.

### B. Judicial Discretion Militates Against a Stay

Defendant lastly moves for a stay pursuant to the Court's inherent power to control its docket. (Defendant's Br. at 20-21). Defendant relies entirely upon *dicta* in WorldCrisa Corp. v. Armstrong, 129 F.3d 71 (2d Cir. 1997) which states:

> In IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524 (7th Cir. 1996), Chief Judge Posner noted that where a party to an arbitration agreement attempts to avoid that agreement by suing a related party with which it has no arbitration agreement in the hope that the claim will be adjudicated first and have preclusive effect in the arbitration, '[s]uch a maneuver should not be allowed to succeed, [and] ... is blocked ... by the principals of parallel proceeding abstention, which ... require the court to stay the proceedings before it and let the arbitration go forward unimpeded.'

Id., at 76.

Parallel proceedings abstention "may be ... appropriate where the pending proceeding is an arbitration in which issues involved in the case may be determined." Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir. 1964). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998). Here, however, no "parallel" proceeding exists

because the arbitration claim was withdrawn. (Herskovits Aff. ¶ 2). Nevertheless, even if there were a parallel proceeding, abstention is clearly not warranted.

WorldCrisa quoted from IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524 (7th Cir. 1996), a case which is instructive on parallel proceedings abstention. In IDS Life, the Seventh Circuit affirmed the district court's denial of the defendants' motion for a stay pending arbitration. IDS Life, 103 F. 3d at 525. While the underlying motion was framed along Federal Arbitration Act grounds, the Seventh Circuit remarked that certain of the defendants could also have moved for a stay under the doctrine of abstention. Id. at 530. The Court noted that abstention may be applicable in "evasion" cases wherein "a party to an arbitration agreement, trying to get around it, sues not only the other party to the agreement but some related party with which it has no arbitration agreement, in the hope that the claim against the other party will be adjudicated first and have preclusive effect in the arbitration." Id. The IDS Life court cited two such "evasion" cases, Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp., 916 F.2d 402 (7th Cir. 1990) abrogated on other grounds IDS Life, 103 F. 3d at 524 and McCowan v. Sears, Roebuck & Co., 908 F.2d 1099 (2d Cir. 1990).

These "evasion" cases are inapposite to the facts at bar. In Mages, the plaintiff was the holder of a note that filed suit against the guarantor of the note. Mages, 103 F.2d at 402-04. The defendant moved for a stay pending the outcome of arbitration between the plaintiff and the defendant's subsidiary, the debtor under the note. Id. Although the plaintiff and the subsidiary had a binding arbitration agreement, no such clause existed in the Guaranty Agreement between the plaintiff and defendant. Id.

The Seventh Circuit, interpreting McCowan, held that a stay would be appropriate since:

> As in McCowan, the claim in this case requires a showing of liability against MC [the subsidiary], an undisputed party to the arbitration agreement, *as a predicate* to recovery against Thrifty [the guarantor], a disputed party to the arbitration agreement. Also as in McCowan, there is a potential for impairment of the issues before the arbitrator due to the collateral estoppel effect of the Mages-Thrifty litigation....
>
> The litigation against Thifty, as in McCowan, is an attempt by the plaintiffs to evade the agreed upon resolution of their disputes in the arbitration forum by introducing the identical claim in a judicial forum *against a party who is ultimately responsible for the arbitrating party's acts.*

Mages, 103 F.2d at 407. (emphasis added).

In McCowan, the plaintiffs had a brokerage account with Dean Witter which was governed by an agreement with an arbitration clause. McCowan, 908 F.2d at 1100. In addition to claims asserted against Dean Witter in arbitration, the plaintiffs brought suit against Sears and Dean Witter, alleging "controlling person liability," although damages were sought only against Sears. Id. The plaintiffs attributed no fraudulent conduct to Sears and agreed that recovery against Sears was impossible "unless plaintiffs first prove their claim against Dean Witter." Id. at 1106. Although the plaintiffs had no arbitration agreement with Sears, the Second Circuit stayed the lawsuit because the arbitrable claims "would be impaired since any issues determined against Dean Witter in court proceedings ... could have collateral estoppel effect on the arbitration." Id. at 1108.

The distinctions are substantial between the facts at bar and those of the "evasion" cases, which exclusively concerned vicarious liability claims. As set forth below,

- 10 -

Plaintiff's claims against AXA Network concern the direct actions and responsibilities of AXA Network, not some third party:

- Plaintiff seeks declaratory relief with regard to two promissory notes in which Defendant was the lender. (Compl. ¶¶ 21-33). This relief is entirely distinct from that sought by Plaintiff in arbitration and Defendant does not claim otherwise.

- Plaintiff asserts a breach of contract claim against AXA Network regarding its Agent Agreement with Plaintiff. (Compl. ¶¶ 34-41). AXA Advisors was not a party to that contract and bears no liability, collateral or otherwise, should Plaintiff prove AXA Network's breach.

- Likewise, Plaintiff's claims for unfair business practices (Compl. ¶¶ 42-45) and tortious interference with prospective business relations (Compl. ¶¶ 46-49) stand alone. Proof of one company's actions, duties or business practices certainly cannot be attributed to another.

- With regard to the final two counts, Plaintiff cannot prove the aiding and abetting claims without proving that AXA Network's actions substantially and materially damaged Plaintiff.

The movant for a stay pursuant to the court's inherent powers must establish first "whether there are issues common to the arbitration and the court proceeding, and second, whether those issues will be finally determined by the arbitration." American Shipping Line, Inc. v. Massan Shipping Industries, Inc., 885 F.Supp. 499, 502 (S.D.N.Y. 1995). Even if the first prong was satisfied – which Plaintiff disputes – the second prong is not because the arbitration was withdrawn. As the Second Circuit has held, differences between parties and issues in arbitration militates against a stay and "undermines the

rationale the arbitration will have an effect on the stayed action." <u>Sierra Rutile Ltd. v. Katz</u>, 937 F.2d 743, 750 (2d Cir. 1991). Given the substantial differences between the proceedings, a stay is clearly not warranted.

## CONCLUSION

Plaintiff and Defendant are counterparties to three contracts at issue (Compl., Ex. A, B and D), two of which having broad choice of forum provisions. (Compl. Ex. B ¶ (h) and Ex. D at 2). Defendant drafted all three contracts and required that Plaintiff submit to the jurisdiction of the state or federal courts of New York, even though Plaintiff was domiciled in Connecticut and could otherwise have brought suit in a Connecticut court. Defendant cannot now be heard to complain when Plaintiff seeks to enforce contractual provisions that Defendant itself demanded from the outset. Inequity and injustice would clearly befall Plaintiff if Defendant's motion was granted.

For the reasons set forth herein, Defendant's motion to dismiss and to compel arbitration, or alternatively, to stay action should be denied in its entirety.

Dated: New York, New York
       November 29, 2007

                              Respectfully submitted,

                              GUSRAE, KAPLAN, BRUNO & NUSBAUM PLLC
                              *Attorneys for Plaintiff*

By: _____
     Robert L. Herskovits (RH 2586)
     120 Wall Street
     New York, NY 10005
     (212) 269-1400