UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STEVEN S. NOVICK,<br><br>Plaintiff,<br><br>-against-<br><br>AXA NETWORK, LLC,<br><br>Defendant. | : ECF Case<br>: 1:07-cv-7767 (AKH)(KNF)<br>:<br>: **AFFIDAVIT OF**<br>: **ROBERT L. HERSKOVITS**<br>: **IN OPPOSITION TO**<br>: **DEFENDANT'S MOTION TO**<br>: **DISMISS AND TO COMPEL**<br>: **ARBITRATION, OR**<br>: **ALTERNATIVELY, TO**<br>: **STAY ACTION** |

STATE OF NEW YORK      )
                             ) ss.
COUNTY OF NEW YORK  )

     ROBERT L. HERSKOVITS, being duly sworn, deposes and says:

     1.     I am a member of Gusrae, Kaplan, Bruno & Nusbaum PLLC, attorneys for Plaintiff Steven S. Novick. I submit this affidavit in opposition to Defendant's motion to dismiss and to compel arbitration, or alternatively, to stay action.

     2.     Gusrae, Kaplan, Bruno & Nusbaum PLLC served as counsel for Steven S. Novick in connection with an arbitration entitled Steven S. Novick v. AXA Advisors, LLC, FINRA Arbitration No. 07-02464 (the "Arbitration"). All claims asserted by Steven S. Novick in the Arbitration were withdrawn on October 30, 2007.

     3.     Attached hereto as Exhibit 1 is a true and correct copy of the body of SR-NASD-2004-011, which was a proposed rule change submitted by the National Association of Securities Dealers to the Securities and Exchange Commission on January 16, 2004.

4.    Attached hereto as Exhibit 2 is a true and correct copy of Exhibit 4 to SR-NASD-2004-011, entitled Code of Arbitration Procedure for Industry Dispute Old-to-New Conversion Chart.

5.    Attached hereto as Exhibit 3 is a true and correct copy of Exhibit 3 to SR-NASD-2004-011, entitled Comparison Chart of Current and Proposed NASD Arbitration Codes for Industry Disputes.

6.    Attached hereto as Exhibit 4 is a true and correct copy of an e-mail string between Jean I. Feeney, Esq. and I.  Ms. Feeney is Vice President and Chief Counsel-Dispute Resolution for the Financial Industry Regulatory Authority.

_____
ROBERT L. HERSKOVITS

Sworn to before me this
29th day of November 2007

_____
Notary Public

BRIAN D. GRAIFMAN
NOTARY PUBLIC, State of New York
No. 02GR4967055
Qualified in Westchester County
Commission Expires 05/21/2002

# EXHIBIT 1

January 16, 2004

Florence Harmon
Senior Special Counsel
Division of Market Regulation
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549-1001


Re:    **SR-NASD-2004-011 - Reorganization and Revision of NASD Arbitration Rules
       Relating to Industry Disputes**

Dear Ms. Harmon:

   Pursuant to Rule 19b-4, enclosed please find the above-numbered rule filing. Also
enclosed is a 3-l/2" disk containing the rule filing in Microsoft Word 7.0 to facilitate production of
the Federal Register release.

   If you have any questions, please contact Laura Gansler, Counsel, NASD Dispute
Resolution, Inc., at (202) 728-8275; e-mail laura.gansler@nasd.com. The fax number is (202)
728-8833.


                        Very truly yours,



                        Barbara Z. Sweeney
                        Senior Vice President
                         and Corporate Secretary



Enclosures

File No. SR-NASD-2004-011
Consists of 313 Pages

# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C.

--------------------

Form 19b-4

Proposed Rule Change

by

# NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

Pursuant to Rule 19b-4 under the
Securities Exchange Act of 1934

1.　　Text of Proposed Rule Change

(a)　　Pursuant to the provisions of Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act"), the National Association of Securities Dealers, Inc. ("NASD" or "Association"), through its wholly owned subsidiary, NASD Dispute Resolution, Inc. ("NASD Dispute Resolution"), is filing with the Securities and Exchange Commission ("SEC" or "Commission") a proposed rule change to reorganize its arbitration rules governing industry disputes. The proposed rule change is part of a comprehensive plan to reorganize NASD's Code of Arbitration Procedure ("Code") into three separate procedural codes: the NASD Code of Arbitration Procedure for Customer Disputes ("Customer Code"); the NASD Code of Arbitration Procedure for Industry Disputes ("Industry Code"); and the NASD Code of Mediation Procedure ("Mediation Code"). NASD is also proposing to simplify the language of all three Codes, and to make certain substantive changes to the proposed Industry and Customer Codes that would codify current practice, provide guidance to parties, or streamline the administration of arbitrations in the NASD forum.

This rule filing contains the proposed Industry Code, a copy of which is attached as Exhibit 2.[1] A chart comparing the current Code and the proposed Industry Code is attached as Exhibit 3.[2] An old-to-new conversion guide is attached as Exhibit 4. A list of the proposed Industry Code rules that differ (other than in numbering) from corresponding rules in the proposed Customer Code is attached as Exhibit 5.

---

[1] The proposed Customer Code was filed with the Commission on October 15, 2003 (SR-NASD-2003-158). The proposed Mediation Code will be filed shortly.

[2] For purposes of this filing, the version of the current Code used in the comparison and conversion charts reflects pending rule filings SR-NASD-2003-95 (proposed amendments to arbitrator classification definitions) and SR-NASD-2003-101 (proposed amendments to Rule 10304 governing time limits on the submission of claims in arbitration). Pending rule filings that have not yet been published for public comment in the Federal Register have not been included.

Page 3 of 313

(b)    Not applicable.

(c)    Not applicable.

2.    Procedures of the Self-Regulatory Organization

(a) The proposed rule change was approved by the Board of Directors of NASD Dispute

Resolution at its meeting on November 12, 2003, which authorized the filing of the rule change

with the SEC. Counsel for The Nasdaq Stock Market and NASD Regulation have been provided

an opportunity to consult with respect to the proposed rule change, pursuant to the Plan of

Allocation and Delegation of Functions by the NASD to its Subsidiaries.  The NASD Board of

Governors had an opportunity to review the proposed rule change at its meeting on November

13, 2003.  No other action by the NASD is necessary for the filing of the proposed rule change.

Section 1(a)(ii) of Article VII of the NASD By-Laws permits the NASD Board of Governors to

adopt amendments to NASD Rules without recourse to the membership for approval.

(b) Questions regarding this rule filing may be directed to Laura Gansler, Counsel, NASD

Dispute Resolution, at (202) 728-8275.

3.    Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the
      Proposed Rule Change

(a) Purpose

This rule filing is part of a comprehensive plan to reorganize and simplify the NASD Code

of Arbitration Procedure.  Specifically, NASD is proposing to:

- Reorganize its dispute resolution rules in a more logical, user-friendly way,
  including creating separate Codes for customer and industry arbitrations, and for
  mediations;

- Simplify the language and structure of the rules in each of the proposed Codes in a
  manner consistent with the SEC's plain English initiative; and

Page 4 of 313

- Implement several substantive rule changes to the Industry and Customer Codes, including codifying several common practices, to provide more guidance to parties and arbitrators, and to streamline the administration of arbitrations in the NASD forum.

**Reorganization**

One of the most frequent criticisms of the current Code is that it is poorly organized. Parties, particularly infrequent users of the forum, have difficultly finding the rules they are looking for, because the rules are not presented in a logical order. The confusion is compounded by the fact that certain rules in the Code apply only to customer cases, some apply only to industry cases, and still others apply to both types of disputes. In addition, the current Code contains the NASD mediation rules, despite the fact that many matters are submitted directly to mediation, and do not arise out of an arbitration proceeding.

To address these concerns, NASD is proposing to divide the current Code into three separate Codes: the Customer Code, the Industry Code, and the Mediation Code. This rule filing contains the proposed Industry Code. The proposed Customer Code was filed with the SEC on October 15, 2003 (SR-NASD-2003-158.) The proposed Mediation Code will be filed shortly. NASD believes that maintaining separate Codes will make it easier for parties to find the rules that apply to their disputes, particularly for parties to disputes that are submitted directly to mediation. NASD will maintain electronic versions of each code on its Web site, www.nasd.com, and will make paper copies available upon request.

In keeping with the current NASD rule numbering system, each of the three codes will be numbered in the thousands, and major sections will be numbered in the hundreds. Individual rules within those sections will be numbered in the tens (or ones, if necessary). The current method for numbering and lettering paragraphs within individual rules will remain unchanged. The Customer

Code will use the Rule 12000 series, which is currently unused. The Industry Code will use the Rule 13000 series, and the Mediation Code will use the Rule 14000 series, both of which are also currently unused.   NASD will reserve the Rule 10000 series, which is currently used for NASD's dispute resolution rules, for future use.

The proposed Industry Code is divided into nine parts, which are intended to approximate the chronological order of a typical arbitration.  Specifically, the proposed Industry Code is organized as follows:

- Part I (Rule 13100 et seq.) contains definitions, as well as other rules relating to the organization and authority of the forum;

- Part II (Rule 13200 et seq.) contains general arbitration rules, including what claims are subject to arbitration in the NASD forum;

- Part III (Rule 13300 et seq.) contains rules explaining how to initiate a claim, how to respond to a claim, how to amend claims, and when claims may be combined and separated;

- Part IV (13400 et seq.) contains rules relating to the appointment, authority and removal of arbitrators;

- Part V (Rules 13500 et seq.) contains rules governing the prehearing process, including proposed new rules relating to motions and discovery;

- Part VI (Rules 13600 et seq.) contains rules relating to hearings;

- Part VII (Rules 13700 et seq.) contains rules relating to the dismissal, withdrawal, or settlement of claims;

- Part VIII (Rules 13800 et seq.) contains rules relating to simplified (small cases) arbitrations; default proceedings; statutory employment discrimination claims; and injunctive relief.

- Part IX (Rules 13900 et seq.) contains rules relating to fees and awards.

**Relationship Between Proposed Customer and Industry Codes**

The proposed Customer Code has been organized in the same manner described above, and with only a few exceptions, the Codes have been numbered so the same rules have the same last three digits in both Codes.  For example, proposed Rules 12500 and 13500 govern initial prehearing conferences in the Customer and Industry Codes, respectively. This parallelism is possible because, in large part, the rules governing the organization of the forum, the procedures for filing and responding to claims, prehearing and hearing procedures, and the settlement or withdrawal of claims, are the same in both Codes.

There are some differences between the two Codes, which fall into two categories. The first category consists of those rules in the current Code that contain different provisions for customer and industry disputes.  For example, current Rule 10308, governing arbitrator selection, requires that three-arbitrator panels in customer cases consist of a majority of public arbitrators, while the composition of the panel in industry disputes depends on the nature of the claim.  For such rules, the Customer Code version of the panel composition rule (proposed Rule 12402) contains only the provisions that relate to customer disputes, while the Industry Code counterpart (proposed Rule 13402) contains only the provisions that relate to industry cases.

The second category of rules that differ between the proposed Customer and Industry Codes consists of those rules in the current Code that apply only to industry disputes.  These rules, which include current Rules 10210 and 10211, governing statutory employment discrimination claims, and current Rule 10335, governing injunctive relief, are included in the proposed Industry Code (proposed Rules 13802-13804), but have no counterpart in the proposed Customer Code.

Although these rules have been rewritten and reorganized in a manner consistent with the proposed Codes, NASD is not proposing any substantive changes to those parts of the current Code that are unique to industry cases.  A list of the rules in the proposed Industry Code that differ from their Customer Code counterpart, or that do not have a counterpart in the Customer Code, is attached as Exhibit 5.

### Plain English

In 1998, the SEC launched an initiative to encourage issuers and self-regulatory organizations ("SROs") to use "plain English" in disclosure documents and other materials used by investors. At that time, the SEC published a "Plain English Handbook," to provide guidance to issuers and SROs in drafting such materials.  The Plain English Handbook recommended using shorter, more common words; breaking long rules into shorter ones; using the active voice whenever possible; and using easy-to-read formatting, such as bullet points.  In revising the Codes, NASD has implemented these guidelines wherever possible.

### Description of Other Changes

NASD is also proposing to make several other changes to the Customer and Industry Codes that are intended to make the NASD arbitration process as simple, uniform and transparent as possible.  Some of the proposed changes codify or clarify current NASD practice.  Others are substantive changes that are intended to provide guidance to parties, resolve open questions, or streamline or standardize the administration of NASD arbitrations.

The proposed changes are described in detail below. In general, the same substantive changes have been made to both the Customer and Industry Codes.  Because this rule filing relates to the proposed Industry Code, it will refer only to the proposed Industry Code rule

numbers. However, differences between the Customer and Industry Code versions of the proposed rule changes will be noted.

**Agreement of the Parties (Proposed Rule 13105)**

Both the current and proposed Codes permit parties to an arbitration to agree to modify certain provisions, such as the number of arbitrators on a panel, or the time to respond to a pleading. Occasionally, all active parties to an arbitration agree to modify a provision, but an inactive party does not respond to notices or participate in the decision. Under a literal reading of the current Code, the active parties to the arbitration would not able to agree to the modification, even though the inactive party was not participating in the arbitration. This can cause unnecessary delay and frustration for the active parties.

NASD believes that the non-appearance of an inactive party should not prevent active parties to an arbitration from exercising control over the arbitration process. To address this concern, proposed Rule 13105 would provide that, when the Code allows the parties to an arbitration to modify a provision of the Code, or a decision of the Director or the panel, the agreement of all named parties is required, unless the Director or panel determines that a party is inactive in the arbitration or has failed to respond after adequate notice has been given.

**Use of the Forum  (Proposed Rule 13203)**

Currently, Rule 10301(b) provides that the Director of Arbitration, upon approval of the NAMC or its Executive Committee, may decline the use of the NASD arbitration forum if the "dispute, claim, or controversy is not a proper subject matter for arbitration."

Occasionally, situations arise in which the Director believes that it is in the best interest of the forum to deny the forum for reasons other than subject matter. For example, the current rule does not specifically permit the Director to deny the forum when NASD has reason to believe that

a party would present a security risk to the forum or to other parties. Furthermore, the requirement that the Director must first obtain approval of either the National Arbitration and Mediation Committee ("NAMC"), or its Executive Committee, is burdensome and time-consuming, making it difficult for the Director or the forum to respond appropriately in emergency situations.

To address this concern, proposed Rule 13203(a) would provide that the Director may decline to permit the use of the NASD arbitration forum if the Director determines that, given the purposes of NASD and the intent of the Code, the subject matter of the dispute is inappropriate, or "for other reasons if extraordinary circumstances exist." The provision requiring approval of the NAMC or its Executive Committee would be deleted. However, to ensure that the authority to deny the forum could not be delegated by the Director, the rule would provide that only the Director or the President of NASD Dispute Resolution may exercise the Director's authority under the rule. NASD believes that this rule change will give the Director limited, but crucial, flexibility to protect the integrity and the security of the NASD forum.

**Shareholder Derivative Actions (Proposed Rule 13205)**

Currently, the Code does not specifically address whether shareholder derivative actions may be arbitrated at NASD. Such claims are not eligible for arbitration at NASD because, by definition, they involve corporate governance disputes that do not arise out of or in connection with the business of a member firm or an associated person. Nonetheless, the question arises from time to time, occasionally after a claimant has filed a statement of claim.

Proposed Rule 13205, which is consistent with New York Stock Exchange Rule 600(e), would clarify that shareholder derivative actions are not eligible for arbitration at NASD. NASD

believes that the inclusion of this rule would help avoid confusion, provide guidance to parties, and conserve resources expended when parties seek to arbitrate such matters at NASD.

**Extensions of Deadlines (Proposed Rule 13207)**

Currently, Rule 10314(b)(5) provides that deadlines established by the Code for filing or serving pleadings may be extended by the Director, or with the consent of the initial claimant. This provision does not provide guidance with respect to the extension of other deadlines established by the Code, or by the panel or Director, and can also cause confusion with respect to responsive pleadings filed by the initial claimant. The current rule also provides that extensions of time for filing an answer are disfavored and will only be granted in extraordinary circumstances.

To eliminate confusion, and to provide more comprehensive guidance regarding when and under what circumstances deadlines may be extended, proposed Rule 13207 would provide that the parties may agree in writing to extend or modify any deadline for serving an answer; returning arbitrator or chairperson lists; responding to motions; or exchanging documents or witness lists. If the parties agree to extend or modify a deadline, the proposed rule would require that they notify the Director of the new deadline in writing. The proposed rule would also provide that the panel may extend or modify any deadline listed above, or any other deadline set by the panel, either on its own initiative or upon motion of a party. Finally the rule would provide that the Director may extend or modify any deadline or time period set by the Code for good cause, or by the panel in extraordinary circumstances.

**Ex Parte Communications (Proposed Rule 13210)**

Proposed Rule 13210 would prohibit ex parte communications between parties and arbitrators. The proposed rule is based on general ex parte rules applicable in court proceedings, and reflects current NASD practice. The NASD Arbitrators' Manual and NASD arbitrator

training materials direct arbitrators to avoid ex parte communications with parties, and arbitrators receive training on how and why to do so.  Materials provided to parties also advise parties to avoid ex parte communications with arbitrators.  For example, NASD's 'Top Ten' Standards Of Good Practice At Arbitration Hearings (available on NASD's Web site, www.nasd.com), state that participants in NASD arbitrations "should not engage in conversation with arbitrators in the absence of the other party(ies)."

However, the current Code does not address ex parte communications.  To provide additional guidance to arbitrators and parties, and to further ensure the integrity of the NASD arbitration process, the revised Code would include proposed Rule 13210 to expressly prohibit ex parte communication between parties and arbitrators.

**Sanctions (Proposed Rule 13211)**

Currently, Rule 10305(b), governing the dismissal of proceedings, provides that the "arbitrators may dismiss a claim, defense, or proceeding with prejudice as a sanction for willful and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective."  In addition, the NASD Discovery Guide states that "[t]he panel has wide discretion to address noncompliance with discovery orders. For example, the panel may make an adverse inference against a party or assess adjournment fees, forum fees, costs and expenses, and/or attorneys' fees caused by noncompliance."

Proposed Rule 13211 would codify the sanction options available to arbitrators that are described in the Discovery Guide, and extend them beyond the discovery context to apply to non-compliance with any order of the panel or provision of the Code.  The proposed rule would also make clear that the panel may sanction a party's representative in egregious situations.  Finally, the proposed rule would also allow the panel to dismiss a claim under the same conditions as it

may currently, although it would use the term "previous" rather than "lesser" sanctions, in order

to avoid potential confusion regarding whether a previous sanction was "lesser" or "greater."

NASD believes that this rule change will encourage parties to comply with both the Code and

with orders of the panel, and will also clarify the authority of arbitrators to ensure the fair and

efficient administration of arbitration proceedings when parties fail to do so.

### Hearing Location (Proposed Rule 13212)

NASD currently maintains 50 designated hearing locations for NASD arbitrations and

mediations.  Generally, in industry cases involving an associated person and a member, NASD

selects the hearing location closest to the associated person's residence at the time the dispute

arose. Otherwise, NASD considers a number of factors in selecting the hearing location,

including: the parties' signed agreement to arbitrate, if any; which party initiated the transaction or

business in issue; and the location of essential witnesses and documents.

To make the arbitration process more transparent, proposed Rule 13212 would codify this

practice.[3]  The proposed rule would also clarify that before arbitrator lists are sent to the parties

under Rule 13403, the parties may agree in writing to a different hearing location other than the

one selected by the Director, and that the Director may change the hearing location upon motion

of a party.   NASD believes that the proposed rule will provide useful guidance to parties about

where their arbitration will take place.

### Time to Answer Counterclaims and Cross Claims (Proposed Rules 13304 and 13305)

Currently, Rule 10314 provides that claimants have only 10 days to answer a

counterclaim, but a respondent answering a cross claim has 45 to file an answer to the cross

---

[3] The proposed Customer Code also contains a rule codifying NASD's current practice for selecting hearing locations, but that rule (proposed Rule 12212) differs slightly, providing that in customer cases, NASD will generally select the hearing location closest to the customer's residence at the time the dispute arose.

claim, even if the respondent has already answered the initial claim. This discrepancy can cause delay in the proceedings. NASD believes that parties who have already filed or served a pleading should have the same amount of time to respond to subsequent pleadings. NASD also believes that 10 days is insufficient, while 45 days is too long. NASD believes that 20 calendar days is the appropriate amount of time for parties to respond to both counter and cross claims.

Therefore, proposed Rule 13304 would extend the time that a claimant has to file a response to a counterclaim from 10 to 20 days from receipt of the counterclaim. In addition, proposed Rule 13305 would shorten the time that a respondent has to respond to a cross claim from 45 days to 20 days from the date that the respondent's answer to the statement of claim is due, or from the receipt of the cross claim.

**Deficient Claims (Proposed Rule 13307)**

Under current NASD practice, if a claimant files a deficient, or incomplete, claim, NASD will notify the claimant, and the claimant is given 30 days to correct the deficiency. If the deficiency is not corrected within that time, the claim is dismissed without prejudice. Reasons for deficiencies include failure to include required information in the statement of claim, failure to pay required fees, and failure to properly execute the NASD Uniform Submission Agreement.

NASD's practice with respect to deficiencies is consistent with the Arbitration Procedures published by the Securities Industry Conference on Arbitration ("SICA"). However, the current Code does not expressly address what constitutes a deficiency, or explain the process for identifying and correcting deficiencies. Proposed Rule 13307 would codify NASD's deficiency practice. Specifically, it would provide that the Director will not serve a deficient, or incomplete,

claim, and will enumerate the most common types of deficiencies.[4]  The proposed rule would also

provide that Director will notify the claimant in writing if the claim is deficient. If all deficiencies

are not corrected within 30 calendar days from the time the claimant receives notice, the Director

will close the case without serving the claim, and will not refund any filing fees or deposits paid by

the claimant.  The proposed rule would also make clear that the same standards apply to deficient

counterclaims, cross claims and third party claims served directly by parties, and would prohibit

arbitrators from considering such claims unless the deficiencies were corrected within the time

allowed.  NASD believes that including the deficiency standards and practice in the Code will

provide useful guidance to parties, and will reduce delay in NASD arbitrations by reducing the

number of deficient claims.

**Amending Pleadings to Add Parties (Proposed Rule 13309)**

Under the current Code, parties may amend their pleadings at any time prior to the

appointment of the arbitration panel.  After panel appointment, parties must obtain approval of the

arbitrators before amending a pleading. If a party is added to an arbitration proceeding before the

Director has consolidated the other parties' arbitrator rankings under current Rule 10308, the

Director will send the arbitrator lists to the newly-added party, and the newly-added party may

participate in the arbitrator selection process.  However, if a party amends a pleading to add a

new party to the proceeding between the time that the Director consolidates the arbitrator lists

and the time the panel is appointed, the newly-added party is not able to participate in the

arbitrator selection process, or to object to being added to the arbitration.

---

[4] Proposed Rule 13307 differs slightly from its Customer Code counterpart (Proposed Rule 12307), because the Customer Code version includes failure to identify the customer's residence at the time the dispute arose as a possible deficiency.

To address this issue, which has been the subject of concern among some users of the forum, proposed Rule 13309 would provide that no party may amend a pleading to add a party during the window of time between the date that ranked arbitrator lists are due to the Director and the panel is appointed. Once the panel is appointed, a pleading could not be amended for any reason without approval of the panel. Proposed Rule 13309(c) would also make clear that the party to be added after panel appointment must be given an opportunity to be heard before the panel may grant the motion to amend. This change will ensure that a party added to an arbitration by amendment either will be able to participate in the arbitrator selection process, or will have the opportunity to object to being added to the proceeding.

**Time to Answer Amended Pleadings (Proposed Rule 13310)**

Currently, Rule 10328 provides that parties have 10 business days to answer an amended pleading. Other rules in the current Code refer to calendar days. In the interest of uniformity, proposed Rule 13100(i) defines the term "day" to mean calendar day. To reflect this definition, proposed Rule 13310 would give parties 20 calendar days, rather than 10 business days, to respond to amended pleadings. Although this represents a slight extension of time, it is consistent with the time to respond to counterclaims and cross claims under proposed Rules 13304 and 13305. Because standardizing time frames is part of NASD's plain English initiative, NASD believes that 20 calendar days is an appropriate time period for responding to amended pleadings.

**Rules Governing Number, Selection and Appointment of Arbitrators**

The revised Industry Code contains several amendments to the rules governing the number, selection and appointment of arbitrators.

### Number of Arbitrators

Under current Rule 10308(b), if the amount of a claim is $25,000 or less, the arbitration panel consists of one arbitrator, unless that arbitrator requests a three-arbitrator panel. If the claim is more than $25,000 but not more than $50,000, the panel consists of one arbitrator unless either the single arbitrator, or any party in its initial pleading, requests a three-arbitrator panel. Claims of more than $50,000 are heard by a three-arbitrator panel.

To streamline the administration of smaller claims, and minimize the cost of pursuing small claims, proposed Rule 13401 would eliminate the ability of the single arbitrator to request a three-arbitrator panel for any claim of $50,000 or less. Parties in cases involving more than $25,000, but not more than $50,000, could still request a three-arbitrator panel.

### Chairperson Lists

Currently, parties to NASD arbitrations select their arbitrators by a process of striking and ranking arbitrators from lists generated by NASD's Neutral List Selection System ("NLSS"). Once the panel is appointed, the parties jointly select the chairperson from the panel, or, if the parties do not agree, the Director appoints the highest-ranked arbitrator on the panel to serve as chairperson [5]

Although NASD provides voluntary chairperson training to its arbitrators, arbitrators who serve as chairperson are not currently required to have chairperson training, to have any particular experience, or to meet any other specific criteria beyond the requirements for serving as an arbitrator. Over the years, one of the most frequent suggestions for improving the quality and

---

[5] NASD estimates that parties agree on a chairperson only about 20% of the time.

efficiency of NASD arbitrations is to ensure that chairpersons, who play a vital role in the administration of cases, have some degree of arbitrator experience and training.

NASD agrees that requiring trained and experienced chairpersons would significantly enhance the quality of its arbitration forum. However, NASD also believes that the criteria or training requirements should not prevent arbitrators of any professional or educational background from qualifying to serve as chairpersons of panels.

To address these concerns, the proposed Industry Code would require that NASD create and maintain a roster of arbitrators who are qualified to serve as chairpersons. The parties would select the chairperson from the chair-qualified list in the same manner and at the same time that they select the other members of the panel. In single-arbitrator cases, the arbitrator would be selected from a list of chair-qualified arbitrators, unless the parties agreed otherwise.

In cases in which the panel consists only of non-public arbitrators, the list of chair-qualified arbitrators would consist of non-public arbitrators. In cases in which the panel consists of a majority of public arbitrators, the chair-qualified list would consist of public arbitrators.[6]

Under proposed Rule 13400, arbitrators would be eligible for the chairperson roster if they have completed chairperson training provided by NASD, or have substantially equivalent training or experience, and either:

- Have a law degree and are a member of a bar of at least one jurisdiction and have served as an arbitrator through award on at least two arbitrations administered by a self-regulatory organization ("SRO") in which hearings were held; or

- Have served as an arbitrator through award on at least three arbitrations administered by an SRO in which hearings were held.

---

[6] The proposed Customer Code would require that chairpersons in customer cases be public arbitrators unless the parties agree otherwise.

NASD believes that these criteria strike the appropriate balance between ensuring that arbitrators who serve as chairpersons or single arbitrators have the requisite experience to fairly and efficiently administer their cases, and allowing arbitrators of all professional backgrounds to qualify as chairpersons. Arbitrators who qualify under these criteria will be placed on the chairperson roster only if they agree to serve as chairpersons; otherwise, they will remain on the general arbitrator roster. To avoid duplication of names on the lists sent to parties, arbitrators who are on the chairperson roster will not be on the general arbitrator roster.

### NLSS Changes

The proposed Code would implement several changes to the operation of NLSS. NLSS would generate arbitrator names from the NASD rosters on a random, rather than rotational, basis. This change is primarily driven by computer programming requirements. NASD is currently developing a new computerized case-management system. This change would make the anticipated upgrades to the NLSS component of the new case management system significantly simpler and less expensive to program and implement.

In addition, the proposed Code would eliminate the ability of parties to unilaterally request arbitrators with particular expertise, a practice that is an ongoing source of controversy, as well as burdensome for the NASD staff to administer.

Finally, proposed Rule 13403 would expand the number of names of proposed arbitrators provided to the parties to seven names for each arbitrator on the panel, but would limit the number of arbitrators that each party may strike from each list to five. NASD believes that expanding the lists, but limiting the number of strikes each party may exercise, will expedite panel appointment and minimize the likelihood that the Director will have to appoint an arbitrator who was not on the original lists sent to parties. Currently, parties are allowed unlimited strikes, which

often results in no arbitrators being left on the consolidated list. In such cases, the administration of the arbitration is delayed, and the Director must appoint arbitrators to fill the panel.

Collectively, NASD believes that these modifications to NLSS would streamline and simplify the arbitrator selection process and enhance the quality of NASD arbitrations.

**Appointment of Arbitrators (Proposed Rule 13406)**

In the past, questions have occasionally arisen regarding when appointment of arbitrators occurs. To address these questions, proposed Rule 13406 would clarify that appointment of arbitrators occurs when the Director sends notice to the parties of the names of the arbitrators on the panel. In addition, as part of the chronological reorganization of the Code, the arbitrator oath requirement that is currently in Rule 10327 has been included in proposed Rule 13406.

**Arbitrator Recusal (Proposed Rule 13409)**

Under current NASD practice, parties may request that arbitrators recuse themselves from the panel at any time. However, the current Code does not address arbitrator recusal. To provide guidance to parties, proposed Rule 13409 would provide that any party may ask arbitrators to recuse themselves from the panel for good cause. The proposed rule would also clarify that requests for arbitrator recusal are decided by the arbitrator who is the subject of the request. Although some users of the forum believe that recusal requests should be made to the full panel, the weight of case law on the subject prohibits removal of an arbitrator by other arbitrators. However, the Director may remove arbitrators for cause under proposed Rule 13410 on the same grounds applicable in current Rules 10308(d), 10312(d) and 10313.

**Replacement of Arbitrators (Proposed Rule 13411)**

Under the current Code, the provisions regarding replacement of arbitrators are contained in Rules 10308(d)(3) and 10313, which contain numerous cross-references to other rules.

Proposed Rule 13411 would consolidate the various current rules. The proposed rule would also extend the option of electing to proceed with only the remaining arbitrators to all stages of the proceeding, and eliminate the 5-day limit on electing that option contained in current Rule 10313. NASD believes that parties should have the right to decide jointly to proceed with only the remaining arbitrators regardless of when the replacement occurs, and that the parties should be able to elect that option up until the time the appointment of the replacement arbitrator occurs. Otherwise, proposed Rule 13411 does not contain any substantive changes from the current rules upon which it is based.

**Initial Prehearing Conferences (Proposed Rule 13500)**

Proposed Rule 13500 would codify the portion of the NASD Discovery Guide relating to initial prehearing conferences ("IPHCs"). Since the adoption of the Discovery Guide in 1999, IPHCs have been standard practice in NASD arbitrations. The IPCH gives the panel and the parties an opportunity to organize the management of the case, set a discovery cut-off date, identify and establish a schedule for potential motions, schedule hearing dates, determine whether mediation is desirable, and resolve many other preliminary issues. Users of the forum have found the IPHC to be a valuable tool in managing the administration of arbitrations. NASD believes that the proposed rule, which provides that an IPHC will be held in every case unless the parties jointly agree on certain scheduling and other enumerated issues in advance, will provide valuable guidance to parties and arbitrators about the role of IPHCs in NASD arbitrations.

**Recording Prehearing Conferences (Proposed Rule 13502)**

Currently the Code is silent with respect to whether and under what circumstances a prehearing conference will be tape-recorded. Proposed Rule 13502 would provide that prehearing conferences are generally not tape-recorded as a matter of course (with the exception

of prehearing conferences to decide dispositive motions, discussed below). However, the rule would permit the panel to decide to tape-record a prehearing conference on its own initiative, or at the request of a party. The rule would also provide that, if the prehearing conference is tape-recorded, the Director will provide a copy of the tape to any party upon request, for a nominal fee.

The rule does not specify the fee, because the fee may vary slightly depending on the rates charged by NASD's telephone service provider, which normally makes the initial recording of telephonic hearing sessions. The current fee is $15 per tape. (Because NASD must arrange in advance to have telephonic hearing sessions taped, NASD will instruct arbitrators that they should notify NASD at least 24 hours in advance when they decide that a prehearing conference should be taped.)

**Motions (Proposed Rule 13503)**

Although motions are increasingly common in arbitration, the current Code does not refer to motions or provide any guidance with respect to motions practice. As a result, motions practice lacks uniformity, and parties and arbitrators alike are often unsure how motions should be made, responded to or decided. To provide guidance to parties and arbitrators, and to standardize motions practice in the NASD forum, proposed Rule 13503 would establish procedures and deadlines for making, responding to and deciding motions.

Some users of the forum have expressed the concern that adopting a motions practice rule will encourage more motions. Although NASD appreciates this concern, NASD believes that motions have already become a routine part of most arbitrations. Therefore, NASD believes that the Code should provide as much guidance about motions as possible to parties, particularly infrequent users of the forum. However, in an effort to deter unnecessary motions, the rule would

require that, before making a motion, a party must make an effort to resolve the matter that is the subject of the motion with the other parties. The rule would also require that every motion, whether written or oral, include a description of the efforts made by the moving party to resolve the matter before making the motion.

Another common concern about adopting a motions practice rule is that it will detract from the informal nature of arbitration. To address this concern, the rule would make clear that most motions may be made either orally or in writing, and that written motions need not take any particular form.

**Dispositive Motions (Proposed Rule 13504)**

Another recurring question in NASD arbitrations is whether, and to what extent, arbitrators have the authority to decide dispositive motions before a hearing on the merits. In its Follow-up Report on Matters Relating to Securities Arbitration, the General Accounting Office ("GAO") noted that while NASD's arbitration rules do not specifically provide for dispositive motions, case law generally supports the authority of arbitrators to grant motions to dismiss claims prior to the hearing on the merits.[7] Because the Code provides no guidance with respect to this question, arbitrator decisions with respect to it lack uniformity.

Generally, NASD believes that parties have the right to a hearing in arbitration. However, NASD also acknowledges that in certain extraordinary circumstances, it would be unfair to require a party to proceed to a hearing. Specifically, the proposed rule would:

- Provide that, except for motions relating to the eligibility of claims under the Code's six year time limit, motions that would resolve a claim before a hearing on the merits are discouraged, and may only be granted in extraordinary circumstances;

---

[7] U.S. General Accounting Office, Follow-up Report on Matters Relating to Securities Arbitration (April 11, 2003).

- Require that a prehearing conference before the full panel must be held to discuss the motion before the panel could grant it; and

- Allow the panel to issue sanctions against a party for making a dispositive motion in bad faith.

NASD believes that this rule proposal, which was developed over several years with input from industry and public members of the NAMC, will provide necessary guidance to parties and arbitrators, and make the administration of arbitrations more uniform and transparent. NASD believes that the rule strikes the appropriate balance between allowing the dismissal of claims in limited, extraordinary circumstances and reinforcing the general principle that parties are entitled to a hearing in arbitration.

**Discovery (Proposed Rules 13505 – 13511)**

One of the most frequent comments made by users of the NASD forum is that discovery procedures are routinely ignored, resulting in significant delay and the frequent need for arbitrator intervention in the discovery process. To address these concerns, proposed Rules 13505-13511 would expand on the discovery procedures contained in current Rule 10321, with certain substantive changes.[8] The proposed rules would provide more specific guidance about how to make and respond to discovery requests, and would make clear that either producing or objecting to documents requested by parties, is mandatory. The proposed rules also would extend the time parties have to respond to document requests from 30 to 60 days, but would also provide more serious consequences when parties fail to respond, or when parties frivolously object to production of documents or information. In addition, proposed Rule 13511 would codify the sanctions provisions currently contained in the NASD Discovery Guide, clarifying the authority of

---

[8] These rules differ slightly from their counterparts in the proposed Customer Code (Proposed Rules 12505-12511), because NASD's Document Production Lists do not apply to industry disputes.

arbitrators to punish parties for non-compliance with discovery rules or orders of the panel. NASD believes that, collectively, these changes will significantly minimize the number of discovery disputes in NASD arbitrations.

**Subpoenas (Proposed Rule 13512)**

Current Rule 10322 provides that the arbitrators and any counsel of record to the proceeding shall have the power of the subpoena process as provided by law, and that all parties must be given a copy of a subpoena upon its issuance. The rule also provides that parties shall produce witnesses and present proofs to the fullest extent possible without resort to the subpoena process. Proposed Rule 13512 is substantially identical to the current rule Code, but would also require that if a subpoena is issued, the issuing party must send copies to all other parties at the same time and in the same manner as the party issued the subpoena. This modification is intended to ensure that parties receive notice of the subpoena in a timely manner.

**Exchange of Documents and Witness Lists (Proposed Rule 13514)**

Current Rule 10321(d) requires that at least 20 days before a hearing on the merits is scheduled to begin, all parties must exchange copies of all documents in their possession that they intend to present at the hearing, and must identify all witnesses they intend to present at the hearing. As a practical matter, many of the documents will already have been exchanged through discovery. Users of the forum have advised NASD that this rule would be less burdensome, and more useful, if it were amended to require only that parties exchange all documents they intend to use at the hearing that have not previously been exchanged. The proposed rule would also increase the consequences of failing to comply with this requirement. Under the current rule, the panel may exclude evidence not exchanged in a timely manner. Proposed Rule 13514 would create a presumption that parties could not use any documents at the hearing that were not

exchanged, or call any witnesses at the hearing who were not identified, within the time provided by the rule, unless the panel determines that good cause exists. The proposed rule specifically provides that good cause includes the need to use documents or call witnesses for rebuttal or impeachment purposes based on developments at the hearing.

**Postponements (Proposed Rule 13601)**

In the proposed Code, hearing adjournments are referred to as hearing postponements, for plain English purposes. Paragraph (a) of proposed Rule 13601 has been amended to provide that the panel may not grant requests to postpone a hearing that are made within 10 days of a scheduled hearing session unless the panel determines that good cause exists. This provision is intended to reduce the number of last minute requests for postponements, a practice that many users of the forum believe results in unnecessary delay and unfairness to parties.

In paragraph (b) of the proposed rule, the fee would no longer increase for a second or subsequent request by the same party. This change is intended to simplify the rule and to avoid confusion when one party requesting a postponement has made a previous request, but one or more of the other parties requesting the same postponement have not made previous requests.

The proposed rule also gives the panel the authority to allocate the postponement fees among non-requesting parties if the panel determines that the non-requesting party caused or contributed to the need for the postponement.

**Withdrawing Claims (Proposed Rule 13702)**

The current Code does not contain any guidance with respect to withdrawing claims. This occasionally causes confusion, particularly with respect to the consequences of withdrawing a claim at a particular stage in an arbitration. To provide guidance to parties, proposed Rule 12702 would provide that before a claim has been answered by a party, a claimant may withdraw the

claim against that party with or without prejudice. However, after a claim has been answered by a party, a claimant may only withdraw its claim against that party with prejudice, unless the panel decides, or the claimant and that party agree, otherwise. NASD believes that the proposed rule strikes the appropriate balance between allowing claimants to withdraw their claims without prejudice before a respondent has expended significant resources responding to the claim, and protecting the respondent from having to respond to the same claim multiple times.

**Simplified Arbitration Rule (Proposed Rule 13800)**

The simplified arbitration rule has been significantly shortened. Currently, in addition to the procedures that are unique to simplified arbitrations, Rule 10302 repeats some, but not all, of the general provisions that apply to both regular and simplified cases. The proposed rule includes only those provisions that are unique to simplified cases.

The proposed rule would eliminate the current provisions establishing special time limits or deadlines for pleadings in simplified cases, and the time limits would now be the same as those in regular cases. Frequent users of the forum report that the time limits in simplified cases are routinely extended under the current rule. To provide better guidance to parties, NASD believes that the Code should reflect that, in practice, the time to answer in simplified cases is typically the same as it is in regular cases.

Under proposed Rule 13800, the single arbitrator would be selected from the chairperson roster, unless the parties agreed otherwise. The single arbitrator would not be able to request a three-arbitrator panel, and the arbitrator would no longer have the option of dismissing without prejudice a counterclaim or other responsive pleading that increased the amount in dispute above the simplified case threshold. If a pleading increased the amount in dispute above the threshold, the case would be administered under the regular provisions of the Code. If an arbitrator has been

appointed, that arbitrator will remain on the panel. If a three-arbitrator panel is required, the remaining arbitrators will be appointed by the Director. The proposed rule would also eliminate the ability of the single arbitrator to require a hearing.

NASD believes that these changes will make the simplified arbitration rule easier for parties to understand, and will also streamline and simplify the administration of small claims in the NASD forum.

**Fees (Proposed Rules 13900 – 13903)**

One of the most frequent criticisms of the current Code is that the fee schedules are difficult to understand, particularly with respect to what claimants must pay at the time of filing. Currently, claimants must pay a non-refundable filing fee, and an initial hearing session deposit that may be refundable under certain circumstances. In addition, parties also must pay hearing session fees for each hearing session. Although the filing fee and the initial hearing session deposit are both due upon filing, they are presented in the Code as separate fees, making it hard for some parties to understand the total amount due upon filing. To address this issue, and to make the fee schedules easier to read, the fee schedules have been revised in two significant ways.

First, the filing fee and the hearing session deposit have been combined into one single fee that is paid when a claim is filed. With two exceptions, described below, the amounts paid by claimants would not change. Although what is now the refundable hearing session deposit would no longer be paid separately, an amount equal to the current hearing session deposit would be refunded if the case is settled at least 10 calendar days prior to the hearing on the merits. (Under the current Code, the initial hearing session deposit may be refunded if the case is settled 8 days prior to the hearing on the merits; this been has been changed to 10 days as part of the overall effort to standardize the time frames used in the Code.) The consolidation of the filing fee and the

hearing session deposit is intended to make it easier for claimants to understand how much they have to pay when they file a claim and what, if any, portion of that fee may be refunded.

Second, several sets of brackets in the filing fee schedule would be condensed. Currently, there are 14 separate fee brackets in the customer filing fee schedule. Some of the fees for different brackets are the same; others are separated by amounts ranging from $25-$100. The result is a schedule that is confusing and difficult to read. To simplify the schedule, the fees for claims filed by associated persons would be reorganized as follows: the $.01-$1,000 bracket ($50) and the $1,000-$2,500 bracket ($75) would be combined and the filing fee for the new bracket would be $75; the $25,000-$30,000 bracket ($600) and the $30,000-50,000 bracket ($625) would be combined, and the filing fee for the new bracket would be $600; and the $1 million - $3 million bracket ($1,700), the $3 million - $5 million bracket ($1,800), the $5 million - $10 million bracket ($1,800) and the over $10 million bracket ($1,800) would be combined, and the filing fee for the new bracket would be $1,800.

The proposed changes would not result in an increase in the total amount of fees paid by associated persons when filing a claim, except that for claims of up to $1,000, the associated person's overall filing fees would increase by $25, for claims of $30,000 to $50,000, the associated person's overall filing fees would decrease by $50, and for claims of $1 million to $3 million, the associated person's overall filing fees would increase by $100. Corresponding changes would be made to the member filing fee schedule.

NASD believes that these changes will greatly simplify the fee schedule, eliminate three repetitive high-end brackets, and align the brackets in the filing fee schedule with the brackets in the member filing fee and surcharge schedules.

Page 29 of 313

Page 30 of 313

(b) Statutory Basis

NASD believes that the proposed rule change is consistent with the provisions of Section 15A(b)(6) of the Act, which requires, among other things, that NASD's rules must be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, and, in general, to protect investors and the public interest. NASD believes that reorganizing and revising its rules relating to industry arbitrations will protect the public interest by making the arbitration process more transparent for parties, providing useful guidance to parties, arbitrators and staff, and helping to standardize and streamline the administration of NASD arbitrations. If the proposed Code is approved, NASD will offer training on the new Code to arbitrators, users of the forum, and staff.

4.    <u>Self-Regulatory Organization's Statement on Burden on Competition</u>

NASD does not believe that the proposed rule change will result in any burden on competition that is not necessary or appropriate in furtherance of the purposes of the Act, as amended.

5.    <u>Self-Regulatory Organization's Statement on Comments on the Proposed Rule Change Received from Members, Participants, or Others</u>

Written comments were neither solicited nor received.

6.    <u>Extension of Time Period for Commission Action</u>

NASD does not consent at this time to an extension of the time period for Commission action specified in Section 19(b)(2) of the Act.

7.    <u>Basis for Summary Effectiveness Pursuant to Section 19(b)(3) or for Accelerated Effectiveness Pursuant to Section 19(b)(2)</u>

Not applicable.

8.    <u>Proposed Rule Change Based on Rules of Another Self-Regulatory Organization or of the Commission</u>

     Not applicable.

9.    <u>Exhibits</u>

    1.    Completed notice of proposed rule change for publication in the <u>Federal</u> <u>Register</u>.

    2.    Text of Proposed NASD Code of Arbitration Procedure for Industry Disputes.

    3.    Chart Comparing Current NASD Code of Arbitration Procedure and Proposed NASD Code of Arbitration Procedure for Industry Disputes.

    4.    Old-to-New Conversion Guide.

    5.    List of proposed Industry Code rules that differ from proposed Customer Code.

     Pursuant to the requirements of the Securities Exchange Act of 1934, NASD

Dispute Resolution has duly caused this filing to be signed on its behalf by the undersigned

thereunto duly authorized.


     NASD, INC.


     BY:_____
           Barbara Z. Sweeney, Senior Vice President and
           Corporate Secretary


Date: January 16, 2004

Page 32 of 313

EXHIBIT 1

SECURITIES AND EXCHANGE COMMISSION
(Release No. 34-                                    ; File No. SR-NASD-2004-011)

Self-Regulatory Organizations;  Notice of Filing of Proposed Rule Change by National
Association of Securities Dealers, Inc. to Amend NASD Arbitration Rules for Industry Disputes

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act")[1] and Rule

19b-4 thereunder,[2] notice is hereby given that on                        , the National

Association of Securities Dealers, Inc. ("NASD"), through its wholly owned subsidiary, NASD

Dispute Resolution, Inc. ("NASD Dispute Resolution") filed with the Securities and Exchange

Commission ("SEC" or "Commission") the proposed rule change as described in Items I, II, and

III below, which Items have been prepared by NASD Dispute Resolution.  The Commission is

publishing this notice to solicit comments on the proposed rule change from interested persons.

I.    SELF-REGULATORY ORGANIZATION'S STATEMENT OF THE TERMS OF
      SUBSTANCE OF THE PROPOSED RULE CHANGE

NASD is proposing to amend the NASD Code of Arbitration Procedure ("Code") to

reorganize the current rules, simplify the language, codify current practices, and implement

several substantive changes. NASD is proposing to reorganize its current dispute resolution rules

(Rules 10000 et. seq.) into three separate procedural codes: the NASD Code of Arbitration

Procedure for Customer Disputes ("Customer Code"); the NASD Code of Arbitration Procedure

for Industry Disputes ("Industry Code"); and the NASD Code of Mediation Procedure

("Mediation Code").  The three new codes will replace the current NASD Code in its entirety.

NASD is also proposing to make certain substantive amendments to the Code as described herein.

---

[1] 15 U.S.C. 78s(b)(1).

[2] 17 CFR 240.19b-4.

This rule filing contains the proposed Industry Code, the text of which is attached as Exhibit 2.[3] A chart comparing the current Code and the proposed Customer Code is attached as Exhibit 3. An old-to-new conversion guide is attached as Exhibit 4.[4]  A list of the proposed Industry Code rules that differ (other than in numbering) from corresponding rules in the proposed Customer Code is attached as Exhibit 5.

## II.  SELF-REGULATORY ORGANIZATION'S STATEMENT OF THE PURPOSE OF, AND STATUTORY BASIS FOR, THE PROPOSED RULE CHANGE

In its filing with the Commission, NASD has included statements concerning the purpose of and basis for the proposed rule change and discussed any comments it received on the proposed rule change.  The text of these statements may be examined at the places specified in Item IV below.  NASD has prepared summaries, set forth in Sections (A), (B), and (C) below, of the most significant aspects of such statements.

### (A)  Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change

(a)  Purpose

This rule filing is part of a comprehensive plan to reorganize and simplify the NASD Code of Arbitration Procedure.  Specifically, NASD is proposing to:

- Reorganize its dispute resolution rules in a more logical, user-friendly way, including creating separate Codes for customer and industry arbitrations, and for mediations;

- Simplify the language and structure of the rules in each of the proposed Codes in a manner consistent with the SEC's plain English initiative; and

---

[3] The Customer Code was filed on October 15, 2003 (SR-NASD-2003-158).  The proposed Mediation Code will be filed shortly.

[4] For purposes of this filing, the version of the current Code used in the comparison and conversion charts reflect pending rule filings SR-NASD-2003-95 (proposed amendments to arbitrator classification definitions) and SR-NASD-2003-101 (proposed amendments to Rule 10304 governing time limits on the submission of claims in arbitration).

- Implement several substantive rule changes to the Industry and Customer Codes, including codifying several common practices, to provide more guidance to parties and arbitrators, and to streamline the administration of arbitrations in the NASD forum.

**Reorganization**

One of the most frequent criticisms of the current Code is that it is poorly organized. Parties, particularly infrequent users of the forum, have difficulty finding the rules they are looking for, because the rules are not presented in a logical order. The confusion is compounded by the fact that certain rules in the Code apply only to customer cases, some apply only to industry cases, and still others apply to both types of disputes. In addition, the current Code contains the NASD mediation rules, despite the fact that many matters are submitted directly to mediation, and do not arise out of an arbitration proceeding.

To address these concerns, NASD is proposing to divide the current Code into three separate Codes: the Customer Code, the Industry Code, and the Mediation Code. This rule filing contains the proposed Industry Code. The proposed Customer Code was filed with the SEC on October 15, 2003 (SR-NASD-2003-158.) The proposed Mediation Code will be filed shortly. NASD believes that maintaining separate Codes will make it easier for parties to find the rules that apply to their disputes, particularly for parties to disputes that are submitted directly to mediation. NASD will maintain electronic versions of each code on its Web site, www.nasd.com, and will make paper copies available upon request.

In keeping with the current NASD rule numbering system, each of the three codes will be numbered in the thousands, and major sections will be numbered in the hundreds. Individual rules within those sections will be numbered in the tens (or ones, if necessary). The current method for numbering and lettering paragraphs within individual rules will remain unchanged. The Customer Code will use the Rule 12000 series, which is currently unused. The Industry Code will use the

Rule 13000 series, and the Mediation Code will use the Rule 14000 series, both of which are also

currently unused.   NASD will reserve the Rule 10000 series, which is currently used for NASD's

dispute resolution rules, for future use.

The proposed Industry Code is divided into nine parts, which are intended to approximate

the chronological order of a typical arbitration.  Specifically, the proposed Industry Code is

organized as follows:

- Part I (Rule 13100 et seq.) contains definitions, as well as other rules relating to the organization and authority of the forum;

- Part II (Rule 13200 et seq.) contains general arbitration rules, including what claims are subject to arbitration in the NASD forum;

- Part III (Rule 13300 et seq.) contains rules explaining how to initiate a claim, how to respond to a claim, how to amend claims, and when claims may be combined and separated;

- Part IV (13400 et seq.) contains rules relating to the appointment, authority and removal of arbitrators;

- Part V (Rules 13500 et seq.) contains rules governing the prehearing process, including proposed new rules relating to motions and discovery;

- Part VI (Rules 13600 et seq.) contains rules relating to hearings;

- Part VII (Rules 13700 et seq.) contains rules relating to the dismissal, withdrawal, or settlement of claims;

- Part VIII (Rules 13800 et seq.) contains rules relating to simplified (small cases) arbitrations; default proceedings; statutory employment discrimination claims; and injunctive relief.

- Part IX (Rules 13900 et seq.) contains rules relating to fees and awards.

**Relationship Between Proposed Customer and Industry Codes**

The proposed Customer Code has been organized in the same manner described above,

and with only a few exceptions, the Codes have been numbered so the same rules have the same

last three digits in both Codes. For example, proposed Rules 12500 and 13500 govern initial prehearing conferences in the Customer and Industry Codes, respectively. This parallelism is possible because, in large part, the rules governing the organization of the forum, the procedures for filing and responding to claims, prehearing and hearing procedures, and the settlement or withdrawal of claims, are the same in both Codes.

There are some differences between the two Codes, which fall into two categories. The first category consists of those rules in the current Code that contain different provisions for customer and industry disputes. For example, current Rule 10308, governing arbitrator selection, requires that three-arbitrator panels in customer cases consist of a majority of public arbitrators, while the composition of the panel in industry disputes depends on the nature of the claim. For such rules, the Customer Code version of the panel composition rule (proposed Rule 12402) contains only the provisions that relate to customer disputes, while the Industry Code counterpart (proposed Rule 13402) contains only the provisions that relate to industry cases.

The second category of rules that differ between the proposed Customer and Industry Codes consists of those rules in the current Code that apply only to industry disputes. These rules, which include current Rules 10210 and 10211, governing statutory employment discrimination claims, and current Rule 10335, governing injunctive relief, are included in the proposed Industry Code (proposed Rules 13802-13804), but have no counterpart in the proposed Customer Code.

Although these rules have been rewritten and reorganized in a manner consistent with the proposed Codes, NASD is not proposing any substantive changes to those parts of the current Code that are unique to industry cases. A list of the rules in the proposed Industry Code that

differ from their Customer Code counterpart, or that do not have a counterpart in the Customer Code, is attached as Exhibit 5.

### Plain English

In 1998, the SEC launched an initiative to encourage issuers and self-regulatory organizations ("SROs") to use "plain English" in disclosure documents and other materials used by investors. At that time, the SEC published a "Plain English Handbook," to provide guidance to issuers and SROs in drafting such materials. The Plain English Handbook recommended using shorter, more common words; breaking long rules into shorter ones; using the active voice whenever possible; and using easy-to-read formatting, such as bullet points. In revising the Codes, NASD has implemented these guidelines wherever possible.

### Description of Other Changes

NASD is also proposing to make several other changes to the Customer and Industry Codes that are intended to make the NASD arbitration process as simple, uniform and transparent as possible. Some of the proposed changes codify or clarify current NASD practice. Others are substantive changes that are intended to provide guidance to parties, resolve open questions, or streamline or standardize the administration of NASD arbitrations.

The proposed changes are described in detail below. In general, the same substantive changes have been made to both the Customer and Industry Codes. Because this rule filing relates to the proposed Industry Code, it will refer only to the proposed Industry Code rule numbers. However, differences between the Customer and Industry Code versions of the proposed rule changes will be noted.

**Agreement of the Parties (Proposed Rule 13105)**

Both the current and proposed Codes permit parties to an arbitration to agree to modify certain provisions, such as the number of arbitrators on a panel, or the time to respond to a pleading. Occasionally, all active parties to an arbitration agree to modify a provision, but an inactive party does not respond to notices or participate in the decision. Under a literal reading of the current Code, the active parties to the arbitration would not able to agree to the modification, even though the inactive party was not participating in the arbitration. This can cause unnecessary delay and frustration for the active parties.

NASD believes that the non-appearance of an inactive party should not prevent active parties to an arbitration from exercising control over the arbitration process. To address this concern, proposed Rule 13105 would provide that, when the Code allows the parties to an arbitration to modify a provision of the Code, or a decision of the Director or the panel, the agreement of all named parties is required, unless the Director or panel determines that a party is inactive in the arbitration or has failed to respond after adequate notice has been given.

**Use of the Forum  (Proposed Rule 13203)**

Currently, Rule 10301(b) provides that the Director of Arbitration, upon approval of the NAMC or its Executive Committee, may decline the use of the NASD arbitration forum if the "dispute, claim, or controversy is not a proper subject matter for arbitration."

Occasionally, situations arise in which the Director believes that it is in the best interest of the forum to deny the forum for reasons other than subject matter. For example, the current rule does not specifically permit the Director to deny the forum when NASD has reason to believe that a party would present a security risk to the forum or to other parties. Furthermore, the requirement that the Director must first obtain approval of either the National Arbitration and

Mediation Committee ("NAMC"), or its Executive Committee, is burdensome and time-consuming, making it difficult for the Director or the forum to respond appropriately in emergency situations.

To address this concern, proposed Rule 13203(a) would provide that the Director may decline to permit the use of the NASD arbitration forum if the Director determines that, given the purposes of NASD and the intent of the Code, the subject matter of the dispute is inappropriate, or "for other reasons if extraordinary circumstances exist." The provision requiring approval of the NAMC or its Executive Committee would be deleted. However, to ensure that the authority to deny the forum could not be delegated by the Director, the rule would provide that only the Director or the President of NASD Dispute Resolution may exercise the Director's authority under the rule. NASD believes that this rule change will give the Director limited, but crucial, flexibility to protect the integrity and the security of the NASD forum.

**Shareholder Derivative Actions (Proposed Rule 13205)**

Currently, the Code does not specifically address whether shareholder derivative actions may be arbitrated at NASD. Such claims are not eligible for arbitration at NASD because, by definition, they involve corporate governance disputes that do not arise out of or in connection with the business of a member firm or an associated person. Nonetheless, the question arises from time to time, occasionally after a claimant has filed a statement of claim.

Proposed Rule 13205, which is consistent with New York Stock Exchange Rule 600(e), would clarify that shareholder derivative actions are not eligible for arbitration at NASD. NASD believes that the inclusion of this rule would help avoid confusion, provide guidance to parties, and conserve resources expended when parties seek to arbitrate such matters at NASD.

**Extensions of Deadlines (Proposed Rule 13207)**

Currently, Rule 10314(b)(5) provides that deadlines established by the Code for filing or serving pleadings may be extended by the Director, or with the consent of the initial claimant. This provision does not provide guidance with respect to the extension of other deadlines established by the Code, or by the panel or Director, and can also cause confusion with respect to responsive pleadings filed by the initial claimant. The current rule also provides that extensions of time for filing an answer are disfavored and will only be granted in extraordinary circumstances.

To eliminate confusion, and to provide more comprehensive guidance regarding when and under what circumstances deadlines may be extended, proposed Rule 13207 would provide that the parties may agree in writing to extend or modify any deadline for serving an answer; returning arbitrator or chairperson lists; responding to motions; or exchanging documents or witness lists. If the parties agree to extend or modify a deadline, the proposed rule would require that they notify the Director of the new deadline in writing. The proposed rule would also provide that the panel may extend or modify any deadline listed above, or any other deadline set by the panel, either on its own initiative or upon motion of a party. Finally the rule would provide that the Director may extend or modify any deadline or time period set by the Code for good cause, or by the panel in extraordinary circumstances.

**Ex Parte Communcations (Proposed Rule 13210)**

Proposed Rule 13210 would prohibit ex parte communications between parties and arbitrators. The proposed rule is based on general ex parte rules applicable in court proceedings, and reflects current NASD practice. The NASD Arbitrators' Manual and NASD arbitrator training materials direct arbitrators to avoid ex parte communications with parties, and arbitrators receive training on how and why to do so. Materials provided to parties also advise parties to

avoid ex parte communications with arbitrators.  For example, NASD's 'Top Ten' Standards Of

Good Practice At Arbitration Hearings (available on NASD's Web site, www.nasd.com), state

that participants in NASD arbitrations "should not engage in conversation with arbitrators in the

absence of the other party(ies)."

However, the current Code does not address ex parte communications.  To provide

additional guidance to arbitrators and parties, and to further ensure the integrity of the NASD

arbitration process, the revised Code would include proposed Rule 13210 to expressly prohibit ex

parte communication between parties and arbitrators.

**Sanctions (Proposed Rule 13211)**

Currently, Rule 10305(b), governing the dismissal of proceedings, provides that the

"arbitrators may dismiss a claim, defense, or proceeding with prejudice as a sanction for willful

and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have

proven ineffective."  In addition, the NASD Discovery Guide states that "[t]he panel has wide

discretion to address noncompliance with discovery orders. For example, the panel may make an

adverse inference against a party or assess adjournment fees, forum fees, costs and expenses,

and/or attorneys' fees caused by noncompliance."

Proposed Rule 13211 would codify the sanction options available to arbitrators that are

described in the Discovery Guide, and extend them beyond the discovery context to apply to non-

compliance with any order of the panel or provision of the Code.  The proposed rule would also

make clear that the panel may sanction a party's representative in egregious situations.  Finally,

the proposed rule would also allow the panel to dismiss a claim under the same conditions as it

may currently, although it would use the term "previous" rather than "lesser" sanctions, in order

to avoid potential confusion regarding whether a previous sanction was "lesser" or "greater."

NASD believes that this rule change will encourage parties to comply with both the Code and with orders of the panel, and will also clarify the authority of arbitrators to ensure the fair and efficient administration of arbitration proceedings when parties fail to do so.

**Hearing Location (Proposed Rule 13212)**

NASD currently maintains 50 designated hearing locations for NASD arbitrations and mediations. Generally, in industry cases involving an associated person and a member, NASD selects the hearing location closest to the associated person's residence at the time the dispute arose. Otherwise, NASD considers a number of factors in selecting the hearing location, including: the parties' signed agreement to arbitrate, if any; which party initiated the transaction or business in issue; and the location of essential witnesses and documents.

To make the arbitration process more transparent, proposed Rule 13212 would codify this practice.[5] The proposed rule would also clarify that before arbitrator lists are sent to the parties under Rule 13403, the parties may agree in writing to a different hearing location other than the one selected by the Director, and that the Director may change the hearing location upon motion of a party. NASD believes that the proposed rule will provide useful guidance to parties about where their arbitration will take place.

**Time to Answer Counterclaims and Cross Claims (Proposed Rules 13304 and 13305)**

Currently, Rule 10314 provides that claimants have only 10 days to answer a counterclaim, but a respondent answering a cross claim has 45 to file an answer to the cross claim, even if the respondent has already answered the initial claim. This discrepancy can cause delay in the proceedings. NASD believes that parties who have already filed or served a pleading

---

[5] The proposed Customer Code also contains a rule codifying NASD's current practice for selecting hearing locations, but that rule (proposed Rule 12212) differs slightly, providing that in customer cases, NASD will generally select the hearing location closest to the customer's residence at the time the dispute arose.

should have the same amount of time to respond to subsequent pleadings. NASD also believes that 10 days is insufficient, while 45 days is too long. NASD believes that 20 calendar days is the appropriate amount of time for parties to respond to both counter and cross claims.

Therefore, proposed Rule 13304 would extend the time that a claimant has to file a response to a counterclaim from 10 to 20 days from receipt of the counterclaim. In addition, proposed Rule 13305 would shorten the time that a respondent has to respond to a cross claim from 45 days to 20 days from the date that the respondent's answer to the statement of claim is due, or from the receipt of the cross claim.

**Deficient Claims (Proposed Rule 13307)**

Under current NASD practice, if a claimant files a deficient, or incomplete, claim, NASD will notify the claimant, and the claimant is given 30 days to correct the deficiency. If the deficiency is not corrected within that time, the claim is dismissed without prejudice. Reasons for deficiencies include failure to include required information in the statement of claim, failure to pay required fees, and failure to properly execute the NASD Uniform Submission Agreement.

NASD's practice with respect to deficiencies is consistent with the Arbitration Procedures published by the Securities Industry Conference on Arbitration ("SICA"). However, the current Code does not expressly address what constitutes a deficiency, or explain the process for identifying and correcting deficiencies. Proposed Rule 13307 would codify NASD's deficiency practice. Specifically, it would provide that the Director will not serve a deficient, or incomplete, claim, and will enumerate the most common types of deficiencies.[6] The proposed rule would also provide that Director will notify the claimant in writing if the claim is deficient. If all deficiencies

---

[6] Proposed Rule 13307 differs slightly from its Customer Code counterpart (Proposed Rule 12307), because the Customer Code version includes failure to identify the customer's residence at the time the dispute arose as a possible deficiency.

are not corrected within 30 calendar days from the time the claimant receives notice, the Director will close the case without serving the claim, and will not refund any filing fees or deposits paid by the claimant. The proposed rule would also make clear that the same standards apply to deficient counterclaims, cross claims and third party claims served directly by parties, and would prohibit arbitrators from considering such claims unless the deficiencies were corrected within the time allowed. NASD believes that including the deficiency standards and practice in the Code will provide useful guidance to parties, and will reduce delay in NASD arbitrations by reducing the number of deficient claims.

**Amending Pleadings to Add Parties (Proposed Rule 13309)**

Under the current Code, parties may amend their pleadings at any time prior to the appointment of the arbitration panel. After panel appointment, parties must obtain approval of the arbitrators before amending a pleading. If a party is added to an arbitration proceeding before the Director has consolidated the other parties' arbitrator rankings under current Rule 10308, the Director will send the arbitrator lists to the newly-added party, and the newly-added party may participate in the arbitrator selection process. However, if a party amends a pleading to add a new party to the proceeding between the time that the Director consolidates the arbitrator lists and the time the panel is appointed, the newly-added party is not able to participate in the arbitrator selection process, or to object to being added to the arbitration.

To address this issue, which has been the subject of concern among some users of the forum, proposed Rule 13309 would provide that no party may amend a pleading to add a party during the window of time between the date that ranked arbitrator lists are due to the Director and the panel is appointed. Once the panel is appointed, a pleading could not be amended for any reason without approval of the panel. Proposed Rule 13309(c) would also make clear that the

party to be added after panel appointment must be given an opportunity to be heard before the panel may grant the motion to amend. This change will ensure that a party added to an arbitration by amendment either will be able to participate in the arbitrator selection process, or will have the opportunity to object to being added to the proceeding.

**Time to Answer Amended Pleadings (Proposed Rule 13310)**

Currently, Rule 10328 provides that parties have 10 business days to answer an amended pleading. Other rules in the current Code refer to calendar days. In the interest of uniformity, proposed Rule 13100(i) defines the term "day" to mean calendar day. To reflect this definition, proposed Rule 13310 would give parties 20 calendar days, rather than 10 business days, to respond to amended pleadings. Although this represents a slight extension of time, it is consistent with the time to respond to counterclaims and cross claims under proposed Rules 13304 and 13305. Because standardizing time frames is part of NASD's plain English initiative, NASD believes that 20 calendar days is an appropriate time period for responding to amended pleadings.

**Rules Governing Number, Selection and Appointment of Arbitrators**

The revised Industry Code contains several amendments to the rules governing the number, selection and appointment of arbitrators.

### Number of Arbitrators

Under current Rule 10308(b), if the amount of a claim is $25,000 or less, the arbitration panel consists of one arbitrator, unless that arbitrator requests a three-arbitrator panel. If the claim is more than $25,000 but not more than $50,000, the panel consists of one arbitrator unless either the single arbitrator, or any party in its initial pleading, requests a three-arbitrator panel. Claims of more than $50,000 are heard by a three-arbitrator panel.

To streamline the administration of smaller claims, and minimize the cost of pursuing small claims, proposed Rule 13401 would eliminate the ability of the single arbitrator to request a three-arbitrator panel for any claim of $50,000 or less.  Parties in cases involving more than $25,000, but not more than $50,000, could still request a three-arbitrator panel.

### Chairperson Lists

Currently, parties to NASD arbitrations select their arbitrators by a process of striking and ranking arbitrators from lists generated by NASD's Neutral List Selection System ("NLSS"). Once the panel is appointed, the parties jointly select the chairperson from the panel, or, if the parties do not agree, the Director appoints the highest-ranked arbitrator on the panel to serve as chairperson [7]

Although NASD provides voluntary chairperson training to its arbitrators, arbitrators who serve as chairperson are not currently required to have chairperson training, to have any particular experience, or to meet any other specific criteria beyond the requirements for serving as an arbitrator.   Over the years, one of the most frequent suggestions for improving the quality and efficiency of NASD arbitrations is to ensure that chairpersons, who play a vital role in the administration of cases, have some degree of arbitrator experience and training.

NASD agrees that requiring trained and experienced chairpersons would significantly enhance the quality of its arbitration forum. However, NASD also believes that the criteria or training requirements should not prevent arbitrators of any professional or educational background from qualifying to serve as chairpersons of panels.

To address these concerns, the proposed Industry Code would require that NASD create and maintain a roster of arbitrators who are qualified to serve as chairpersons.  The parties would

---

[7] NASD estimates that parties agree on a chairperson only about 20% of the time.

select the chairperson from the chair-qualified list in the same manner and at the same time that they select the other members of the panel. In single-arbitrator cases, the arbitrator would be selected from a list of chair-qualified arbitrators, unless the parties agreed otherwise.

In cases in which the panel consists only of non-public arbitrators, the list of chair-qualified arbitrators would consist of non-public arbitrators. In cases in which the panel consists of a majority of public arbitrators, the chair-qualified list would consist of public arbitrators.[8]

Under proposed Rule 13400, arbitrators would be eligible for the chairperson roster if they have completed chairperson training provided by NASD, or have substantially equivalent training or experience, and either:

- Have a law degree and are a member of a bar of at least one jurisdiction and have served as an arbitrator through award on at least two arbitrations administered by a self-regulatory organization ("SRO") in which hearings were held; or

- Have served as an arbitrator through award on at least three arbitrations administered by an SRO in which hearings were held.

NASD believes that these criteria strike the appropriate balance between ensuring that arbitrators who serve as chairpersons or single arbitrators have the requisite experience to fairly and efficiently administer their cases, and allowing arbitrators of all professional backgrounds to qualify as chairpersons. Arbitrators who qualify under these criteria will be placed on the chairperson roster only if they agree to serve as chairpersons; otherwise, they will remain on the general arbitrator roster. To avoid duplication of names on the lists sent to parties, arbitrators who are on the chairperson roster will not be on the general arbitrator roster.

---

[8] The proposed Customer Code would require that chairpersons in customer cases be public arbitrators unless the parties agree otherwise.

### NLSS Changes

The proposed Code would implement several changes to the operation of NLSS. NLSS would generate arbitrator names from the NASD rosters on a random, rather than rotational, basis. This change is primarily driven by computer programming requirements. NASD is currently developing a new computerized case-management system. This change would make the anticipated upgrades to the NLSS component of the new case management system significantly simpler and less expensive to program and implement.

In addition, the proposed Code would eliminate the ability of parties to unilaterally request arbitrators with particular expertise, a practice that is an ongoing source of controversy, as well as burdensome for the NASD staff to administer.

Finally, proposed Rule 13403 would expand the number of names of proposed arbitrators provided to the parties to seven names for each arbitrator on the panel, but would limit the number of arbitrators that each party may strike from each list to five. NASD believes that expanding the lists, but limiting the number of strikes each party may exercise, will expedite panel appointment and minimize the likelihood that the Director will have to appoint an arbitrator who was not on the original lists sent to parties. Currently, parties are allowed unlimited strikes, which often results in no arbitrators being left on the consolidated list. In such cases, the administration of the arbitration is delayed, and the Director must appoint arbitrators to fill the panel.

Collectively, NASD believes that these modifications to NLSS would streamline and simplify the arbitrator selection process and enhance the quality of NASD arbitrations.

### Appointment of Arbitrators (Proposed Rule 13406)

In the past, questions have occasionally arisen regarding when appointment of arbitrators occurs. To address these questions, proposed Rule 13406 would clarify that appointment of

arbitrators occurs when the Director sends notice to the parties of the names of the arbitrators on the panel. In addition, as part of the chronological reorganization of the Code, the arbitrator oath requirement that is currently in Rule 10327 has been included in proposed Rule 13406.

**Arbitrator Recusal (Proposed Rule 13409)**

Under current NASD practice, parties may request that arbitrators recuse themselves from the panel at any time. However, the current Code does not address arbitrator recusal. To provide guidance to parties, proposed Rule 13409 would provide that any party may ask arbitrators to recuse themselves from the panel for good cause. The proposed rule would also clarify that requests for arbitrator recusal are decided by the arbitrator who is the subject of the request. Although some users of the forum believe that recusal requests should be made to the full panel, the weight of case law on the subject prohibits removal of an arbitrator by other arbitrators. However, the Director may remove arbitrators for cause under proposed Rule 13410 on the same grounds applicable in current Rules 10308(d), 10312(d) and 10313.

**Replacement of Arbitrators (Proposed Rule 13411)**

Under the current Code, the provisions regarding replacement of arbitrators are contained in Rules 10308(d)(3) and 10313, which contain numerous cross-references to other rules. Proposed Rule 13411 would consolidate the various current rules. The proposed rule would also extend the option of electing to proceed with only the remaining arbitrators to all stages of the proceeding, and eliminate the 5-day limit on electing that option contained in current Rule 10313. NASD believes that parties should have the right to decide jointly to proceed with only the remaining arbitrators regardless of when the replacement occurs, and that the parties should be able to elect that option up until the time the appointment of the replacement arbitrator occurs.

Otherwise, proposed Rule 13411 does not contain any substantive changes from the current rules upon which it is based.

**Initial Prehearing Conferences (Proposed Rule 13500)**

Proposed Rule 13500 would codify the portion of the NASD Discovery Guide relating to initial prehearing conferences ("IPHCs"). Since the adoption of the Discovery Guide in 1999, IPHCs have been standard practice in NASD arbitrations. The IPCH gives the panel and the parties an opportunity to organize the management of the case, set a discovery cut-off date, identify and establish a schedule for potential motions, schedule hearing dates, determine whether mediation is desirable, and resolve many other preliminary issues. Users of the forum have found the IPHC to be a valuable tool in managing the administration of arbitrations. NASD believes that the proposed rule, which provides that an IPHC will be held in every case unless the parties jointly agree on certain scheduling and other enumerated issues in advance, will provide valuable guidance to parties and arbitrators about the role of IPHCs in NASD arbitrations.

**Recording Prehearing Conferences (Proposed Rule 13502)**

Currently the Code is silent with respect to whether and under what circumstances a prehearing conference will be tape-recorded. Proposed Rule 13502 would provide that prehearing conferences are generally not tape-recorded as a matter of course (with the exception of prehearing conferences to decide dispositive motions, discussed below). However, the rule would permit the panel to decide to tape-record a prehearing conference on its own initiative, or at the request of a party. The rule would also provide that, if the prehearing conference is tape-recorded, the Director will provide a copy of the tape to any party upon request, for a nominal fee.

The rule does not specify the fee, because the fee may vary slightly depending on the rates charged by NASD's telephone service provider, which normally makes the initial recording of telephonic hearing sessions. The current fee is $15 per tape. (Because NASD must arrange in advance to have telephonic hearing sessions taped, NASD will instruct arbitrators that they should notify NASD at least 24 hours in advance when they decide that a prehearing conference should be taped.)

**Motions (Proposed Rule 13503)**

Although motions are increasingly common in arbitration, the current Code does not refer to motions or provide any guidance with respect to motions practice. As a result, motions practice lacks uniformity, and parties and arbitrators alike are often unsure how motions should be made, responded to or decided. To provide guidance to parties and arbitrators, and to standardize motions practice in the NASD forum, proposed Rule 13503 would establish procedures and deadlines for making, responding to and deciding motions.

Some users of the forum have expressed the concern that adopting a motions practice rule will encourage more motions. Although NASD appreciates this concern, NASD believes that motions have already become a routine part of most arbitrations. Therefore, NASD believes that the Code should provide as much guidance about motions as possible to parties, particularly infrequent users of the forum. However, in an effort to deter unnecessary motions, the rule would require that, before making a motion, a party must make an effort to resolve the matter that is the subject of the motion with the other parties. The rule would also require that every motion, whether written or oral, include a description of the efforts made by the moving party to resolve the matter before making the motion.

Page 52 of 313

Another common concern about adopting a motions practice rule is that it will detract from the informal nature of arbitration.  To address this concern, the rule would make clear that most motions may be made either orally or in writing, and that written motions need not take any particular form.

**Dispositive Motions (Proposed Rule 13504)**

Another recurring question in NASD arbitrations is whether, and to what extent, arbitrators have the authority to decide dispositive motions before a hearing on the merits. In its Follow-up Report on Matters Relating to Securities Arbitration, the General Accounting Office ("GAO") noted that while NASD's arbitration rules do not specifically provide for dispositive motions, case law generally supports the authority of arbitrators to grant motions to dismiss claims prior to the hearing on the merits.[9]  Because the Code provides no guidance with respect to this question, arbitrator decisions with respect to it lack uniformity.

Generally, NASD believes that parties have the right to a hearing in arbitration.  However, NASD also acknowledges that in certain extraordinary circumstances, it would be unfair to require a party to proceed to a hearing.   Specifically, the proposed rule would:

- Provide that, except for motions relating to the eligibility of claims under the Code's six year time limit, motions that would resolve a claim before a hearing on the merits are discouraged, and may only be granted in extraordinary circumstances;

- Require that a prehearing conference before the full panel must be held to discuss the motion before the panel could grant it; and

- Allow the panel to issue sanctions against a party for making a dispositive motion in bad faith.

---

[9] U.S. General Accounting Office, Follow-up Report on Matters Relating to Securities Arbitration (April 11, 2003).

Page 53 of 313

NASD believes that this rule proposal, which was developed over several years with input from industry and public members of the NAMC, will provide necessary guidance to parties and arbitrators, and make the administration of arbitrations more uniform and transparent. NASD believes that the rule strikes the appropriate balance between allowing the dismissal of claims in limited, extraordinary circumstances and reinforcing the general principle that parties are entitled to a hearing in arbitration.

**Discovery (Proposed Rules 13505 – 13511)**

One of the most frequent comments made by users of the NASD forum is that discovery procedures are routinely ignored, resulting in significant delay and the frequent need for arbitrator intervention in the discovery process. To address these concerns, proposed Rules 13505-13511 would expand on the discovery procedures contained in current Rule 10321, with certain substantive changes.[10] The proposed rules would provide more specific guidance about how to make and respond to discovery requests, and would make clear that either producing or objecting to documents requested by parties, is mandatory. The proposed rules also would extend the time parties have to respond to document requests from 30 to 60 days, but would also provide more serious consequences when parties fail to respond, or when parties frivolously object to production of documents or information. In addition, proposed Rule 13511 would codify the sanctions provisions currently contained in the NASD Discovery Guide, clarifying the authority of arbitrators to punish parties for non-compliance with discovery rules or orders of the panel. NASD believes that, collectively, these changes will significantly minimize the number of discovery disputes in NASD arbitrations.

---

[10] These rules differ slightly from their counterparts in the proposed Customer Code (Proposed Rules 12505-12511), because NASD's Document Production Lists do not apply to industry disputes.

**Subpoenas (Proposed Rule 13512)**

Current Rule 10322 provides that the arbitrators and any counsel of record to the proceeding shall have the power of the subpoena process as provided by law, and that all parties must be given a copy of a subpoena upon its issuance. The rule also provides that parties shall produce witnesses and present proofs to the fullest extent possible without resort to the subpoena process.

Proposed Rule 13512 is substantially identical to the current rule Code, but would also require that if a subpoena is issued, the issuing party must send copies to all other parties at the same time and in the same manner as the party issued the subpoena. This modification is intended to ensure that parties receive notice of the subpoena in a timely manner.

**Exchange of Documents and Witness Lists (Proposed Rule 13514)**

Current Rule 10321(d) requires that at least 20 days before a hearing on the merits is scheduled to begin, all parties must exchange copies of all documents in their possession that they intend to present at the hearing, and must identify all witnesses they intend to present at the hearing. As a practical matter, many of the documents will already have been exchanged through discovery. Users of the forum have advised NASD that this rule would be less burdensome, and more useful, if it were amended to require only that parties exchange all documents they intend to use at the hearing that have not previously been exchanged. The proposed rule would also increase the consequences of failing to comply with this requirement. Under the current rule, the panel may exclude evidence not exchanged in a timely manner. Proposed Rule 13514 would create a presumption that parties could not use any documents at the hearing that were not exchanged, or call any witnesses at the hearing who were not identified, within the time provided

by the rule, unless the panel determines that good cause exists. The proposed rule specifically provides that good cause includes the need to use documents or call witnesses for rebuttal or impeachment purposes based on developments at the hearing.

**Postponements (Proposed Rule 13601)**

In the proposed Code, hearing adjournments are referred to as hearing postponements, for plain English purposes. Paragraph (a) of proposed Rule 13601 has been amended to provide that the panel may not grant requests to postpone a hearing that are made within 10 days of a scheduled hearing session unless the panel determines that good cause exists. This provision is intended to reduce the number of last minute requests for postponements, a practice that many users of the forum believe results in unnecessary delay and unfairness to parties.

In paragraph (b) of the proposed rule, the fee would no longer increase for a second or subsequent request by the same party. This change is intended to simplify the rule and to avoid confusion when one party requesting a postponement has made a previous request, but one or more of the other parties requesting the same postponement have not made previous requests.

The proposed rule also gives the panel the authority to allocate the postponement fees among non-requesting parties if the panel determines that the non-requesting party caused or contributed to the need for the postponement.

**Withdrawing Claims (Proposed Rule 13702)**

The current Code does not contain any guidance with respect to withdrawing claims. This occasionally causes confusion, particularly with respect to the consequences of withdrawing a claim at a particular stage in an arbitration. To provide guidance to parties, proposed Rule 12702 would provide that before a claim has been answered by a party, a claimant may withdraw the claim against that party with or without prejudice. However, after a claim has been answered by a

party, a claimant may only withdraw its claim against that party with prejudice, unless the panel decides, or the claimant and that party agree, otherwise. NASD believes that the proposed rule strikes the appropriate balance between allowing claimants to withdraw their claims without prejudice before a respondent has expended significant resources responding to the claim, and protecting the respondent from having to respond to the same claim multiple times.

**Simplified Arbitration Rule (Proposed Rule 13800)**

The simplified arbitration rule has been significantly shortened. Currently, in addition to the procedures that are unique to simplified arbitrations, Rule 10302 repeats some, but not all, of the general provisions that apply to both regular and simplified cases. The proposed rule includes only those provisions that are unique to simplified cases.

The proposed rule would eliminate the current provisions establishing special time limits or deadlines for pleadings in simplified cases, and the time limits would now be the same as those in regular cases. Frequent users of the forum report that the time limits in simplified cases are routinely extended under the current rule. To provide better guidance to parties, NASD believes that the Code should reflect that, in practice, the time to answer in simplified cases is typically the same as it is in regular cases.

Under proposed Rule 13800, the single arbitrator would be selected from the chairperson roster, unless the parties agreed otherwise. The single arbitrator would not be able to request a three-arbitrator panel, and the arbitrator would no longer have the option of dismissing without prejudice a counterclaim or other responsive pleading that increased the amount in dispute above the simplified case threshold. If a pleading increased the amount in dispute above the threshold, the case would be administered under the regular provisions of the Code. If an arbitrator has been appointed, that arbitrator will remain on the panel. If a three-arbitrator panel is required, the

remaining arbitrators will be appointed by the Director. The proposed rule would also eliminate the ability of the single arbitrator to require a hearing.

NASD believes that these changes will make the simplified arbitration rule easier for parties to understand, and will also streamline and simplify the administration of small claims in the NASD forum.

**Fees (Proposed Rules 13900 – 13903)**

One of the most frequent criticisms of the current Code is that the fee schedules are difficult to understand, particularly with respect to what claimants must pay at the time of filing. Currently, claimants must pay a non-refundable filing fee, and an initial hearing session deposit that may be refundable under certain circumstances. In addition, parties also must pay hearing session fees for each hearing session. Although the filing fee and the initial hearing session deposit are both due upon filing, they are presented in the Code as separate fees, making it hard for some parties to understand the total amount due upon filing. To address this issue, and to make the fee schedules easier to read, the fee schedules have been revised in two significant ways.

First, the filing fee and the hearing session deposit have been combined into one single fee that is paid when a claim is filed. With two exceptions, described below, the amounts paid by claimants would not change. Although what is now the refundable hearing session deposit would no longer be paid separately, an amount equal to the current hearing session deposit would be refunded if the case is settled at least 10 calendar days prior to the hearing on the merits. (Under the current Code, the initial hearing session deposit may be refunded if the case is settled 8 days prior to the hearing on the merits; this been has been changed to 10 days as part of the overall effort to standardize the time frames used in the Code.) The consolidation of the filing fee and the

hearing session deposit is intended to make it easier for claimants to understand how much they have to pay when they file a claim and what, if any, portion of that fee may be refunded.

Second, several sets of brackets in the filing fee schedule would be condensed. Currently, there are 14 separate fee brackets in the customer filing fee schedule. Some of the fees for different brackets are the same; others are separated by amounts ranging from $25-$100. The result is a schedule that is confusing and difficult to read. To simplify the schedule, the fees for claims filed by associated persons would be reorganized as follows: the $.01-$1,000 bracket ($50) and the $1,000-$2,500 bracket ($75) would be combined and the filing fee for the new bracket would be $75; the $25,000-$30,000 bracket ($600) and the $30,000-50,000 bracket ($625) would be combined, and the filing fee for the new bracket would be $600; and the $1 million - $3 million bracket ($1,700), the $3 million - $5 million bracket ($1,800), the $5 million - $10 million bracket ($1,800) and the over $10 million bracket ($1,800) would be combined, and the filing fee for the new bracket would be $1,800.

The proposed changes would not result in an increase in the total amount of fees paid by associated persons when filing a claim, except that for claims of up to $1,000, the associated person's overall filing fees would increase by $25, for claims of $30,000 to $50,000, the associated person's overall filing fees would decrease by $50, and for claims of $1 million to $3 million, the associated person's overall filing fees would increase by $100. Corresponding changes would be made to the member filing fee schedule.

NASD believes that these changes will greatly simplify the fee schedule, eliminate three repetitive high-end brackets, and align the brackets in the filing fee schedule with the brackets in the member filing fee and surcharge schedules.

(b) Statutory Basis

NASD believes that the proposed rule change is consistent with the provisions of Section 15A(b)(6) of the Act, which requires, among other things, that NASD's rules must be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, and, in general, to protect investors and the public interest.  NASD believes that reorganizing and revising its rules relating to industry arbitrations will protect the public interest by making the arbitration process more transparent for parties, providing useful guidance to parties, arbitrators and staff, and helping to standardize and streamline the administration of NASD arbitrations.  If the proposed Code is approved, NASD will offer training on the new Code to arbitrators, users of the forum, and staff.

(B)     Self-Regulatory Organization's Statement on Burden on Competition

NASD does not believe that the proposed rule change will result in any burden on competition that is not necessary or appropriate in furtherance of the purposes of the Act, as amended.

(C)     Self-Regulatory Organization's Statement on Comments on the Proposed Rule Change Received from Members, Participants, or Others

Written comments were neither solicited nor received.

III.    DATE OF EFFECTIVENESS OF THE PROPOSED RULE CHANGE AND TIMING FOR COMMISSION ACTION

Within 35 days of the date of publication of this notice in the Federal Register or within such longer period (i) as the Commission may designate up to 90 days of such date if it finds such

longer period to be appropriate and publishes its reasons for so finding or (ii) as to which the self-regulatory organization consents, the Commission will:

A.    by order approve such proposed rule change, or

B.    institute proceedings to determine whether the proposed rule change should be disapproved.

IV.    SOLICITATION OF COMMENTS

Interested persons are invited to submit written data, views, and arguments concerning the foregoing.  Persons making written submissions should file six copies thereof with the Secretary, Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549.  Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for inspection and copying in the Commission's Public Reference Room.  Copies of such filing will also be available for inspection and copying at the principal office of the NASD.  All submissions should refer to the file number in the caption above and should be submitted by [insert date 21 days from the date of publication].

For the Commission, by the Division of Market Regulation, pursuant to delegated authority, 17 CFR 200.30-3(a)(12).

Jonathan G. Katz
Secretary

# EXHIBIT 2

**Exhibit 4**

**Code of Arbitration Procedure for Industry Dispute**
**Old-to-New Conversion Chart**

| Current Industry Rule | Proposed Rule |
|---|---|
| **10000. Code of Arbitration Procedure** | |
| 10101. Matters Eligible for Submission | 13201. Statutory Employment Discrimination Claims |
| 10102. National Arbitration and Mediation | 13102. National Arbitration and Mediation Committee |
| 10103. Director of Arbitration | 13103. Director of Dispute Resolution |
| 10104. Composition and Appointment of Panel | Deleted; Obsolete |
| *IM-10104. Arbitrators Honorarium* | 13213. Payment of Arbitrators |
| 10105. Non Waiver of Association Objects and Purposes | 13104. Effect of Arbitration on NASD Regulatory Activities |
| 10106. Legal Proceedings | 13209. Legal Proceedings |
| **10200. Industry and Clearing Controversies** | |
| 10201. Required Submissions | 13200. Required Arbitration<br>13202. Claims Involving Registered Clearing Agencies |
| 10202. Composition of Panels | Deleted: Obsolete |
| 10203. Simplified Industry Arbitration | 13800. Simplified Arbitration |
| 10204. Applicability of Uniform Code | 13101. Applicability of Code and Incorporation of Reference |
| 10205. Schedule of Fees for Industry and Clearing Controversies | 13900. Fees Due When a Claim is Filed<br>13902. Hearing Session Fees, and Other Costs and Expenses. |
| 10210. Statutory Employment Discrimination Claims | 13802. Statutory Employment Discrimination Claims |
| 10211. Special Arbitrator Qualifications for Employment Discrimination Disputes | 13802. Statutory Employment Discrimination Claims |
| 10212. Composition of Panels | 13802. Statutory Employment Discrimination Claims |
| 10213. Discovery | 13802. Statutory Employment Discrimination Claims |
| 10214. Awards | 13802. Statutory Employment Discrimination Claims |
| 10215. Attorney's Fees | 13802. Statutory Employment Discrimination Claims |
| 10216. Coordination of Claims Filed in Court and in Arbitration | 13803. Coordination of Statutory Employment Discrimination Claims Filed in Court |
| **10300. Uniform Code of Arbitration** | |
| 10301. Required Submission | 13200. Required Arbitration |

| Current Industry Rule | Proposed Rule |
|---|---|
| | 13202. Claims Involving Registered Clearing Agencies<br>13203. Denial of NASD Forum and Referral to Other Forums<br>13204. Class Action Claims |
| 10302. Simplified Arbitration | 13800. Simplified Arbitration |
| 10303. Hearing Requirements – Waiver of Hearing | 13600. Required Hearing |
| 10304. Time Limitation Upon Submission | 13206. Time Limits |
| 10305. Dismissal of Proceedings | 13211. Sanctions<br>13700. Dismissal of Proceedings Prior to Award |
| 10306. Settlements | 13701. Settlement |
| 10307. Tolling of Time Limitation(s) for the Institution of Legal Proceedings and Extension of Time Limitation(s) for Submission to Arbitration | 13206. Time Limits |
| 10308. Selection of Arbitrators | 13400. Neutral List Selection System and Arbitrator Rosters<br>13401. Number of Arbitrators<br>13402. Composition of Arbitration Panels in Cases Not Involving a Statutory Discrimination Claim<br>13403. Generating and Sending Lists to the Parties<br>13404. Striking and Ranking Arbitrators<br>13405. Combining Lists<br>13406. Appointment of Arbitrators; Discretion to Appoint Arbitrators Not on List<br>13407. Additional Parties<br>13408. Disclosures Required of Arbitrators<br>13410. Removal of Arbitrator by Director<br>13411. Replacement of Arbitrators<br>13412. Director's Discretionary Authority |
| 10309. Composition of Panels | Deleted; Obsolete |
| 10310. Notice of Selection of Arbitrators | Deleted; Obsolete |
| 10311. Preemptory Challenge | Deleted; Obsolete |
| 10312. Disclosures Required of Arbitrators and Director's Authority to Disqualify | 13408. Disclosures Required of Arbitrators |
| 10314. Initiation of Proceedings | 13300. Filing and Serving Documents<br>13301. Service on Persons Currently Associated with a Member |

| Current Industry Rule | Proposed Rule |
|---|---|
| | 13302. Filing an Initial Statement Claim |
| | 13303. Answering the Statement of Claim |
| | 13304. Answering Counterclaims |
| | 13305. Answering Cross Claims |
| | 13306. Answering Third Party Claims |
| | 13308. Loss of Defenses Due to Untimely or Incomplete Answer |
| | 13207. Extension of Deadlines |
| | 13312. Multiple Claimants |
| | 13313. Multiple Respondents |
| | 13314. Combining Claims |
| | 13801. Default Proceedings |
| 10316. Representation by Counsel | 13208. Representation of Parties |
| 10317. Attendance at Hearings | 13602. Attendance at Hearings |
| *IM-10317. Closing Arguments* | 13607. Order of Presentation of Evidence and Arguments |
| 10318. Failure to Appear | 13603. Failure to Appear |
| 10319. Adjournments | 13601. Postponement of Hearings |
| 10320. Acknowledgement of Pleadings | 12904. Awards |
| 10321. General Provisions Governing Pre-Hearing Proceedings | 13501. Other Prehearing Conferences |
| | 13505. Cooperation of Parties in Discovery |
| | 13507. Responding to Discovery Requests |
| | 13508. Objecting to Discovery; Waiver of Objection |
| | 13509. Motions to Compel Discovery |
| | 13514. Exchange of Documents and Witness Lists Before Hearing |
| 10322. Subpoenas and power to Direct Appearances | 13512. Subpoenas |
| | 13513. Authority of Panel to Direct Appearances of Witnesses and production of Documents Without Subpoenas |
| 10323. Evidence | 13604. Evidence |
| 10324. Interpretation of Provisions of Code and Enforcement of Arbitrator Rulings | 13413. Jurisdiction of Panel and Authority to Interpret the Code |
| 10325. Determination of Arbitrators | 13414. Determinations of Arbitration Panel |
| 10326. Record of Proceedings | 13606. Record of Proceedings |
| 10327. Oaths of the Arbitrators and Witnesses | 13605. Witness Oath |
| 10328. Amendments | 13309. Amending Pleadings |
| | 13310. Answering Amended Claims |
| | 13311. Amendments to Amount in Dispute |

Page 312 of 313

| Current Industry Rule | Proposed Rule |
|---|---|
| 10329. Reopening of Hearings | 13609. Reopening the Records |
| 10330. Awards | 13904. Awards |
| 10333. Member Surcharge and Process Fees | 13901. Member Surcharge<br>13903. Process Fees Paid by Members |
| 10335. Temporary Injunctive Order; Requests for Permanent Injunctive Relief | 13804. Temporary Injunctive Orders; Requests for Permanent Injunctive Relief |

# EXHIBIT 3

# COMPARISON CHART OF
# CURRENT AND PROPOSED NASD ARBITRATION CODES FOR INDUSTRY DISPUTES

| SUBJECT | PROPOSED RULE | CURRENT RULE | COMMENTS |
|---|---|---|---|
| | | securities, and commodities futures or options or supervises or monitors the compliance with the securities and commodities laws of employees who engage in such activities. | |
| | **(o) Panel** The term "panel" means the arbitration panel, whether it consists of one or more arbitrators. | | A panel normally consists of one or three arbitrators, depending on the amount in dispute. However, a panel could consist of two arbitrators if an arbitrator is removed from a three-arbitrator panel, and the parties agree to proceed with only the remaining arbitrators. See Rule 12411(a). |
| | **(p) Person Associated with a Member** The term "person associated with a member" means: <br><br> (1) A natural person registered under the Rules of NASD; or | | This is based on Article I, Section dd, of NASD's By-Laws. |

# COMPARISON CHART OF
## CURRENT AND PROPOSED NASD ARBITRATION CODES FOR INDUSTRY DISPUTES

| SUBJECT | PROPOSED RULE | CURRENT RULE | COMMENTS |
|---|---|---|---|
| | (2) A sole proprietor, partner, officer, director, or branch manager of a member, or a natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with NASD under the By-Laws or the Rules of NASD.<br><br>For purposes of this Code, a person formerly associated with a member is a person associated with a member. | | |
| | **(q) Prehearing Conference**<br>The term "prehearing conference" means any hearing session, including an Initial Prehearing Conference, that takes place before the hearing on the merits begins. | | |

# EXHIBIT 4

## Robert Herskovits

**From:**      "Feeney, Jean" <Jean.Feeney@finra.org>
**To:**        <rherskovits@gkblaw.com>
**Sent:**      Wednesday, November 21, 2007 11:07 AM
**Subject:**   FW: Question regarding definition of an associated person

To:  Robert Herskovits [mailto:rherskovits@gkblaw.com]

Dear Mr. Herskovits:

Your inquiry was forwarded to me for response.  In drafting the Code of Arbitration Procedure (Code) revision that went into effect last April, we incorporated the definition of associated person (AP) into the Code for the first time.  Previously, there was an assumption that the NASD (now FINRA) By-Laws and rules definitions would apply.  We simplified the language from the By-Laws in light of our "Plain English" goal, and we omitted part (3) of the definition as it was irrelevant in the arbitration/mediation context.

Below are excerpts of the By-Laws and new Code versions of part (2) of the AP definition.

By-Laws, Article I:

> (rr) "person associated with a member" or "associated person of a member" means:  ... (2) a sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with the Corporation under these By-Laws or the Rules of the Corporation ....

Code of Arbitration Procedure, Rule 12100:

> **(r) Person Associated with a Member**
> The term "person associated with a member" means: ... (2) A sole proprietor, partner, officer, director, or branch manager of a member, or a natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with NASD under the By-Laws or the Rules of NASD.  ...

With regard to our use of "or a natural person" instead of the By-Laws terminology "or other natural person," no substantive change was intended, nor did we highlight this in our rule filing as a substantive change.  An associated person must be a natural person, as before.  We will consider whether we need to clarify the rule as part of other changes we are planning for 2008.

Thanks for your inquiry.

Jean I. Feeney
Vice President and Chief Counsel
Dispute Resolution
Financial Industry Regulatory Authority (FINRA)

1735 K St. NW
Washington, DC 20006-1500

tel 202 728 6959
fax 301 527 4751
www.finra.org
mailto:jean.feeney@finra.org

Admitted in the District of Columbia

-----Original Message-----
From: Robert Herskovits [mailto:rherskovits@gkblaw.com]
Sent: Thursday, November 08, 2007 3:03 PM
To: NASD ADR CI Mailbox
Subject: Question regarding definition of an associated person

Dear Ms. Feeney:

The definition of "associated person" differs slightly as between the new Code of Arbitration Procedure (Rule
12100(r) and 13100(r)) and the current NASD By-Laws (Art. I (c)(c)).

The relevant part of the By-Laws states that an associated person can include "...a sole proprietor, partner,
officer, director, or branch manager of a member, or other natural person occupying a similar status ...."

The Code does not use the word "other" in its definition of associated person.

I am wondering if this ommission was intentional, particularly in light of NASD NTM 99-95 in which the NASD
amended the By-Law definition of associated person specificaly to include the word "other." The NASD did so "to
clarify that the subsection describes only natural persons."

Should practicioners assume that "associated person", as defined in the Code without use of the word "other", is
meant to include corporate entities?

Thank you for your attention to this request for clarification.

Robert L. Herskovits, Esq.
Gusrae, Kaplan, Bruno & Nusbaum PLLC
120 Wall Street
New York, NY 10004
(212) 269-1400

This email, including attachments, may include confidential and/or
proprietary information, and may be used only by the person or entity
to which it is addressed. If the reader of this email is not the
intended recipient or his or her authorized agent, the reader is
hereby notified that any dissemination, distribution or copying of this
email is prohibited. If you have received this email in error,
please notify the sender by replying to this message and delete this
email immediately.