# EXHIBIT A

## AGREEMENT BETWEEN

AXA NETWORK, LLC, its subsidiaries and AXA Network of Texas, Inc.,
hereinafter collectively called "AXA Network"
and the undersigned, hereinafter called the ASSOCIATE

IT IS MUTUALLY AGREED, that

I. **Authority.** The Associate, when properly licensed, shall canvass on behalf of AXA Network for applications for insurance policies and annuity contracts to be issued by The Equitable Life Assurance Society of the United States (hereinafter "The Equitable"), or any insurance company affiliate thereof as may be provided by agreement between The Equitable and/or AXA Network and such insurance company affiliate, and the Associate shall collect the first premiums and considerations thereon.

Notwithstanding the foregoing, the Associate shall canvass on behalf of AXA Network for such applications only in jurisdictions in which AXA Network is properly licensed to distribute such policies and contracts.

II. **Territory.** The Associate may canvass for applications for insurance policies and annuity contracts and otherwise operate within any jurisdiction and territory where both the Associate and AXA Network are properly licensed to sell such policies and contracts, but is assigned no exclusive rights in any territory.

III. **Commissions and Service Fees.** The Associate shall be allowed commissions, service fees and additional compensation on premiums, and considerations for insurance policies and annuity contracts secured under this Agreement in accordance with the Schedules of Commissions (issued by AXA Network with notice to the Associate) in force on the date of the application for the policy or contract, as such premiums and considerations become due and are paid. If the Associate held an Equitable agent's agreement immediately prior to entering into this Agreement, the Associate shall continue to be allowed commissions, service fees and additional compensation on premiums, and considerations for insurance policies and annuity contracts secured under such prior agent's agreement in accordance with the applicable schedules of commissions in force on the date of the application for the policy or contract, as such premiums and considerations become due and are paid. Upon termination of this Agreement, however, service fees and additional compensation, if any, shall no longer be allowed, and renewal commissions shall be allowed only as provided in the Vesting Provisions of Paragraph IV below.

IV. **Vesting of Commissions.** Renewal commissions on premiums for insurance policies and considerations for annuity contracts secured by the Associate under this Agreement, or under any prior agent's agreement between the Associate and The Equitable in effect immediately prior to this Agreement, to the extent allowable under the applicable schedules of commissions in force on the date of the application for the policy or contract, shall become vested on the occurrence of the earliest of the following events:

A. Completion of 12 years of continuous service with AXA Network and/or The Equitable, or 10 years of continuous service with AXA Network and/or The Equitable and the attainment of 120,000 production credits. Any period under agreement as an Associate with, or in the service of, The Equitable or any of its insurance company affiliates, or AXA Network immediately preceding this Agreement or immediately following the termination of this Agreement shall be deemed part of such service.

B. The Associate's 65th birthday, if this Agreement is then in full force and effect, or if immediately following the termination of this Agreement the Associate continues under agreement with or in the service of AXA Network and/or The Equitable or any of their insurance company affiliates until age 65.

C. The death of the Associate, if this Agreement is then in full force and effect, or if immediately following the termination of this Agreement the Associate continues under agreement with or in the service of AXA Network and/or The Equitable or any of their insurance company affiliates until death.

If this Agreement shall terminate, a collection charge, as specified in the Schedules of Commissions, shall be deducted from payments of vested renewal commissions, except where such commissions have vested as provided in Sub-paragraphs B or C.

V. **Assignments.** No assignment of this Agreement shall be valid. No assignment of commissions or other payments due or to become due under this Agreement shall be recognized unless written acknowledgment of its receipt and filing is issued by AXA Network.

VI. **Limitations on Associate's Authority.** The Associate shall have no authority with respect to AXA Network and/or The Equitable or any of their insurance company affiliates other than as expressly stated in this Agreement. Without limiting the generality of the foregoing, the Associate shall not:

- make, alter or discharge contracts,
- waive forfeitures,
- grant permits,
- name special rates or guarantee dividends,
- make any endorsements on policies and annuity contracts,
- accept or issue receipts for deferred or renewal premiums or considerations,
- receive any moneys due or to become due except as specified in Paragraph I of this Agreement or as

DOCSNY1:616028.2

specifically authorized in writing by an officer of AXA Network, provided, however, that any existing, written authorizations to receive any moneys due or to become due, specifically issued to the Associate by an officer of The Equitable under any prior agent's agreement between the Associate and The Equitable, shall remain in full force and effect;

- deliver a policy of life insurance or accident and health insurance unless payment of the premium shall have been made during the applicant's good health, or
- bind AXA Network and/or The Equitable or any of their insurance company affiliates in any way.

VII. **Regulations.** This Agreement is subject to such rules and regulations as AXA Network has established or may hereafter establish covering the conduct of its business.

VIII. **Rejections.** The Equitable and/or any of its insurance company affiliates shall at all times have the right in their sole discretion to reject any applications for their policies of insurance and annuity contracts.

IX. **Reservation of Rights** The rights reserved to AXA Network and/or The Equitable in this Agreement or in any prior agent's agreement between the Associate and The Equitable, including without limitation those contained in Paragraphs X, XI, and XIV, and Subparagraph B of Paragraph XIII, shall survive the termination of this Agreement.

X. **Collections and Return of Property.** All collections made by the Associate hereunder shall be kept in trust entirely separate and distinct from other funds, and shall forthwith be paid over in cash to AXA Network. Any and all property of AXA Network held by the Associate shall be returned to AXA Network at an appointed time, or on demand. All unpaid policies or contracts and all other property of The Equitable or any insurance company affiliate thereof held by the Associate shall be delivered to AXA Network at an appointed time, or on demand.

XI. **Indebtedness.** AXA Network may offset as a first lien against any claim for compensation under this Agreement any debt due or to become due, hereunder or otherwise, from the Associate to AXA Network or any of its affiliates. Debt not fully satisfied by such offset is a personal debt of the Associate recoverable at any time with interest under AXA Network's rules. "Debt" as used herein includes, but is not limited to, paid but unearned commissions attributable to refunded termination values or to premiums wholly or partially unpaid or refunded, loans, and amounts claimed by AXA Network or any of its affiliates under any account with the Associate.

XII. **Bond.** The Associate hereby agrees to furnish, on request, a bond of indemnity satisfactory to AXA Network and maintain the same in force, in such an amount and with such sureties as AXA Network may require. Any bond of indemnity furnished to The Equitable or any of its affiliates shall continue to be maintained by the Associate.

XIII. **Termination.**

A. This Agreement shall be terminable forthwith if the Associate shall enter under contract with or into the service of any insurance company other than The Equitable or any insurance company affiliate thereof, or if the Associate shall fail to comply with any of the provisions or conditions of this Agreement, or if the Associate shall violate any law in force in the territory in which the Associate is doing business.

B. If this Agreement is terminated by reason of violation of Paragraph X or Sub-paragraphs A and B of Paragraph XIV or Paragraph XV, or if after termination of this Agreement the Associate engages in acts or practices proscribed by Paragraph X or Sub-paragraphs A and B of Paragraph XIV, the Associate shall forfeit all commission interest which might otherwise have been acquired under any agreement with AXA Network or under any prior agreement between the Associate and The Equitable.

C. This Agreement shall be terminable by AXA Network upon 30 days prior written notice to the Associate where the Associate in the sole discretion of the Branch Manager has failed to achieve applicable production standards.

D. Unless otherwise terminated, this Agreement may be terminated by either party with or without cause, by a notice in writing delivered personally, or mailed to the other party at the last known address, at least thirty days before the date therein fixed for such termination.

XIV. **Unauthorized Practices.**

A. **Twisting.** The Associate shall not at any time induce or endeavor to induce policyowners of The Equitable or any insurance company affiliates thereof to relinquish their policies or contracts.

B. **Proselyting.** The Associate shall not at any time induce or endeavor to induce associates of AXA Network to terminate their relationship with AXA Network in order to become sales representatives or sales managers with another insurance company, agency, or broker.

C. **Rebates.** The Associate shall under no circumstances pay or allow, or offer to pay or allow, any rebate of premium or consideration in any manner whatsoever, directly or indirectly.

XV. **Adverse Activity.** The Associate shall not violate any law in force in any territory in which the Associate is doing business. Additionally, the Associate shall not engage or become involved in any activity or other conduct or association, whether or not lawful, which affects or tends to affect adversely the reputation of AXA Network and/or The

DOCSNY1:616028.2

2

Equitable, or their affiliates, or of any of their associates or employees generally or specifically in their community, or which casts odium on them or on the officers or directors of AXA Network and/or The Equitable, or their affiliates or which might otherwise be detrimental to the business of AXA Network and/or The Equitable or their affiliates.

XVI. **Associate Benefit Program.** The Associate may participate in the Associate Benefit Program as now or hereafter provided by AXA Network to the extent for which such Associate is qualified. The Associate shall not be eligible for workers' compensation benefits.

XVII. **Independent Contractor.** Nothing contained herein shall be construed to create the relationship of employer and employee between AXA Network or The Equitable and the Associate. The Associate shall be free to exercise independent judgment as to the persons from whom applications for policies and annuity contracts will be solicited and the time and place of solicitation.

The Associate shall abide by the rules and regulations of AXA Network in accordance with Paragraph VII hereof but such rules and regulations shall not be construed so as to interfere with the freedom of action of the Associate as described in this Paragraph.

XVIII. **Violations.** Without prejudice to AXA Network's right of termination under Paragraph XIII hereof, AXA Network shall have the right, if the Associate shall violate any of the terms of this Agreement, to suspend and withhold payment of any commission or service fee otherwise payable hereunder or under any prior agreement between the Associate and The Equitable, until satisfied that such violation has ceased or been cured.

XIX. **AXA Network's Prior Right.** While this contract is in effect, the Associate shall not, and shall not agree to, solicit, obtain or submit any application to any company other than The Equitable or any insurance company affiliate thereof, for any insurance policy or annuity contract, nor shall the Associate in any other way assist in obtaining or providing any such insurance or annuity from any such other company, unless specifically authorized in writing by AXA Network, provided, however, that any existing, written authorizations issued by an officer of The Equitable shall remain in full force and effect.

XX. **Sole Agreement.** This Agreement is intended to be the entire and final understanding of the parties hereto, with respect to the Associate's authority as specified in Paragraph I of this Agreement, and shall supersede all prior agreements if any, of the parties hereto with respect to such Associate's authority only. In addition, as of the date on which AXA Network becomes properly licensed in a particular jurisdiction to distribute insurance policies and annuity contracts of The Equitable or any of its insurance company affiliates, this Agreement shall supersede any agent's agreement between the Associate and The Equitable, to the extent then in effect, for the sale of such policies and contracts in that particular

jurisdiction. This Agreement may not be modified other than by a writing approved by an officer of AXA Network. It is understood, however, that all existing obligations to AXA Network and/or The Equitable heretofore incurred or assumed by the Associate, and existing liens created in connection therewith, shall continue to exist, and the Associate's rights under any prior contracts and agreements, with AXA Network and/or The Equitable are not impaired, provided, however, that any rights under any prior agent's agreement between the Associate and The Equitable and/or AXA Network shall not be in addition to any rights accorded the Associate under this Agreement.

XXI. **Effective Date.** This Agreement shall take effect in any jurisdiction where the Associate is properly licensed to sell insurance policies and annuity contracts of The Equitable or any of its insurance company affiliates, as of the later of (a) January 1, 2000, (b) the date on which AXA Network becomes properly licensed to distribute such policies and contracts in that particular jurisdiction or (c) the date this Agreement is duly signed by the Associate and countersigned by an authorized representative of AXA Network.

IN WITNESS WHEREOF, the parties to this Agreement have subscribed their names this 12 day of Nov. 2001.

EXECUTED IN DUPLICATE

_Steven Novick_
ASSOCIATE

494 Canoe Hill Rd
STREET ADDRESS

New Canaan CT 06840
CITY (COUNTY) STATE

AXA NETWORK, LLC
for itself and its subsidiaries and as
agent of AXA Network of Texas, Inc.

By: _____
AUTHORIZED REPRESENTATIVE

116684

(219-1405-91-8)
14A Edition

# EXHIBIT B

## AGREEMENT BETWEEN AXA ADVISORS, LLC
hereinafter called AXA Advisors, and the undersigned registered representative of AXA Advisors, hereinafter called the Representative

It is mutually agreed, that:

**I. Authority.** The Representative, when authorized by AXA Advisors to do so with respect to each product or service offered or distributed by AXA Advisors, may solicit customers or clients for such products and services on AXA Advisors' behalf. The Representative may also perform other functions with respect to such products or services, when authorized by AXA Advisors to do so.

All authority granted under this Agreement is contingent upon the Representative's obtaining and keeping in force such permits or licenses as may be required by all Federal, state, or local governmental authorities or by other regulatory authorities, with respect to each activity engaged in by the Representative, and such authority with respect to each activity shall automatically terminate in the event that any required permit or license is suspended, revoked, or otherwise lapses.

Notwithstanding any advice or assistance that may be offered or given to the Representative by AXA Advisors, including the payment of license or registration fees, it shall be the Representative's sole responsibility to obtain and keep in force all required permits or licenses.

**II. Territory.** Unless otherwise specified by AXA Advisors with respect to a particular product or service, the Representative's authority to represent AXA Advisors, granted pursuant to Section I, extends to any territory in which the Representative is properly licensed and in which AXA Advisors has approved the offering or distribution of such product or service.

**III. Commissions and Service Fees.** The Representative shall be paid such commissions, service fees and other compensation as may be provided for by schedules and rules published from time to time by or on behalf of AXA Advisors. Such rules may include provisions governing the timing of payment, the recovery of commissions for business that does not persist, and all other aspects of the Representative's entitlement to compensation. Unless expressly provided by such rules, there will be no vesting of renewal commissions or other continuing compensation, if any such renewal commission or other continuing compensation is payable with respect to any products or services offered through the Representative under this Agreement. Any compensation due and payable by AXA Advisors hereunder may be paid by AXA Network, LLC ("AXA Network") or such other paymaster as AXA Advisors may designate from time to time.

**IV. Assignments.** No assignment of this Agreement by the Representative shall be valid. No assignment of commissions, service fees, or other compensation or payments due or to become due under this Agreement shall be recognized unless written acknowledgment of its receipt and filing is issued by or on behalf of AXA Advisors. No assignment of compensation or payments due or to become due shall be valid to the extent it violates any law, regulation or AXA Advisors policy pertaining to the assignment or to the underlying transaction giving rise to the entitlement to the commission, service fee or other compensation or payments.

**V. AXA Advisors Rules and Regulations.** This Agreement is subject to, and the Representative shall adhere to, all rules, regulations, policy guidelines or other instructions that AXA Advisors (or another entity acting on its behalf) may from time to time publish (including any item that has been published in the name of Equico Securities, Inc. or EQ Financial, by which AXA Advisors was formerly known) in the form of compliance guides or manuals, informational bulletins, notices or other written communications. These rules, regulations, policy guidelines or instructions may place limitations on the authority of the Representative to act on AXA Advisors' behalf with respect to products and services offered or distributed by AXA Advisors.

**VI. Reservation of Rights.** The rights reserved to AXA Advisors in this Agreement, including, without limitation, those contained in Sections VII, VIII and XI, shall survive the termination of this Agreement.

**VII. Collection and Return of Property.** Any client funds received by the Representative arising out of the activities performed hereunder shall be kept entirely separate and distinct from other funds, and the Representative shall forthwith pay over the same to AXA Advisors or to such other party as AXA Advisors may designate. All property of AXA Advisors entrusted to the Representative including, but not limited to, price lists, customer and client lists, copies of files and records required by any regulatory authority to be maintained under applicable recordkeeping rules, training and sales literature and other material, shall be used by the Representative only for activities on behalf of AXA Advisors, and all such materials shall be returned to AXA Advisors on demand.

**VIII. Indebtedness.** AXA Advisors may offset against any claim for compensation arising under this Agreement, any debt now due or to become due at any time form the Representative to AXA Advisors or any of its subsidiaries or affiliates, whether arising hereunder or otherwise. Any such debt shall be a first lien against any such claim and shall survive the termination of this Agreement and, to the extent remaining after offset, shall be a personal debt of the Representative.

**IX. Bond.** The Representative hereby agrees to furnish, on request, a bond of indemnity satisfactory to AXA Advisors and maintain the same in force, in such an amount and with such sureties as AXA Advisors may require.

**X. Terminations and Suspensions.**

A. This Agreement shall be terminable forthwith if the Representative shall fail to comply with any of the provisions or conditions of this Agreement, or if the Representative shall violate any law or regulation in force in any territory in which the Representative is doing business. This Agreement, and the authority conferred herein, may be suspended in the event the Representative is arrested, charged, or investigated by any Federal, state, or local government authority or other regulatory authority, or in the event AXA Advisors or any of its subsidiaries or affiliates have reasonable grounds to investigate information or allegations indicating that the Representative may have violated any published rule, regulation, or policy guideline of AXA Advisors or any of its subsidiaries or affiliates, or any law or regulation of any relevant jurisdiction. Such suspension may remain in effect until the final resolution of the subject matter of the arrest, charge or investigation.

B. Unless otherwise terminated, this Agreement may be terminated by either party by a notice in writing delivered personally, or mailed to the other party at the last known address, at least thirty days before the date therein fixed for such termination.

C. In the event that the Representative's Associate's Agreement with AXA Network terminates, this Agreement shall automatically terminate as of the same date.

DOCSNY1:645363.1

XI. **Unauthorized Practices.**

    A. <u>Proselyting</u>. The Representative shall not at any time induce or endeavor to induce any registered representative of AXA Advisors to terminate his or her relationship with AXA Advisors or any of its subsidiaries or affiliates in order to become a sales representative or sales manager with a company or firm that offers or distributes products or services competitive with those offered or distributed by AXA Advisors or any of its subsidiaries or affiliates.

    B. <u>Rebates</u>. The Representative shall under no circumstances pay or allow, or offer to pay or allow, any rebate of consideration in any manner whatsoever, directly or indirectly, except insofar as such rebate may be authorized in writing by AXA Advisors.

XII. **Independence.** The Representative shall be free to exercise independent judgement as to the persons who will be solicited and the time and place of solicitation subject to relevant laws and regulations, and to the published rules, regulations, policy guidelines or other instructions of AXA Advisors.

XIII. **Breach.** In the event of a breach, or threatened breach, of this Agreement by the Representative, AXA Advisors shall be entitled to an injunction restraining such breach without showing or proving the actual damage sustained or about to be sustained. This remedy, and all other remedies provided in this Agreement, shall be cumulative and the exercise or non-exercise of this remedy shall not preclude any other remedy at law or in equity.

XIV. **Effective Date.** This Agreement shall be effective as of the later of the dates appearing below, when it has been duly signed by the Representative and countersigned on behalf of AXA Advisors by its authorized representative.

XV. **Declaration of Representative.** I have read, and I understand, accept and agree to be bound by, the terms of this Agreement as set forth above. I also agree that I will not solicit, or participate in the solicitation of, orders for securities or any other products or services until (1) I have been appropriately licensed under the laws of any jurisdiction in which I may engage in such activities and (2) I have received written notice from AXA Advisors that I may proceed to engage in such activities in such jurisdictions.

Dated this 12 day of Nov.,

in the year 2006.

_____
Representative's Signature

Steven Scott Nollck
Representative's Full Name (Printed)


Dated this ____ day of _____,

in the year _____.

AXA Advisors, LLC

By: _____

EXECUTED IN DUPLICATE

(Revised as of 1/01/00)

DOCSNY1:645563.1