UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STEVEN S. NOVICK,

                  Plaintiff/
                  Counterclaim Defendant,

        - against -

AXA NETWORK, LLC and
AXA ADVISORS, LLC,

                  Defendants/
                  Counterclaim Plaintiffs.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ECF Case**

Case:
07 Civ. 7767 (AKH)(KNF)

**DEFENDANTS/COUNTER-
CLAIM PLAINTIFFS'
ANSWER AND
COUNTERCLAIMS**

Defendants/Counterclaim Plaintiffs AXA Network, LLC ("AXA Network") and

AXA Advisors, LLC ("AXA Advisors") (collectively "Defendants" or "AXA"), by their

attorneys, Epstein Becker & Green, P.C., for their answer to the amended complaint of

Plaintiff/Counterclaim Defendant Steven S. Novick ("Plaintiff" or "Novick") and counterclaims,

state as follows:

### AS TO "PARTIES"

      1.      Defendants deny knowledge or information sufficient to form a belief

as to the truth of the allegations contained in paragraph 1 of the amended complaint except to

admit on information and belief that Plaintiff is domiciled in and a resident of the State of

Connecticut.

      2.      Defendants admit the allegations contained in paragraph 2 of the

complaint except to deny that AXA Network's principal place of business is located in New

York, New York.

3.     Defendants admit the allegations contained in paragraph 3 of the amended complaint.

### AS TO "JURISDICTION AND VENUE"

4.     Defendants admit the allegations in paragraph 4 of the amended complaint.

5.     Defendants deny the allegations contained in paragraph 5 of the amended complaint except to admit that venue is proper in this district and that Plaintiff alleges that a substantial part of the events giving rise to Plaintiff's claims occurred within this district.

### AS TO "INTRODUCTORY STATEMENT"

6.     Defendants deny the allegations in paragraph 6 of the amended complaint except to admit that AXA Network is in the insurance industry, that AXA Network and AXA Advisors, a broker/dealer and member of the FINRA, are owned by a common parent and that, from December 2002 to on or about October 12, 2006, Plaintiff was an independent contractor affiliated with AXA Network as an agent and with AXA Advisors as a registered representative.

7.     Defendants deny the allegations contained in paragraph 7 of the amended complaint except to admit that agents and registered representatives of Defendants operate as independent contractors and that Plaintiff was a party to agreements governing the payment of business expenses and the rate of payouts on clients' accounts and a party to loan agreements and respectfully refer the Court to those documents, the terms of which speak for themselves, and to further admit, upon information and belief, that Plaintiff purported to do business as the New Canaan Financial Group, LLC and the New Canaan Group, LLC.

## AS TO "FACTS COMMON TO ALL COUNTS"

8.     Defendants deny the allegations contained in paragraph 8 of the amended complaint, including footnote 1, except to deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ronald Lorch's ("Lorch") intentions with respect to Plaintiff, to admit that Lorch and Larry Pasaretti ("Pasaretti"), have been agents of AXA Network and registered representatives of AXA Advisors, to admit, upon information and belief, that Lorch is Plaintiff's father-in-law and that Lorch and Pasaretti did business together, and to deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding the specific nature of agreements between Lorch and Pasaretti.

9.     Defendants deny the allegations contained in paragraph 9 of the amended complaint except to deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding Pasaretti allegedly "moving" accounts.

10.     Defendants deny the allegations contained in paragraph 10 of the amended complaint, including footnote 2, except to admit that Defendants maintain policies concerning misconduct and retaliation and to respectfully refer the Court to such policies, the terms of which speak for themselves.

11.     Defendants deny the allegations contained in paragraph 11 of the amended complaint except to admit that AXA Distribution Holding Corporation, AXA Advisors sole member, made capital contributions to AXA Advisors in the amount of $11,500,000 in 2004, $13,321,000 in 2005, and $22,600,000 in 2006.

12.     Defendants deny the allegations contained in paragraph 12 of the amended complaint except to admit that, on or about December 15, 2006, AXA Advisors entered

into agreements with Linsco/Private Ledge Corp. ("LPL"), whereby LPL agreed to provide brokerage, clearing and custody services on a fully disclosed basis, offer LPL investment advisory programs and platforms for AXA Advisors' customers, provide technology and additional processing and related services to AXA Advisors' representatives and customers and that the agreements were for five-year terms subject to 24-month extensions and to respectfully refer the Court to the agreements, the terms of which speak for themselves.

13.     Defendants deny the allegations contained in paragraph 13 of the amended complaint except to admit that AXA Advisors' potential arrangements with LPL were the subject of discussions with registered representatives of AXA Advisors.

14.     Defendants deny the allegations contained in paragraph 14 of the amended complaint.

15.     Defendants deny the allegations contained in paragraph 15 of the amended complaint except to admit that AXA Advisors filed a Form U-5 Uniform Termination Notice for Securities Industry Registration on or about October 13, 2006 ("Form U-5") stating under the question "Reason for Termination" that Plaintiff: "Solicited interest in a private security transaction without the approval of the firm."

(a)     Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in subparagraph (a) of paragraph 15 of the amended complaint except to admit on information and belief that, on or about September 27, 2006, Plaintiff received an e-mail from a Michael Zimmerman concerning raising money for a start up company and inquiring whether Plaintiff or others would be interested in raising capital for that company and to refer the Court to the referenced email, the terms of which speak for themselves.

(b)    Defendants deny the allegations contained in subparagraph (b) of paragraph 15 of the amended complaint except to admit that Plaintiff forwarded an email from Mr. Zimmerman to several persons, including Mr. Dane who received an e-mail from Plaintiff dated October 5, 2006, in which Plaintiff forwarded to Mr. Dane an e-mail from Mr. Zimmerman, and that, in Plaintiff's e-mail to Mr. Dane, Plaintiff stated, in part,

> Hey all, This [sic] is a venture opportunity that on paper, looks to be great. [sic] (if there is such a thing. . .)  I would like you to come meet and discuss this unique situation with NAU's management (and several other of my clients), to discuss how we may benefit from investing.  I am interested in raising some money and personally participating in this round. . . .

. . . .

> I'd like very much if you'd consider meeting us in NYC next week, to discuss.

Defendants also respectfully refer the Court to the e-mail from Plaintiff to Mr. Dane, which document speaks for itself.

(c)    Defendants deny the allegations contained in subparagraph (c) of paragraph 15 of the amended complaint, except to admit that Georgette Geller of AXA Advisors sent a letter to Plaintiff dated October 6, 2006, which stated, in part, "You must immediately **Cease and Desist** from soliciting or recommending this, or any other, non-AXA Advisors investment to anyone.  Your conduct in this matter may be deemed by the Firm to be 'selling away'" (emphasis in original), and to respectfully refer the Court to that document which speaks for itself.

(d)    Defendants deny the allegations contained in subparagraph (d) of paragraph 15 of the amended complaint except to admit that, on October 10, 2006, Mr. Dane sent

Plaintiff an email stating in part that the circumstances that were the subject of Plaintiff's attempts to contact him were "presently the subject of review by Law and Compliance. It has been suggested that I not engage in a discussion of the subject with you while the review is ongoing . . ." and to refer the Court to that e-mail, which document speaks for itself.

(e)    Defendants admit the allegations contained in subparagraph (e) of paragraph 15 of the amended complaint.

(f)    Defendants admit upon information and belief the allegations contained in subparagraph (f) of paragraph 15 of the amended complaint.

(g)    Defendants deny the allegations contained in subparagraph (g) of paragraph 15 of the complaint, except to admit that Defendants terminated their respective relationships with Plaintiff effective October 12, 2006.

(h)    Defendants deny the allegations contained in subparagraph (h) of paragraph 15 of the amended complaint, except to admit that AXA Advisors filed the Form U-5 on or about October 13, 2006.

16.    Defendants deny the allegations contained in paragraph 16 of the amended complaint except to admit that AXA Advisors has a Disciplinary Action Program that included a National Disciplinary Action Committee and a Management Disciplinary Action Committee to which, among other things, allegations of selling away, improper sales practices and use of unapproved sales materials may be referred and/or appealed, as the case may be, and which are described in AXA Advisors' Compliance Manual, which speaks for itself, and to which Defendants respectfully refer the Court. Defendants further admit that AXA Advisors' 2005 Compliance Manual states, in part, with respect to the Disciplinary Action Program, that

"[t]he goal is to maintain uniform, fair and beneficial disciplinary processes for Representatives and supervisors."

     17.     Defendants deny the allegations contained in paragraph 17 of the amended complaint except to admit that the termination of Plaintiff's relationship with AXA Advisors was not reviewed by the National Disciplinary Action Committee and that Plaintiff did not seek review of the termination of his Agreements by the National Disciplinary Action Committee or the Management Disciplinary Action Committee.

     18.     Defendants deny the allegations contained in paragraph 18 of the amended complaint except to admit that it maintains policies and procedures regarding reporting misconduct and retaliation and respectfully refer the Court to those policies and procedures which speak for themselves.

     19.     Defendants deny the allegations contained in paragraph 19 of the amended complaint.

     20.     Defendants deny the allegations contained in paragraph 20 of the amended complaint except to deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding the intentions or actions of any of the non-party broker/dealers referenced therein to offer employment to Plaintiff.

     21.     Defendants deny the allegations contained in paragraph 21 of the amended complaint.

## AS TO THE "FIRST CAUSE OF ACTION"

22.     In response to paragraph 22 of the complaint, Defendants repeat and reallege their responses to paragraphs 1-21 of the amended complaint as if they were set forth fully herein.

23.     Defendants deny the allegations contained in paragraph 23 of the amended complaint except to admit that, on or about November 12, 2002, Plaintiff executed an Agent's Agreement with AXA Network, that a copy of the Agent's Agreement without any amendments or addenda therefore is annexed to the amended complaint as Exhibit A, that the Agent's Agreement states: "this Agreement is subject to such rules and regulations as AXA Network has established or may hereafter establish covering the conduct of its business" in Article VII, and "The Associate shall not be eligible for workers' compensation benefits" in Article XVI, and that Plaintiff was designated as an independent contractor in Article XVII of the Agent's Agreement, and to respectfully refer the Court to the Agent's Agreement which document speaks for itself.

24.     Defendants deny the allegations contained in paragraph 24 of the amended complaint except to admit that, by letter dated October 12, 2006, AXA Network notified Plaintiff that, among other things, it had elected to terminate the Agent's Agreement under Article XIII, Paragraph A of that Agreement and to respectfully refer the Court to such letter which speaks for itself.

25.     Defendants deny the allegations contained in paragraph 25 of the amended complaint except to admit that, on or about November 12, 2002, Plaintiff executed an agreement with AXA Advisors ("the Representative Agreement"), a copy of which is annexed to

the amended complaint as Exhibit B without any addenda or clarifying documents thereto and that Article V of the Representative Agreement states, among other things, in part, "[t]his Agreement is subject to, and the Representative shall adhere to, all rules, regulations, policy guidelines or other instructions that AXA Advisors (or another entity acting on its behalf) may from time to time publish … in the form of compliance guides or manuals, informational bulletins, notices or other written communications…," and to respectfully refer the Court to the Representative Agreement, the terms of which speak for themselves.

26.    Defendants deny the allegations contained in paragraph 26 of the amended complaint except to admit that, by letter dated October 12, 2006, AXA Advisors notified Plaintiff that, among other things, it had elected to terminate the Representative Agreement under Article X, Paragraph A of the Representative Agreement and to respectfully refer the Court to such letter, the terms of which speak for themselves.

27.    Defendants deny the allegations contained in paragraph 27 of the amended complaint except to admit that Plaintiff executed a Promissory Note payable to Defendants dated January 15, 2003 (the "Promissory Note"), a copy of which is attached to the amended complaint as Exhibit C, and to respectfully refer the Court to such document which speaks for itself, and to admit that, by letter dated May 22, 2006, Plaintiff, Defendants agreed to amend the Promissory Note in certain respects effective January 15, 2003, and to respectfully refer the Court to that document, a copy of which is attached to the amended complaint as Exhibit D, the terms of which speak for themselves.

28.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the amended complaint.

29.    Defendants admit the allegations contained in paragraph 29 of the amended complaint, including subparagraphs (a), (c), (d) and (e), except to deny the allegations in subparagraph (b) that the state and federal courts in New York have the sole and exclusive jurisdiction in connection with any action arising out of the Note and to respectfully refer the Court to Exhibits C and D to the amended complaint, the terms of which speaks for themselves.

30.    Defendants deny the allegations contained in paragraph 30 of the amended complaint except to admit that Production Credits are the measurement by which agents of AXA are compensated for sales of products and services and to respectfully refer the Court to the operative schedules which speak for themselves.

31.    Defendants admit that, by letter dated November 21, 2006, Defendants, among other things, demanded repayment of the outstanding principal balance of the Proven Producer Transition Allowance Loan Promissory Note then due in the amount of $400,000, which amount Plaintiff has refused to repay, and deny the remaining allegations contained in paragraph 31 of the amended complaint and respectfully refer the Court to that letter which speaks for itself.

32.    Defendants deny the allegations contained in paragraph 32 of the amended complaint.

33.    Paragraph 33 of the amended complaint sets forth a legal conclusion for which no response is required.  To the extent any response is required, Defendants deny the allegations contained in paragraph 33 of the amended complaint except to state that an actual controversy exists with regard to Plaintiff's improper refusal to repay his loans and that the Court is vested with the power to adjudicate Defendants' claims with respect thereto.

34.    Defendants admit the allegations contained in paragraph 34 of the amended complaint except to deny the allegations contained in subparagraph (c) that the state and federal courts in New York have the sole and exclusive jurisdiction in connection with any action arising out of the Note and to respectfully refer the Court to Loan Note, the terms of which speak for themselves.

35.    Defendants admit the allegations contained in paragraph 35 of the amended complaint that, by letter dated November 21, 2006, Defendants demanded repayment of the Loan Note in the amount of $460,491.78, representing the then outstanding balance due under the Loan Note, deny the remaining allegations in paragraph 35 and respectfully refer the Court to that document which speaks for itself.

36.    Paragraph 36 of the amended complaint sets forth a legal conclusion for which no response is required.  To the extent any response is required, Defendants deny the allegations contained in paragraph 36 of the amended complaint except to state that an actual controversy exists with regard to Plaintiff's improper refusal to repay his loans and that the Court is vested with the power to adjudicate Defendants claims with respect thereto.

## AS TO THE "SECOND CAUSE OF ACTION"

37.    In response to paragraph 37 of the amended complaint, Defendants repeat and reallege their responses to paragraphs 1 through 36 of the amended complaint as if set forth fully herein.

38.    Defendants admit the allegations contained in paragraph 38 of the amended complaint and state that the Agreement was also signed by AXA Network.

39.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 of the amended complaint.

40.     Defendants deny the allegations in paragraph 40 of the amended complaint except to state that the Agent Agreement provides, among other terms: "This Agreement is subject to such rules and regulations as AXA Network has established or may hereafter establish covering the conduct of its business," and to respectfully refer the Court to the Agent Agreement which speaks for itself.

41.     Defendants deny the allegations contained in paragraph 41 of the amended complaint except to admit that certain of Defendants' rules and regulations are set forth in AXA Advisors' Compliance Manual and in other documents and to respectfully refer the Court to such documents which speak for themselves.

42.     Defendants deny the allegations contained in paragraph 42 of the amended complaint except to admit that AXA Advisors' Compliance Manual contains certain of Defendants' rules and regulations regarding misconduct and retaliation and to respectfully refer the Court to such documents which speak for themselves.

43.     Defendants deny the allegations contained in paragraph 43 of the amended complaint except to admit that the termination of Plaintiff's Agreements was not reviewed by the National Disciplinary Action Committee and that Plaintiff did not seek review of the termination of his Agreements by the National Disciplinary Action Committee or the Management Disciplinary Action Committee, and to respectfully refer the Court to the AXA Advisors' Compliance Manual, which document speaks for itself.

44.     Defendants deny the allegations contained in paragraph 44 of the amended complaint.

45.     In response to paragraph 45 of the amended complaint, Defendants repeat and reallege their responses to paragraphs 1 through 44 of the amended complaint as if set forth fully herein.

46.     Defendants admit the allegations contained in paragraph 46 of the amended complaint and state that the Agreement was also signed by AXA Advisors.

47.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the amended complaint.

48.     Defendants deny the allegations in paragraph 48 of the amended complaint except to state that the Representative Agreement provides, among other terms: "[T]his Agreement is subject to, and the Representative shall adhere to, all rules, regulations, policy guidelines or other instructions that AXA Advisors (or another entity acting on its behalf, may from time to time publish . . . in the form of compliance guides or manuals, informational bulletins, notices or other written communications" and to respectfully refer the Court to the terms of the Representative Agreement, the terms of which speak for themselves.

49.     Defendants deny the allegations contained in paragraph 49 of the amended complaint except to admit that certain of Defendants' rules and regulations are set forth in AXA Advisors' Compliance Manual and in other documents and to respectfully refer the Court to such documents which speak for themselves.

50.     Defendants deny the allegations contained in paragraph 50 of the amended complaint except to admit that AXA Advisors' Compliance Manual contains certain of

Defendants' rules and regulations regarding misconduct and retaliation and to respectfully refer the Court to such documents which speak for themselves.

51.    Defendants deny the allegations contained in paragraph 51 of the amended complaint except to admit that the termination of Plaintiff's affiliation with AXA Advisors was not reviewed by the National Disciplinary Action Committee and that Plaintiff did not seek review of the termination of his affiliation by the National Disciplinary Action Committee or the Management Disciplinary Action Committee, and to respectfully refer the Court to the AXA Advisors' Compliance Manual which document speaks for itself.

52.    Defendants deny the allegations contained in paragraph 52 of the amended complaint.

### AS TO THE "THIRD CAUSE OF ACTION"

53.    In response to paragraph 53 of the amended complaint, Defendants repeat and reallege their responses to paragraphs 1-52 of the amended complaint as if set forth fully herein.

54.    Defendants deny the allegations contained in paragraph 54 of the amended complaint.

55.    Defendants deny the allegations contained in paragraph 55 of the amended complaint.

56.    Defendants deny the allegations contained in paragraph 56 of the amended complaint.

## AS TO THE "FOURTH CAUSE OF ACTION"

57.     In response to paragraph 57 of the amended complaint, Defendants repeat and reallege their responses to paragraphs 1 through 56 of the amended complaint as if set forth fully herein.

58.     Defendants deny the allegations contained in paragraph 58 of the amended complaint.

59.     Defendants deny the allegations contained in paragraph 59 of the amended complaint.

60.     Defendants deny the allegations contained in paragraph 60 of the amended complaint.

## AS TO THE "FIFTH CAUSE OF ACTION"

61.     In response to paragraph 61 of the amended complaint, Defendants repeat and reallege their responses to paragraphs 1 through 60 of the amended complaint as if set forth fully herein.

62.     Defendants deny the allegations contained in paragraph 62 of the amended complaint.

63.     Defendants deny the allegations contained in paragraph 63 of the amended complaint.

64.     Defendants deny the allegations contained in paragraph 64 of the amended complaint.

65.     Defendants deny the allegations contained in paragraph 65 of the amended complaint.

## AS TO THE "SIXTH CAUSE OF ACTION"

66.     In response to paragraph 66 of the amended complaint, Defendants repeat and reallege their responses to paragraphs 1 through 65 of the amended complaint as if set forth fully herein.

67.     Defendants deny the allegations contained in paragraph 67 of the amended complaint.

68.     Defendants deny the allegations contained in paragraph 68 of the amended complaint.

69.     Defendants deny the allegations contained in paragraph 69 of the amended complaint.

70.     Defendants deny the allegations contained in paragraph 70 of the amended complaint.

## AS TO "JURY TRIAL DEMAND"

71.     The allegations in paragraph 58 of the complaint do not call for a response, but to the extent a response is required, Defendants deny that Plaintiff is entitled to a jury trial and affirmatively state that Plaintiff has waived his right to a jury trial in the Loan Note and the Promissory Note.

## AS TO THE "PRAYER FOR RELIEF"

72.     To the extent that any allegation is made or implied in the WHEREFORE clause of the complaint, Defendants deny those allegations.

## AFFIRMATIVE AND OTHER DEFENSES

### As a First Defense

73.    Plaintiff's amended complaint fails to state a claim upon which relief can be granted.

### As a Second Defense

74.    The federal and state courts do not have exclusive jurisdiction over the claims assertion in this action.

### As a Third Defense

75.    Plaintiff's claims are barred, in part, by the applicable statutes of limitations.

### As a Fourth Defense

76.    Plaintiff's claims are barred by the Statute of Frauds and the parole evidence rule.

### As a Fifth Defense

77.    Plaintiff's claims are barred by the doctrines of waiver and estoppel.

### As a Sixth Defense

78.    Plaintiff's claims are barred by the doctrines of unclean hands and laches.

### As a Seventh Defense

79.    Plaintiff's claims are barred, in whole or in part, because he was an independent contractor.

### As an Eighth Defense

80.     The termination of Plaintiff's relationships with Defendants was not contrary to public policy.

### As a Ninth Defense

81.     Plaintiff's claims are barred, in whole or in part, because the statements on Plaintiff's Form U-5 and Defendants' actions were subject to an absolute privilege.

### As a Tenth Defense

82.     Plaintiff's claims are barred, in whole or in part, because the statements on Plaintiff's Form U-5 and Defendants actions were subject to a qualified privilege.

### As an Eleventh Defense

83.     Defendants' actions were taken in good faith and for legitimate non-retaliatory business reasons.

### As a Twelfth Defense

84.     Defendants had good cause to terminate their Agreements with Plaintiff.

### As a Thirteenth Defense

85.     Plaintiff's claims are barred, in whole or in part, because Defendants were parties to the contracts and client and business relationships at issue.

### As a Fourteenth Defense

86.     Plaintiff's claims are barred in whole or in part because Defendants had an economic interest in the client's contracts and/or business relationships at issue.

### As a Fifteenth Defense

87.    Plaintiff's claims are barred by the doctrine of after-acquired evidence of wrongdoing on his part.

### As a Sixteenth Defense

88.    Plaintiff's claims are barred to the extent that he has failed to adequately allege damages.

### As a Seventeenth Defense

89.    Plaintiff's claims are barred to the extent that he failed to mitigate his damages.

### As an Eighteenth Defense

90.    Plaintiff's claims for punitive and/or consequential damages are barred by the applicable agreements between the parties.

### As a Nineteenth Defense

91.    Plaintiff is not entitled to punitive damages.

### As a Twentieth Defense

92.    Plaintiff's claims are barred, in whole or in part, based on his failure to satisfy conditions precedent to his receipt of commissions and/or forgiveness of debts, including obtaining sufficient production credits

### As a Twenty-First Defense

93.    Plaintiff has waived and is not entitled to a jury trial with regard to the claims asserted in this action.

## DEFENDANTS' COUNTERCLAIMS

### JURISDICTION & VENUE

1.      This Court has diversity jurisdiction over this action under 28 U.S.C.
§1332(a).

2.      Upon information and belief, Plaintiff/Counterclaim Defendant Steven
S. Novick ("Novick") is and was at the time of the commencement of this action a resident of
and is domiciled in the State of Connecticut.

3.      Defendant/Counterclaim Plaintiff AXA Network is a limited liability
company organized under the laws of the State of Delaware, with its principal place of business
being located in Harrisburg, Pennsylvania.   AXA Distribution Holding Corporation, AXA
Network's sole member, is a corporation incorporated under the laws of the State of Delaware,
with its principal place of business being located in New York, New York.

4.      Defendant/Counterclaim Plaintiff AXA Advisors is a limited liability
company organized under the laws of the State of Delaware, with its principal place of business
being located in New York, New York.  AXA Distribution Holding Corporation, AXA Advisors'
sole member, is a corporation incorporated under the laws of the State of Delaware, with its
principal place of business being located in New York, New York.

5.      This Court has supplemental jurisdiction over the counterclaims of
AXA Network and AXA Advisors (collectively "AXA"), pursuant to 28 U.S.C. §1367 because
the counterclaims are so related to the claims in the complaint and amended complaint that they
form part of the same case and controversy under Article III of the United States Constitution.

6.    Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the alleged events giving rise to Novick's claims and AXA's counterclaims occurred within this district.

## FACTS COMMON TO ALL COUNTERCLAIMS

### The First Loan to Novick

7.    Novick executed a Promissory Note to AXA dated January 15, 2003, in the amount of $500,000 (the "Promissory Note"). A copy of the Promissory Note is attached hereto as Exhibit A.

8.    Attached to and incorporated by reference into the Promissory Note was a "Schedule 1" which contained additional terms and conditions of the Promissory Note, which is also attached hereto as part of Exhibit A.

9.    Pursuant to the Promissory Note, AXA loaned $500,000.

10.    Under the Promissory Note, interest was set to accrue on the amount of the loan at the applicable federal short term rate in effect under the Internal Revenue Code Section 1274(d).

11.    The Promissory Note was subject to reduction upon Novick's achievement of Gross Dealer Commissions ("GDCs") generated on investment products. Once Novick's GDCs reached certain Milestones, portions of the amount loaned to Novick pursuant to the Promissory Note were to be forgiven.

12.    By letter dated May 22, 2006, a copy of which is attached hereto as Exhibit B, Novick and AXA agreed to amend the Promissory Note and Schedule 1, effective January 15, 2003 (the "Amendment").

13.    Pursuant to the Amendment, Novick and AXA agreed that "Paragraph b of the Promissory Note shall be amended by adding at the end of the second sentence the following: 'Notwithstanding the foregoing, AXA Network, LLC and AXA Advisors, LLC, at their discretion, can reestablish Production Credit Milestones, to continue the forgiveness period after the Payment Date, provided the Payee is still affiliated with AXA Network, LLC and/or AXA Advisors, LLC.'" The parties further agreed that "Paragraph c of the Promissory Note shall be amended by deleting the phrase 'for every Two Million Dollars ($2,000,000) in Gross Dealer Concessions ("GDC"), and substituting in its place the phrase "for every One Million (1,000,000) in Production Credits ("PC")."

14.    Also pursuant to the Amendment, Novick and AXA agreed to amend Schedule 1 by substituting the terms "Production Credits" or "PCs" for the terms "Gross Dealer Concession" or "GDC," deleting in its entirety footnote 1 and amending Table 1. The amendments to Table 1 reflected the number of PCs that were necessary to achieve certain Milestones for forgiveness of the loan.

15.    As of October 12, 2006, Novick had achieved fewer than $2 million Production Credits.

16.    Paragraph "g" of the Promissory Note states "Upon the occurrence and during the continuation of any Event of Default hereunder, the Payee may declare this Note to be due and payable and this Note shall become immediately due and payable without notice of any kind."

17.    The Promissory Note provides that the "Termination by either party of the Undersigned's agreements with AXA Network, LLC or AXA Advisors, LLC" was an Event of Default under the Promissory Note.

18.    The Promissory Note provided that Novick would be responsible for AXA's costs and expenses, including reasonable attorneys' fees, incurred in any action to enforce collection of the Promissory Note.

The Second Loan to Novick

19.    Novick executed a Loan Note to AXA dated August 28, 2003, in the amount of $1 million (the "Loan Note"). A Copy of the Loan Note is attached hereto as Exhibit C.

20.    AXA loaned Novick $1 million pursuant to the Loan Note.

21.    The maturity date of the Loan Note was October 1, 2008.

22.    The Loan Note was secured by interests in Novick's commissions, compensation and other amounts payable to him by AXA.

23.    The Loan Note also was secured by a Pledge Agreement from Lorch.

24.    Interest on the Loan Note accrued at the rate of Prime plus 1% per year from August 28, 2003.

25.    Novick was required to make quarterly payments to AXA of principal and interest under the Loan Note. In the event of late payment, the Loan Note provided for the payment of a late charge of 2% on the unpaid principal amount of the loan plus any accrued interest not yet paid.

26.    Under the Loan Note, if the Agent or Representative Agreements were terminated for any reason, the entire amount due under the Note was immediately due and payable.

27.    The Loan Note also required Novick to pay AXA's costs and expenses, including reasonable attorneys' fees, in connection with any action to enforce or defend Defendants' rights under the Loan Note.

### Termination of the Agreements and Demands for Repayment

28.    As of October 12, 2006, Novick had achieved more than $1 million but fewer than $2 million in Production Credits. The principal balance due under the Promissory Note was thereby reduced by $100,000, to equal $400,000.

29.    AXA Advisors and AXA Network terminated their Agreements with Novick effective October 12, 2006.

30.    The termination of the Agreements was an Event of Default under the Promissory Note and the unpaid balance plus interest became due and payable to AXA immediately.

31.    Upon the termination of the Agreements the unpaid balance on the Loan Note, plus accrued, unpaid interest became due and payable to AXA immediately.

32.    By letter dated November 21, 2006, from Mr. Alvaro Escobar to Novick, AXA notified Novick that the Promissory Note was due and payable immediately. AXA further notified Novick that the balance due on the Promissory Note was $400,000. AXA also advised Novick that if payment was not received by December 1, 2006, AXA reserved their

right to take available steps under the law to enforce payment and it would seek all costs and expenses of such action, including reasonable attorneys' fees.

33.    By separate letter dated November 21, 2006, from Mr. Alvaro Escobar to Novick, AXA notified Novick that the entire amount owed under the Loan Note was immediately due and payable. AXA further notified Novick that the balance owed under the Loan Note was $450,000 of principal plus $10,491.78 in interest. Mr. Escobar demanded that Novick immediately forward a check to him for the amount of $460,491.78. The letter also stated should AXA prevail in any legal action required to enforce the payment under the Loan Note or Pledge Agreement, Novick and/or Lorch will be liable for all the costs and expenses of such action including reasonable attorney's fees.

34.    Novick did not pay the amounts due under the Promissory Note.

35.    Novick did not pay the amounts due under the Loan Note.

### Further Demands for Repayment

36.    By letter dated June 15, 2007, AXA demanded repayment of the monies due AXA under the Promissory Note and the Loan Note. AXA stated that if payment was not received by July 1, 2007, AXA would begin appropriate proceedings. The June 15, 2007 letter also reiterated that Novick and/or Lorch "will be liable for all the costs and expenses of AXA's action to enforce the agreements including reasonable attorneys' fees."

37.    Despite the repeated demands Novick did not pay the amounts due under the Promissory Note.

38.    Despite the repeated demands Novick did not pay the amounts due under the Loan Note.

39.     Novick is not entitled to any excuse or setoff from the repayment of these loans.

### FOR A FIRST COUNTERCLAIM

(Breach of Contract – Promissory Note)

40.     AXA repeats and realleges all of the allegations set forth in paragraphs 1-39 of the Counterclaims as if fully set forth herein.

41.     Pursuant to the terms of the Promissory Note and the Amendment, Novick was required to repay the balance due, plus interest, on the monies loaned to him upon the termination of the Agreements.

42.     Despite repeated demand, Novick has failed to repay the Promissory Note.

43.     Novick has breached the material terms of the Promissory Note.

44.     AXA has been damaged thereby in the amount of $400,000, plus interest and costs and expenses, including reasonable attorneys' fees, incurred, and yet to be incurred, in connection with enforcing the Promissory Note and defending this action.

### FOR A SECOND COUNTERCLAIM

(Breach of Contract – Loan Note)

45.     AXA repeats and realleges all of the allegations set forth in paragraphs 1- 44 of the Counterclaims as if fully set forth herein.

46.     Pursuant to the terms of the Loan Note, Novick was required to repay the balance due, plus interest, on the monies loaned to him upon the termination of the Agreements.

47.    Despite repeated demand, Novick has failed to repay the Loan Note.

48.    Novick has breached the material terms of the Loan Note.

49.    AXA has been damaged thereby in the amount of $450,000, plus interest, late charges and costs and expenses, including reasonable attorneys' fees, incurred, and yet to be incurred, in connection with enforcing the Promissory Note and defending this action.

### FOR A THIRD COUNTERCLAIM

#### (Unjust Enrichment)

50.    AXA repeats and realleges all of the allegations set forth in paragraphs 1- 49 of the Counterclaims as if fully set forth herein.

51.    Novick is not entitled to the monies represented by the unpaid balances and unpaid interest on the Promissory Note and Loan Note.

52.    Since the date the unpaid balances on the Promissory Note and Loan Note became due, AXA has been deprived of the use of the monies loaned to Novick and has received no benefit from the use of those monies.

53.    Despite repeated demands, Novick has refused to repay the balances due and interest incurred on the Promissory Note and Loan Note.

54.    Novick has acted wrongfully in refusing to repay the balances due and interest incurred on the Promissory Note and Loan Note.

55.    As a result, Novick has been unjustly enriched and AXA have incurred damages in an amount to be determined at trial, but in no event less than $850,000 plus interest.

WHEREFORE, Defendants/Counterclaim-Plaintiffs AXA Network and AXA Advisors respectfully request that the Court: (a) dismiss Plaintiff/Counterclaim Defendant's

amended complaint in its entirety with prejudice; (b) grant judgment in favor of Defendants/Counterclaim Plaintiffs on their counterclaims and award them all amounts due under the Promissory Note and Loan Note, including the unpaid interest accruing and due under the terms of the Promissory Note and Loan Note, late charges and their cost and expenses, including their reasonable attorney's fees; (c) award Defendants/Counterclaim Plaintiffs prejudgment interest; and (d) award Defendants/Counterclaims Plaintiffs all other and further relief that this Court deems just and proper.

Dated: New York, New York
January 17, 2008

EPSTEIN BECKER & GREEN, P.C.

By: _____
James G. Murphy
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500
jmurphy@ebglaw.com

Attorneys for Defendants/
Counterclaim Plaintiffs