# EXHIBIT C

# LOAN NOTE

$1,000,000
Dated: August 28, 2003

Promise to Pay.    FOR VALUE RECEIVED, I, Steven Novick (the "Undersigned"), promise to pay the principal sum of one million dollars ($1,000,000) and interest at the rate specified below on the unpaid principal sum hereof, in US dollars to the order of AXA Network, LLC ("AXA Network"), or the holder hereof (the "Lender") at the Lender's office located at 1290 Avenue of the Americas, New York, N.Y. 10104 (to the attention of William E. Mills, 4th Floor) or at such other place as the Lender may designate in writing to the Undersigned. AXA Network and its parent, affiliates and subsidiaries are referred to herein as "AXA".

Interest.    Interest on this Note shall accrue at the rate of Prime plus 1% percent per annum from the date of this Note and shall be adjusted quarterly prior to each payment date as specified on Schedule A attached hereto. (the "Payment Date"). Interest shall be due and payable in the amounts and on each Payment Date as specified on Schedule A attached hereto.

Payments.    The Undersigned agrees to make quarterly payments of principal and accrued interest under this Note on each Payment Date in accordance with Schedule A attached hereto.

Maturity.    This Note shall be repaid in full on ~~August 31st~~ October 1st 2008 (the "Maturity Date"). The Undersigned acknowledges that there will be a principal payment due on the Maturity Date and that Lender shall have no obligation, expressed or implied to refinance this loan.

*[handwritten: 1/30/2003  Steven Novick]*

Prepayment.    The Undersigned shall, at any time, have the right to prepay without penalty or premium, all or any portion of the loan evidenced by this Note, at a price equal to the principal amount being prepaid plus the interest on such amount being prepaid accrued to the date of prepayment.

Event of Default; Late Charge; Fee for Bounced Checks.    Nonpayment when due of any installment of principal or interest amount payable hereunder, which nonpayment shall continue unremedied for 30 calendar days shall constitute an event of default (an "Event of Default"). Upon an Event of Default, the Undersigned shall pay a late charge equal to 2% on the unpaid principal amount of the loan plus any accrued interest not yet paid from the date of the Event of Default until payment of the amount(s) otherwise due and payable. In the event that the Lender receives a bounced or otherwise deficient check, the Undersigned shall pay a fee of $25 for each such occurrence.

155200v2

Remedies upon Default.    Upon the occurrence, and during the continuation, of an Event of Default hereunder, the Lender may declare the Note to be due and payable and this Note shall automatically become immediately due and payable without presentment, demand, protest or other notice of any kind.

If the Undersigned is in default, the Lender may, to the extent permitted by applicable law, appropriate and hold, or apply (directly or by the way of set-off) to the payment of any amounts owing by the Undersigned under this Note, all commissions, compensation of any kind and other amounts in any form payable to the Undersigned under any of the Undersigned's agreements with AXA (the "AXA Agreements"). In the event that any or all of the Undersigned's indebtedness hereunder is not satisfied by any such set-off or to the extent that set-off is not legally permissible, the Undersigned shall continue to remain responsible for payment of the outstanding balance.

In addition to the above paragraph, if an Event of Default has occurred and is continuing, and irrespective of whether this Note has been declared immediately due and payable, the Lender may proceed to protect and enforce its rights by an action at law, suit in equity or other appropriate proceeding.

Security.    To secure payment of all sums payable under this Note, and to the extent permitted by applicable law, (a) the Undersigned grants to the Lender a security interest in, and assigns to the Lender, commissions, compensation and other amounts payable to the Undersigned under any of the AXA Agreements or by AXA; and (b) Ronald Lorch, grants to Lender a security interest in, and assigns to the Lender, all current and future renewal commissions arising from his sales of proprietary AXA products in accordance with the Pledge Agreement attached hereto as Exhibit A. Notwithstanding the granting of any such security, the Undersigned is responsible on a fully recourse basis for the payment of the amounts evidenced by this Note.

Action To Enforce.    (i) If the Lender shall institute any action to enforce collection of this Note or to enforce its security interest, there shall become due and payable from the Undersigned, in addition to the unpaid principal and interest, all costs and expenses of such action to enforce or defend (or in determining whether or how to enforce or defend) any related bankruptcy proceedings or any of its rights hereunder or in responding to a subpoena or other legal process issued in connection with the Note (including reasonable attorneys' fees); (ii) the Undersigned irrevocably consents to the sole and exclusive jurisdiction of the Courts of the State of New York and any Federal court located in New York in connection with any action or proceeding arising out of, or related to, this Note; and (iii) the Undersigned waives presentment, demand for payment, notice of dishonor, and all other notices or demands in connection with the delivery, acceptance, performance, default, or endorsement of this Note.

Termination of Agent's Agreement.    If any of the Undersigned's AXA Agreements or the Undersigned's affiliation with AXA is terminated for any reason, the entire amount owed under this Note shall automatically become immediately due and payable.

155200v2

Loan Charge. If it should be finally determined that any interest rate or other charge imposed in connection with this Note exceeds applicable legal limits, such rate or charge(s) will be reduced to the maximum amount legally permitted. In that case, any excess amount that the Undersigned has already paid shall, at the Lender's option, be refunded to the Undersigned or applied to reduce the principal balance owed. Any such refund or credit shall not affect the Undersigned's obligations under this Note or excuse, waive or cure any default that may occur.

Waiver. No delay or failure on the part of the Lender to exercise any power or right hereunder shall operate as a waiver thereof, and no right or remedy of the Lender shall be deemed abridged or modified by any course of conduct. The rights or remedies of the Lender as herein specified are cumulative and not exclusive of any rights or remedies that the Lender may otherwise have.

Governing Law. This Note shall be governed by and construed in accordance with the laws of the State of New York without regard to the principles of the conflict of laws.

Amendment. This Note may only be amended in writing with the consent of all parties.

Assignment. This Note may not be assigned by the Undersigned. The Lender may assign this Note without prior written or oral notice to the Undersigned.

Severability. In case any provision or obligation hereunder shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceabilty of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

Exclusivity. The provisions herein and in the attached Schedule A are the exclusive terms of the agreement between the parties and are controlling as to the terms and conditions of this Note.

155290v2

<u>JURY TRIAL.</u>   THE UNDERSIGNED AND LENDER EACH HEREBY ABSOLUTELY, IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY AND THE RIGHT TO CLAIM OR RECEIVE CONSEQUENTIAL OR PUNITIVE DAMAGES IN ANY LITIGATION, ACTION, CLAIM, SUIT OR PROCEEDING, AT LAW OR IN EQUITY, ARISING OUT OF, PERTAINING TO OR IN ANY WAY ASSOCIATED WITH THE INDEBTEDNESS EVIDENCED HEREBY, THE RELATIONSHIP OF THE PARTIES HERETO AS LENDER AND BORROWER, THIS NOTE OR THE ACTIONS OF THE PARTIES HERETO IN CONNECTION WITH ANY OF THE FOREGOING.

In Witness whereof, the Undersigned has signed this Note as of the date first above written.

/s/ Steven Novick

Steven Novick,
as Undersigned

State of __C-T__ )
                 )SS:
County of __Fairfield__ )

On __August 28__, 2003, before me personally came __Steven Novick__ to me known and known to me to be the individual described in, and who executed the foregoing instrument, and acknowledged to me that he/she executed the same.

/s/ Dorota Lupinska
Notary Public

DOROTA LUPINSKA
Notary Public
My Commission Expires February 28, 20__

155200v2

EXHIBIT A

# PLEDGE AGREEMENT

Agreement, made August 28, 2003, between Ronald Lorch (the "Pledgor"), and AXA Network, LLC (the "Lender"). The Lender and its parent, affiliates and subsidiaries are referred to herein as "AXA."

### Recitals:

At the time of the execution of this Agreement, the Lender is lending to Steven Novick (the "Borrower") $1,000,000, as evidenced by a promissory note (the "Note") for such amount of even date herewith.

To induce the Lender to make such loan, the Pledgor has agreed to grant to Lender a security interest in, and assigns to the Lender, all current and future renewal commissions arising from sales by the Pledgor of proprietary AXA products for the repayment of such loan.

It is therefore agreed:

1. Pledge. In consideration of the sum of $1,000,000 loaned to the Borrower by the Lender, receipt of which is hereby acknowledged, the Pledgor hereby grants to Lender a security interest in, and assigns to the Lender, all current and future renewal commissions arising from sales by the Pledgor of proprietary AXA products.

2. Default. In the event that the Borrower defaults in the performance of any of the terms of the Note, the Lender may retain Pledgor's current and future renewal commissions arising from sales by the Pledgor of proprietary AXA products in an amount equal to the principal and interest and any other amounts then due on the loan. In the event that the Pledgor's commissions are insufficient to cover the principal of and the interest on the loan, the Pledgor shall remain liable to the Lender for any such deficiency.

3. Action To Enforce. (i) If the Lender shall institute any action to enforce its security interest, there shall become due and payable from the Pledgor, in addition to the unpaid principal and interest, all costs and expenses of such action to enforce or defend (or in determining whether or how to enforce or defend) any related bankruptcy proceedings or any of its rights hereunder or in responding to a subpoena or other legal process issued in connection with the Note (including reasonable attorneys' fees); (ii) the Pledgor irrevocably consents to the sole and exclusive jurisdiction of the

155200v2

Courts of the State of New York and any Federal court located in New York in connection with any action or proceeding arising out of, or related to, this Agreement; and (iii) the Pledgor waives presentment, demand for payment, notice of dishonor, and all other

4. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the principles of the conflict of laws.

5. **Severability.** In case any provision or obligation hereunder shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

6. **Jury Trial.** The Pledgor and Lender each hereby absolutely, irrevocably and unconditionally waive trial by jury and the right to claim or receive consequential or punitive damages in any litigation, action, claim, suit or proceeding, at law or in equity, arising out of, pertaining to or in any way associated with the security interest evidenced hereby, the relationship of the parties hereto as Lender and Pledgor, this Agreement or the actions of the parties hereto in connection with any of the foregoing.

In Witness whereof, the Pledgor has signed this Agreement as of the date first above written.

Pledgor:
Ronald Lorch

By: _____
[name/title]

Lender: AXA NETWORK, LLC

By: _____
[name/title]

155200v2