UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
STEVEN S. NOVICK,                                :

        Plaintiff,                           :

        -against-                           :     **MEMORANDUM AND ORDER**

AXA NETWORK, LLC, and                      :     07 Civ. 7767 (AKH) (KNF)
AXA ADVISORS, LLC,
                                                        :
        Defendants.
------------------------------------------------------X
AXA NETWORK, LLC, and                      :
AXA ADVISORS, LLC,
                                                        :
        Counter Claimants,
                                                        :
        -against-
                                                        :
STEVEN S. NOVICK,
                                                        :
        Counter Defendant.
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

      On September 7, 2012, the assigned district judge directed that: (1) "Plaintiff on or before September 14, 2012 shall provide to Defendants a revised customer list"; (2) "Defendants will search the emails of the 10 custodians provided by Plaintiff for emails in which the customers on the customer list are addressees, and provide the results of that search by November 14, 2012"; and (3) Plaintiff will provide a final list of the ten custodians by September 14, 2012." The time period for the e-mail messages to be searched was limited by the assigned district judge, previously, during a June 27, 2012 conference, to a period from June 1, 2006, to December 31, 2008. Before the Court is the defendants' motion for an order directing the plaintiff "to reimburse $40,848.75 in legal fees and out-of-pocket costs that [the defendants]

1

expended for the 2012 ESI [electronically stored information] discovery produced to [the plaintiff] on or about November 30, 2012, and awarding [the defendants] statutory interest thereon from the date of the requested order until the date of payment," pursuant to "Rule 26 of the Federal Rules of Civil Procedure." The plaintiff opposes the motion.

***Defendants' Contentions***

The defendants contend that "Rule 26(c) allows the Court to govern excessive and burdensome discovery requests by 'conditioning discovery on the requesting party's payment of the cost of discovery,'" and, "while the Court did not 'condition' discovery on payment by plaintiff, the Court clearly contemplated that plaintiff might need to pay." The defendants seek to have the plaintiff bear the costs of the November 30, 2012 discovery production, namely "$20,868.75 for the outside vendor to assist in processing the searches and $19,980 in legal fees, for a total of $40,848.75." They contend that cost-shifting is reasonable under the standard articulated in Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003), which the courts in this circuit "generally" follow. According to the defendants, "the 2012 ESI search yielded very few arguably responsive documents" and "was largely duplicative of discovery defendants previously supplied." Moreover, the "plaintiff's alleged customer list – listing nearly 800 individuals – went way beyond the number of customers that arguably needed to be searched to answer plaintiff's inquiry about communications between AXA and 'plaintiff's customers.'" The defendants contend that, although they possess the e-mail content that was searched, the plaintiff "admittedly has a relationship with at least a sub-set of the customers on the customer list, and could presumably have asked at least some of his customers about their communications with AXA personnel." The defendants maintain that it is not fair to require them "to continue funding unending discovery" when the amount in controversy is small in their

2

view. Similarly, "[i]t is not equitable for all corporate parties to have to bear the cost of production to individual parties, if the individual parties are permitted to request every manner of production that occurs to them." The defendants contend that they "used an outside vendor with which it has [sic] a substantial preferred vendor discount, and are not seeking costs for the time and materials of their own employees." Furthermore, the plaintiff could have reduced the costs by controlling the parameters of the searches requested, but refused to do so. According to the defendants, "the issues that might have been addressed by the 2012 ESI search (had it been well-designed, which it was not) are not at all relevant to the remaining claims." They contend that "the fact that plaintiff did not receive any benefit from the discovery is nobody's fault but his own; defendants assuredly did not benefit."

In support of their motion, the defendants submitted a declaration by Jean Solanto ("Solanto"), "a paralegal employed by AXA Equitable Life Insurance Company," which is "an affiliated company of defendants." Solanto stated that she is "primarily responsible for document management in connection with [the defendants'] litigation matters." She explained that in September 2012, she was advised that the defendants had until November 14, 2012, to search e-mail messages of ten custodians for 800 names the plaintiff provided. Solanto asserted that "119 gigabytes of data [were] processed," and "[b]ecause of the large amount of data and the number and complicated nature of the 'customer' list search terms, it was not appropriate for [the defendants] to run searches in-house." According to Solanto, the cost of a search is determined by the number of gigabytes processed, and the "outside vendor's costs were not excessive for a search of this size," because in recent years "prices of this type of processing have actually been getting lower." Solanto explained that the search was complicated because the list of search terms provided by the plaintiffs, which was the list of the plaintiff's "alleged

customers," contained "both first and last names, but others only had one name.  Some of them had email addresses, while others did not," and "[t]here was an extraordinary level of duplication, whereby some of the names appeared on the list two or more times, sometimes with slight variations like apparent misspellings."  Moreover, it was "necessary to do a syntax style search, whereby a query had to be developed to search the first names near (within two words of) the last names, adding to the complications."  Solanto contends that "the search resulted in 80 gigabytes of data, and 627,885 records were loaded to be searched," resulting "in 43,876 records.  Ultimately there were fewer than 400 pages of producible documents."  Solanto explains that the final number of pages resulted "because a large percentage of plaintiff's claimed customers were also affiliated with [the defendants] as employees or agents, such that very few emails resulting from the search were even arguably the 'customer' communications the search was allegedly performed to find."

The defendants' counsel, Aime Dempsey ("Dempsey"), also submitted a declaration in support of the motion, in which she contends that, after she learned from the outside vendor that "there would be a substantial cost associated with the email production," she contacted the plaintiff's attorney, "suggesting some reduction in the scope" of the search to reduce the cost, but the plaintiff refused to consider her suggestion.

*Plaintiff's Contention*

The plaintiff opposed the defendants' motion by an affirmation of his counsel, Michael S. Finkelstein ("Finkelstein").[1]  The plaintiff contends that cost-shifting is not warranted under the

---

[1] The Court notes that the plaintiff failed to comply with Local Civil Rule 7.1(b) of this court because he did not submit a memorandum of law, but presented his arguments through his attorney's affirmation.  However, in light of the protracted nature of this action and "to secure
(continued...)

standard articulated in Rowe Entm't, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421 (S.D.N.Y. 2002). According to the plaintiff, his search request was "extremely specific," consisting of a list of ten custodians "cross-referenced against a list of clientele," and "it was known that a successful search will occur, as Plaintiff already has several e-mails in its [sic] possession responsive to the search, that have already been used as exhibits to prior motions." The plaintiff contends that the defendants' outside vendor conducted the search improperly, causing "only useless e-mails to be found." He asserts that, since the defendants are required to maintain the requested e-mail messages "for a period of years pursuant to various federal regulations," the defendants may be expected to respond to discovery requests at their own expense. The plaintiff believes that the e-mail search will benefit him and the defendants. He maintains that "the entire search should have been performed in conjunction with the prior e-mail searches in response to Plaintiff's prior discovery requests from 2008 through the present." Moreover, the defendants increased their expense "by taking it upon themselves to whittle down the list of [the plaintiff's] clients on the mistaken belief that just because some of those on the list were [the defendants'] employees, they could not have been [the plaintiff's] clients." This was "false," because the plaintiff had many employees of the defendants among his clientele. The plaintiff contends the defendants' ability to bear the cost is greater given that the defendants are "a multi-billion dollar company."

---

[1](...continued)
the just, speedy, and inexpensive determination" of the issue, Fed. R. Civ. P. 1, the Court will disregard the plaintiff's lack of compliance, since it is based solely on a failure to file the arguments in a separate document. Otherwise, the plaintiff's arguments comply with Local Civil Rule 7.1's requirement that the plaintiff set forth the cases and authorities relied upon in opposition to the motion, divided, under appropriate headings, in appropriate sections. See Local Civil Rule 7.1(a)(2).

Finkelstein states in his affirmation that the defendants produced to the plaintiff, prior to the November 30, 2012 production, e-mail messages "sent from Georgette Geller to several of [the plaintiff's] clients," and these e-mail messages, although responsive to the search, were not produced by the defendants in November 30, 2012. According to Finkelstein, on March 15, 2013, he had a telephonic conversation with the defendants' counsel Michael Kalish ("Kalish"), who "admitted" that "there was an obvious problem with the e-mail search." Finkelstein inquired of Kalish whether, in light of the search problem, the defendants "would withdraw their motion," and Kalish responded he would take "it under advisement and stated he would get back to me." Finkelstein contends that the defendants' counsel Dempsey, in a letter to the Court dated March 19, 2013, admitted that the search was not done properly when she stated that "it appears that the kind of technological glitch that frequently arises in email searches prevented certainly potentially responsive emails from being captured."

***Defendants' Reply***

In reply, the defendants contend that the plaintiff in his opposition applied "the wrong legal standard," because he applied "an outdated and superseded 8-factor analysis," rather than the 7-factor analysis articulated in Zubulake, 217 F.R.D. 309. According to the defendants, the plaintiff's argument that his search request was specific is "highly dubious as a matter of basic logic since the list of clientele contained nearly 800 names," and the documents he requested are "of little relevance to" his remaining claims of breach of contract and accounting. The defendants assert that the plaintiff's contention that "the emails are not available from another source" does "not establish that he had no opportunity to procure the emails from other sources beyond [the defendants]." Furthermore, "it is inequitable for defendants . . . to have to spend time and effort collecting documents and reviewing them for relevance, privilege, confidentiality

and privacy to respond to [the plaintiff's] demands." The defendants maintain that the plaintiff's contention that they "reduced the list of clients by removing [the defendants'] employees from the list" and thereby increased the costs is unsupported and contrary to what occurred because "in reviewing the search result, defendants merely limited disclosure to client, not employee, communications." The defendants assert that the plaintiff's contention that the purpose for which the defendants maintain the requested data concerns a factor "which is no longer considered under the 7-factor *Zubulakel* [sic] test," and whether the defendants preserved or had access to ESI "is of no moment when considering whether [the plaintiff] should bear some of the cost of the onerous ESI request and search that he propounded."

***Legal Standard***

Under the Federal Rules of Civil Procedure governing discovery, "[t]he presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358, 98 S. Ct. 2380, 2393 (1978). This presumption may be rebutted by the movant's showing of good cause. See Fed. R. Civ. P. 26(c); Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004). Typically, good cause exists when the movant makes "a particular and specific demonstration" of injury based in fact, rather than relies on "stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16, 101 S. Ct. 2193, 2201 n.16 (1981).

In this circuit, district courts have considered cost-shifting protective order applications in connection with discovery requests for electronically stored information under Rule 26(c) of

7

the Federal Rules of Civil Procedure.  Most notably, the court in Zubulake formulated what it believed was the proper standard for cost-shifting: cost-shifting should "be considered *only* when electronic discovery imposes an 'undue burden or expense' on the responding party."  217 F.R.D. at 318.  The issues in Zubulake were: "To what extent is inaccessible electronic data discoverable, and who should pay for its production?"  Id. at 311.  Where the producing party conceded that the requested discovery of inaccessible electronic data was proper but requested that the court shift the cost of production to protect it from undue burden or expense, pursuant to Rule 26(c), the Zubulake court engaged in a two-step process to determine: (1) whether cost-shifting should be considered; and (2) what is the proper cost-shifting analysis.  See id. at 316-24.  The court noted that "whether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an *accessible or inaccessible* format (a distinction that corresponds closely to the expense of production)."  Id. at 318.  After modifying the seven cost-shifting factors articulated previously in Rowe Entm't, Inc., the Zubulake court formulated its own eight cost-shifting factors, finding that, "[f]or data that is kept in an accessible format, the usual rules of discovery apply: the responding party should pay the costs of producing responsive data.  A court should consider cost-shifting *only* when electronic data is relatively inaccessible, such as in backup tapes."  Id. at 324.

***Application of Legal Standard***

Although the defendants urge the application of the Zubulake's eight cost-shifting factors in determining their motion, they fail to mention the threshold question under the Zubulake standard that must be answered prior to the application of the eight cost-shifting factors, namely, "whether cost-shifting must be considered in every case involving the discovery of electronic data," which the Zubulake court answered in the negative.  Zubulake, 217 F.R.D. at 317.  The

defendants do not contend that the e-mail messages requested to be searched pursuant to the September 7, 2012 order are kept in an inaccessible format. Applying the Zubulake standard, the Court finds that cost-shifting does not apply in this circumstance; that is so because, as noted by the Zubulake court, cost-shifting does not apply where electronic data "is kept in an accessible format," 217 F.R.D. at 324, and the defendants do not contend that the data they searched were kept in an inaccessible format. Thus, under the Zubulake standard, the defendants failed to show that cost-shifting is appropriate because they did not establish that the production at issue was unduly burdensome or expensive, that is, that the data were kept in an inaccessible format. Accordingly, as the defendants failed to satisfy their burden of showing good cause pursuant to Rule 26(c), the defendants, as "the responding party[,] should pay the costs of producing responsive data." Zubulake, 217 F.R.D. at 324.

*Conclusion*

For the foregoing reasons, the defendants' motion, pursuant to Rule 26 of the Federal Rules of Civil Procedure, Docket Entry No. 160, is denied.

Dated: New York, New York
September 24, 2013

SO ORDERED:

*/s/ Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE