UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
STEVEN S. NOVICK,                                :

                Plaintiff,                :

        -against-                         :       **MEMORANDUM AND ORDER**

AXA NETWORK, LLC, and                       :       07 Civ. 7767 (AKH) (KNF)
AXA ADVISORS, LLC,
                                                 :
            Defendants.
-----------------------------------------------------X
AXA NETWORK, LLC, and                       :
AXA ADVISORS, LLC,
                                                 :
          Counter Claimants,          :

        -against-                         :

STEVEN S. NOVICK,                                :

          Counter Defendant.          :
-----------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

       Before the Court is the plaintiff's motion for an order "[d]irecting Defendants to comply

with prior Orders of this Court, and to produce an Accounting demonstrating all revenue

generated by Plaintiff while in Defendants' employ."  The defendants oppose the motion.

***Plaintiff's Contentions***

       The plaintiff contends, in his memorandum of law, that "he was to be paid" in "Gross

Dealer Commissions" ("GDCs") by the defendants, and his forgivable January 15, 2003 loan

"was to be forgiven based upon production as calculated in GDCs."  He asserts that the

defendants' counterclaim for breach of the January 15, 2003 promissory note requires him to

"prove how much forgiveness [he] was entitled to."  He maintains that "the accounting"

1

produced by the defendants is deficient because it does not reflect what "he should have been paid," which can only be determined based on "the total revenues his book of business generated." According to the plaintiff, AXA Network, LLC's "head of commissions," Louis Polce, testified during his deposition that, "based upon what was produced by [the defendants,] a proper accounting was not possible," because the produced documents included what was paid to the plaintiff, but not the information about the transactions that generated the amount of the plaintiff's compensation. The plaintiff contends that, since the defendants' accounting fails to set forth the amount of business he generated, the defendants should be compelled "to either produce the information required to produce a complete accounting, or, admit that they cannot." In support of his motion, the plaintiff attached, improperly, various exhibits to his memorandum of law. The motion does not include any affidavit.

***Defendants' Contentions***

The defendants contend that they already provided plaintiff with an accounting, and his motion should be denied because the plaintiff "does not identify any instance where he was not credited with commissions according to the requisite schedules, and does not point out any revenue that was associated with him for which he was not properly credited." According to the defendants, the plaintiff failed to show that he should have been paid "by GDCs." Moreover, the plaintiff failed to show how GDC is defined, and his January 15, 2003 promissory note was "amended to remove the notion of 'GDC' from the equation governing 'forgiveness' of portions of the loan." The defendants contend that the plaintiff's "unsworn and mistaken assertions of 'incompleteness' [of the defendants' accounting] are no match for" the declaration of Margaret Hall ("Hall"), the Lead Director-Compensation, Analysis and Design for the defendants, submitted in support of the defendants' opposition.

2

Hall prepared the accounting produced to the plaintiff in June 2011.  She stated that the June 2011 production includes what the plaintiff sought at that time, namely, "all monies [the plaintiff] was paid while affiliated with [the defendants] from the various sources of his compensation."  According to Hall, the December 2011 accounting produced to the plaintiff includes "information about GDCs generated by the business he did while at [the defendants']," in compliance with the order of the assigned district judge to "produce 'revenues' from [the plaintiff's] business, in addition to what he was paid."  Hall provided, as Exhibit No. 5 to her declaration, "[s]ome representative pages, including the first and last pages, of the lengthy spreadsheet that was provided to [the plaintiff] at that time," which contains "a column listing GDCs, and each of the columns are totaled at the end."  Moreover, she stated, the documents produced to the plaintiff incorporate the plaintiff's "earnings, payments, and credits from the insurance business he did."  Hall stated that the documents provided to the plaintiff demonstrate what the plaintiff "should have" been paid.

***Plaintiff's Reply***

The plaintiff's counsel submitted his affirmation with various exhibits in reply.  Counsel's affirmation contains, improperly, arguments.  He contends that the exhibits attached to his affirmation show that the plaintiff was to be compensated "as a percentage of GDCs," namely, "the total of all revenues a book of business generates," and the exhibits submitted by the plaintiff on this motion demonstrate that.  According to the plaintiff's counsel, the first spreadsheet produced in 2011[1] "contained a column identified 'PCs' and the December

_____

[1] Although the plaintiff's memorandum of law contends that "on or about June 2011, Defendants produced a 3 inch binder purporting to be an accounting," the plaintiff's attorney in his reply affirmation contends that the defendants "provided two separate lengthy spreadsheets
(continued...)

spreadsheet contained a column for 'GDCs," and the defendants "never explained the differences between the two spreadsheets, such as the difference in length, the difference in date range, and the fact that the longer December spreadsheet appears to only list equities, while the shorter [earlier] spreadsheet also has insurance."  According to the plaintiff, he "never disputed that the accounting accurately demonstrates what he was paid, however, it does not demonstrate what his book of business generated."  Furthermore, the GDC column in the December 2011 spreadsheet is inaccurate.  That is so because for the plaintiff "to have been paid over $3 Million during his tenure, at the 50% and 42% payouts as the spreadsheet indicates, he would have to had . . . generate[d] over $6 Million in GDCs.  But if [the plaintiff] did generate over $6 Million in GDCs, then he would have reached three milestones toward forgiveness of his forgivable loan . . ., but Defendants allege he reached only one."  According to the plaintiff, the December 2011 spreadsheet indicates that under "Net Payout," he "was paid just $1,384,997.92[,] which is less than one half of what he actually was paid.  It is clear that figures are incorrect."

**_Legal Standard_**

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  "For purposes of this subdivision (a), an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  "If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's

---

[1](...continued)
on July 27, 2011," and "December 16, 2011."  The defendants contend in Hall's declaration that the accounting was provided to the plaintiff "in June 2011" and "December 2011."

reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).  However, "the court must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).  "If the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless "the motion is justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).  "Motions to compel . . . are . . . entrusted to the sound discretion of the district court." American Savings Bank v. UBS Paine Webber, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (quotation marks and citation omitted).

*Application of Legal Standard*

Although the plaintiff's counsel contends in his affirmation that the June 2011 spreadsheet produced by the defendants indicates that "[t]he total of the PC column . . . is $1,930,357.27," and, "[t]ogether with [the plaintiff's] POP payout of 60%, the total of [the plaintiff's] commission earned is just shy of $3.1 Million, so the numbers therein contained are likely accurate," he provides no evidence in support of these contentions.  Exhibit K to counsel's affirmation purports to be the "first and last pages" of the defendants' June 2011 spreadsheet, and consists of two unnumbered pages, taken from the defendants' Exhibit No. 4 to Hall's declaration.  Neither of the two pages contains "[t]he total of the PC column" indicating it is "$1,930,357.27" or any information supporting the contentions concerning the plaintiff's "POP payout of 60%" or that "the total of [the plaintiff's] commission earned is just shy of $3.1 Million."

5

Moreover, Hall stated in her declaration that the defendants' Exhibit No. 4 is "The Accounting" provided to the plaintiff and that "the far-right column (Column 'I') identifies the particular product involved in the particular transaction in each row."  However, the defendants' Exhibit No. 4 does not contain "the far-right column (Column 'I')"; the far-right column in the defendants' Exhibit No. 4 indicates "IOTC DESCRIPTION," and it does not contain any page indicating "1,930,357.27" as "[t]he total of the PC column," or any information concerning the plaintiff's "POP payout of 60%," or that "the total of [the plaintiff's] commission earned is just shy of $3.1 Million," as the plaintiff contends.  The plaintiff failed to present any evidence to support his contention that the December 2011 spreadsheet figures are incorrect because they show he "was paid just $1,384,997.92[,] which is less than one half of what he actually was paid," or that any discrepancy between the June 2011 spreadsheet and December 2011 spreadsheet establishes that the December 2011 spreadsheet is incomplete or incorrect, given that the June 2011 and December 2011 spreadsheets did not contain identical information and concerned different types of matters.

The plaintiff contends that the December 2011 spreadsheet, containing the GDC column, is incomplete and inaccurate because it fails to set forth the amount of business he generated for the defendants, but he provides no evidence of an instance of a particular and identifiable business he generated for the defendants for which he was not compensated or was compensated improperly.  Where the defendants' December 2011 spreadsheet contains the GDC data sought by the plaintiff and Hall stated that the December 2011 spreadsheet provides what the plaintiff "should have" been paid, the plaintiff's uncorroborated deposition testimony, the excerpts of which were submitted on this motion, that the figures produced by the defendants are inconsistent and do not reconcile with certain tax forms, is not sufficient to show that the

6

December 2011 spreadsheet is incomplete or inaccurate.  The plaintiff failed to convince the Court that the December 2011 accounting produced by the defendants is incomplete or inaccurate, and that granting his motion is warranted.

***Conclusion***

For the foregoing reasons, the plaintiff's motion to compel, Docket Entry No. 172, is denied.  It is ORDERED that:

(a)     on or before October 1, 2013, the plaintiff show, via affidavit or other competent evidence, that his motion was substantially justified or that other circumstances make an award of expenses unjust.  See Fed. R. Civ. P. 37(a)(5)(B);

(b)     on or before October 8, 2013, the defendants respond to the plaintiff's submission; and

(c)     on or before October 11, 2013, the plaintiff may reply.

Dated:  New York, New York
        September 24, 2013

SO ORDERED:

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

7