UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
STEVEN S. NOVICK,                                 :

        Plaintiff,                                    :

        -against-                                    :       **MEMORANDUM AND ORDER**

AXA NETWORK, LLC, and                             :       07 Civ. 7767 (AKH) (KNF)
AXA ADVISORS, LLC,
                                                      :
        Defendants.
------------------------------------------------------X
AXA NETWORK, LLC, and                             :
AXA ADVISORS, LLC,
                                                      :
        Counter Claimants,
                                                      :
        -against-
                                                      :
STEVEN S. NOVICK,
                                                      :
        Counter Defendant.
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

        On September 24, 2013, the Court denied the plaintiff's motion to compel an "[a]ccounting demonstrating all revenue generated by Plaintiff while in Defendants' employ." (Docket Entry No. 199). Before the Court is the plaintiff's motion for reconsideration of that order, pursuant to Local Civil Rule 6.3 of this court, which is opposed by the defendants.

*Plaintiff's Contentions*

        The plaintiff contends that: (1) the Court failed to "address the issue sought in the motion to compel an accounting," namely "whether or not the purported accounting reflects Mr. Novick's contracted-for method of compensation"; and (2) contrary to the Court's decision, the plaintiff "demonstrated that the December spreadsheet is inaccurate." With respect to his first

1

argument, the plaintiff contends:

> Judge Hellerstein stated that, if Mr. Novick was able to show him that documents existed that showed he was to be paid in GDCs, i.e. the "macro" compensation, he was willing to consider changing his mind as to what was to be included in the accounting required of Defendants. In other words, the accounting as provided would be considered sufficient unless Plaintiff could demonstrate he was supposed to be paid in GDCs. Mr. Novick brought this motion to accomplish exactly that. As part of his motion, and reply, he attached numerous documents to demonstrate that he was to be paid in GDCs. . . . While it is true that in the original motion, Mr. Novick did not point to any specific transaction where he was not paid according to AXA's Field Bulletins, it is Mr. Novick's claim that, based upon the foregoing, he can point to *every* transaction as one where he was improperly compensated.

The plaintiff asserts that all the documents attached to his motion to compel "clearly demonstrate that Mr. Novick was to be paid in GDCs, and not PCs and POP." He maintains that the "Court should rule on the original purpose of Mr. Novick's Motion to compel an Accounting, and find that the criteria of the accounting previously provided are inadequate."

With respect to the plaintiff's second argument, the plaintiff contends that the defendants' "December spreadsheet is inaccurate," and, contrary to the Court's finding that the "plaintiff failed to present any evidence to support his contention that the December 2011 spreadsheet figures are incorrect . . .[t]his is precisely what the Plaintiff demonstrated in the papers submitted to the Court." The plaintiff asserts:

> Attached [as] Exhibit J to his reply to the prior motion are Plaintiff's 1099s and W2s for the time period 2002 through 2006, while he was affiliated with AXA. Considering that Mr. Novick began his affiliation with AXA in November 2002, and the December Spreadsheet does not contain data prior to April 4, 2003. [sic] The December spreadsheet is clearly incomplete and therefore, incorrect. As stated in Plaintiff's original reply, and re-stated herein, the total of Plaintiff's pay for the time period he was affiliated with AXA was $3,073,646.47. According to Defendants' December spreadsheet, . . . Mr. Novick's "Net Pay" was $1,384,997.92. This fact alone demonstrates that the December spreadsheet is not accurate.

*Defendants' Contentions*

The defendants contend that the Court "squarely addressed the 'main point' of plaintiff's motion to compel an accounting, *i.e.*, whether or not the accounting reflects plaintiff's alleged contracted-for method of compensation," because, "[t[hroughout the Order, the Court recounts and evaluates the evidence and arguments submitted by both sides regarding GDCs," and considered the exhibits submitted on the motion. Moreover, the Court did not overlook the "plaintiff's argument that he was supposed to be compensated by special arrangement not governed by AXA's schedule," since the Court discussed the plaintiff's related contentions. Nor did the Court overlook the "plaintiff's argument that the December spreadsheet is purportedly inaccurate," and the Court "should not countenance plaintiff's continued efforts . . . to reargue points and evidence that previously were submitted to the Court." According to the defendants, the plaintiff failed to rebut the presumption that the Court considered the entire evidentiary record, and no reason exists to reconsider the order now.

*Legal Standard*

Local Civil Rule 6.3 of this court provides for a motion for reconsideration or reargument, requiring the movant to set forth, in a memorandum of law, "concisely the matters or controlling decisions which counsel believes the Court has overlooked. . . . No affidavits shall be filed by any party unless directed by the Court." Local Civil Rule 6.3.

> The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. . . . Admittedly, a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.
>
> Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

"To be entitled to reargument under Local Rule [6.3, the movant] must demonstrate that the court overlooked controlling decisions or factual matters that were put before the court on the underlying motion."  Ashley Meadows Farm, Inc. v. Am. Horse Shows Ass'n, Inc., 624 F. Supp. 856, 857 (S.D.N.Y. 1985).

*Application of Legal Standard*

The plaintiff fails to identify what part of Judge Hellerstein's previous ruling(s) the Court overlooked.  In particular, the plaintiff does not make citation to the record when he contends that Judge Hellerstein stated: "In other words, the accounting as provided would be considered sufficient unless Plaintiff could demonstrate he was supposed to be paid in GDCs."  The Court did not overlook any such explicit or implicit statement by Judge Hellerstein, because none exists in the record.  In determining the plaintiff's motion to compel, the Court considered, among other things, the following June 27, 2012 ruling made by Judge Hellerstein during colloquy with the plaintiff's counsel:

> THE COURT: Is there a writing reflecting an agreement between Mr. Novick and AXA wherein he would be compensated by this kind of what I call macro method of compensation.
> [PLAINTIFF'S ATTORNEY]: Yes.
> THE COURT: Show me.
> [PLAINTIFF'S ATTORNEY]: Unfortunately, I do not have the papers here, but there are - -
> THE COURT: If you get me to change my mind, as you know, I do change my mind. Until I am persuaded differently, I am ruling that those kinds of compensation on a macro basis for all the business done by AXA not attributable specifically to the business of any particular salesperson is not part of a particular salesperson's compensation, unless there is something in writing reflecting that it was negotiated for and obtained.  I don't believe there is such writing for Mr. Novick; therefore, I rule it's not part of the accounting . . . .
>
> THE COURT: . . . [F]ocus, a document reflecting an arrangement with respect to a specific mode of compensation you are talking about.

4

[PLAINTIFF'S ATTORNEY]: Not only will we produce documents, we will also produce the transcript testimony of their own people that indicate this.

(Docket Entry No. 148, pp. 31-32).[1]

The September 24, 2012 order did not overlook the "main point of Plaintiff's motion, that is, whether or not the purported accounting reflects Mr. Novick's contracted-for method of compensation," because the Court considered the parties' submissions, determining, in multiple instances, that the plaintiff failed to present evidence to support his various contentions.

Contrary to the plaintiff's contention in the instant motion that his Exhibit J, submitted in reply on his motion to compel, contains "Plaintiff's 1099s and W2s for the time period 2002 through 2006, while he was affiliated with AXA," Exhibit J contains what appears to be copies of tax forms from 2003 to 2009, and does not contain any 2002 tax forms. Also contrary to the plaintiff's contention in the instant motion that, "[a]s stated in Plaintiff's original reply . . . the total of Plaintiff's pay for the time period he was affiliated with AXA was $3,073,646.47," the plaintiff's reply papers do not so state. The reply affirmation by the plaintiff's counsel on the motion to compel states: "According to the W2s and 1099s provided by AXA in their June 2011 production, Mr. Novick was paid a total of $3,073,646.47 in 2003 through 2006, when he was terminated." In support of that statement, the plaintiff's counsel attached Exhibit J to his reply affirmation, which contains what appear to be copies of tax forms from 2003 to 2009. Thus, the purported "total of $3,073,646.47," was represented by the plaintiff's counsel on the motion to compel, to be the sum of unidentified amounts derived from Exhibit J's tax forms from "2003

---

[1]Despite the fact that the plaintiff's numerous exhibits were attached to his memorandum of law improperly and without any affidavit, a procedural flaw warranting their rejection, the Court did consider all the exhibits submitted by the parties in connection with the plaintiff's motion to compel.

through 2006," not "the total of Plaintiff's pay for the time period he was affiliated with AXA," which is alleged to be "the time period 2002 through 2006." Even assuming that "a total of $3,073,646.47 in 2003 through 2006" was an amount derived from certain rubrics of the tax forms contained in Exhibit J of the plaintiff's reply, that amount is erroneous.[2] The Court considered Exhibit J as well as all other exhibits submitted by the parties on the motion to compel before making its decision.

      The plaintiff appears to suggest that the Court overlooked Exhibit D in his reply on the motion to compel, which he contends is "Mr. Novick's formal offer of employment," and represents evidence that "he was to receive 55% of GDCs." As stated above, the Court did not overlook any evidence submitted on the motion to compel when determining the motion, but found the evidence insufficient to demonstrate that granting the plaintiff's motion to compel was warranted, the result with which the plaintiff now disagrees. The plaintiff concedes in the instant motion that he "did not point to any specific transaction where he was not paid according to AXA's Field Bulletins," and his attempt to do that now is meritless, because his motion for reconsideration is not a vehicle to reargue his motion to compel. See Shrader, 70 F.3d at 257.

---

[2] Exhibit J in the plaintiff's reply on his motion to compel contains what appears to be "W-2" and "1099-MISC" forms. The plaintiff's counsel did not represent that he has personal knowledge in connection with Exhibit J's tax forms or explain what rubrics he used when he calculated the purported total amount of "$3,073,646.47," or why he used certain rubrics, what certain rubrics mean, and what their relevance is, if any. The "W-2" forms contain the following amounts under the rubric "Wages, tips other comp.": "18483.60" for 2003, "168206.84" for 2004, "160935.91" for 2005, and "32919.00" for 2006. The "1099-MISC" forms contain the following amounts under the rubric "Nonemployee compensation": "218548.43" for 2003, "713422.07" for 2004, "776477.61" for 2005, and "984703.91" for 2006. Assuming that the plaintiff's counsel used the rubrics noted above in his calculation, the sum of the numbers from the "W-2" and "1099-MISC" forms for the period 2003 to 2006 is not, as the plaintiff's counsel represented, "$3,073,646.47."

6

*Conclusion*

The Court finds that the plaintiff failed to show that the Court overlooked any matters or controlling decisions in determining the plaintiff's motion to compel an accounting. Thus, the plaintiff's motion for reconsideration, Docket Entry No. 204, is denied.

Dated:  New York, New York  
        November 6, 2013

SO ORDERED:

*/s/ Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

stevennovick9.mo