UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
STEVEN S. NOVICK,                               :

                        Plaintiff,             :

            -against-                          :          **MEMORANDUM AND  ORDER**

AXA NETWORK, LLC, and                          :          07 Civ. 7767 (AKH) (KNF)
AXA ADVISORS, LLC,
                                               :

                        Defendants.
-----------------------------------------------------X
AXA NETWORK, LLC, and                          :
AXA ADVISORS, LLC,
                                               :

                        Counter Claimants,     :

            -against-                          :

STEVEN S. NOVICK,                              :

                        Counter Defendant.     :
-----------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

        On October 3, 2013, the Court granted the plaintiff's motion for sanctions, made pursuant

to Rule 37(b)(2) of the Federal Rules of Civil Procedure.  (Docket Entry No. 203).  Before the

Court is the defendants' motion, pursuant to Local Civil Rule 6.3 of this court, for reconsideration

of that order and vacatur of the Court's findings that: (1) "defendants' explanation of their search

for audio recordings is not credible"; (2) "defendants willfully disobeyed the June 27, 2012 and

September 7, 2012 discovery orders of U.S. District Judge Alvin K. Hellerstein (the 'District

Judge')"; (3) "defendants' counsel advised defendants to flout the District Judge's June 27, 2012

and September 7, 2012 discovery orders"; (4) "sanctions are warranted"; (5) "defendants shall bear

the costs associated with the anticipated depositions of Mike Rynicker, Rocco Tomesco, Jeff Press,

Joe Pirrone and Joel Miller, including reasonable attorneys' fees"; and (6) "plaintiff is entitled to recover the reasonable attorneys' fees he incurred in connection with his motion for sanctions, to be borne by defendants and their counsel in equal proportion."  The plaintiff opposes the defendants' motion.

**Defendants' Contentions**

> *Decision Is Based Erroneously on the Conclusion that the District Judge Previously Ordered the Defendants To Produce Audio Recordings*

The defendants contend that the Court "overlooked the fact that the District Judge never ordered defendants to produce audio recordings"; thus, the "defendants did not violate any discovery order of the District Judge, and therefore the imposition of sanctions was improper." More specifically, the defendants contend that the Court "erroneously characterized [its] directive as '[c]ompelling discovery that was ordered previously," although "there is no order of the District Judge requiring defendants to produce audio recordings," only "to identify how many recordings there were during the relevant period, to advise how many might need to be reviewed, and to confer and agree with plaintiff as to a reasonable process for the production of the same including costs."

> *Defendants Did Not Violate the June 27, 2012 or September 7, 2012 Discovery Orders*

The defendants contend that the Court's finding that they failed to obey the June 27 and September 7, 2012 discovery orders is erroneous, because the Court overlooked the fact that "the District Judge changed [the] July 13, 2012 deadline to July 27, 2012 just moments after he set it because July 13, 2012 was the deadline for plaintiff to identify those 10 individuals" in connection with whom audio records were being sought.  Moreover, the Court "did not consider, because it was not part of the exhibits to the motion, the July 24, 2012 order, which confirmed the July 27, 2012 deadline for defendants to identify the number of audio tapes recorded from June 1, 2006

2

through December 31, 2006 that include any of the ten individuals." The defendants contend that the July 27, 2012 deadline for the defendants to identify the number of audio recordings was not a subject of the plaintiff's motion, "which sought sanctions for spoliation of evidence, not for any alleged failure by defendants to comply with the July 27, 2012 deadline." Furthermore, the June 27 and July 24, 2012 orders "were superseded by [the] September 7, 2012 order." Since the defendants sent the plaintiff a letter on July 27, 2012, advising him of the status of their efforts to identify the number of audio recordings, no violation of the June 27 or July 24, 2012 order occurred. According to the defendants, their "July 27, 2012 letter should be part of the record on this motion," because it "demonstrates that defendants did not violate the June 27, 2012 order (one of the main reasons underpinning the [Court's] imposition of sanctions)."

> *The Court Overlooked the Fact that the Defendants Advised the Plaintiff Concerning "One Remaining Inquiry"*

The defendants contend the Court's finding that they failed to obey the September 7, 2012 order should be reconsidered, reargued and vacated, because the Court's finding that the defendants never advised the plaintiff about the results of the "one remaining inquiry" mentioned in October 5, 2012 letter is erroneous. The defendants maintain they did advise the plaintiff of the result of that inquiry "in a November 20, 2012 letter to the District Judge." Thus, the defendants did not violate the September 7, 2012 order by never following up with the plaintiff concerning their "one remaining inquiry." Moreover, it is unreasonable to punish the defendants for not seeking or receiving permission to extend the time to comply with the September 7, 2012 order because they "made diligent efforts prior to October 5, 2012" and continued to search "vigilantly" for the audio recordings.

*The Court Imposed Sanctions Without Affording the Defendants the Required Procedural Protections*

The defendants contend that the plaintiff's motion was for sanctions due to the alleged spoliation of audio recordings and "was brought because defendants had not found recordings that he requested and that the District Judge had directed defendants to identify." According to the defendants, they did not "explain how they had complied with the District Judge's June 27, 2012 and September 7, 2012 orders . . . because that was not an issue disputed or even raised by plaintiff." Since the "defendants only found audio recordings after plaintiff filed his motion for sanctions, plaintiff's reply affirmation changed the relief sought," requesting that the "defendants be compelled to produce the recordings and, only if 'unable to do so, they should be sanctioned and Plaintiff should be allowed to take further depositions to ascertain what would be contained therein.'" The defendants assert that they were not put on notice that they were subject to a sanctions motion for failing to produce audio recordings pursuant to an order of the district court, or to comply with the June 27, 2012 and September 7, 2012 orders. Had the defendants been on such notice, they would have submitted the July 27 and November 20, 2012 letters in opposition to the plaintiff's motion, showing that they complied with those orders. Since the defendants did not have an opportunity to be heard, the October 3, 2012 memorandum and order should be vacated.

*The Finding That the Defendants' Declaration Regarding Their Search "Strains Credulity" Is Unsupported*

The defendants contend that the Court's finding, that the testimony of Paul Yacyshyn "strains credulity," is unsupported. According to the defendants, the Court "emphasized what it found to be a 'flip-flop' in representations, because defendants represented at the June 27, 2012 conference that audio tapes exist." However, the defendants assert, that representation "was not based on defendants having searched for and found recordings, but rather on an understanding that

4

recordings were made as part of the normal business practices of AXA."  Thus, they maintain,

"requested recordings were not found and then lost, and then found again.  Rather, the boxes

containing the responsive - - and non-responsive - -recordings were only located after the motion

for sanctions."  Moreover, the Court did not conduct oral arguments on the motion, where it could

look the witness "in the eye and determine his credibility."  Since the defendants informed the

plaintiff about the result of their one remaining inquiry, they "should not be punished for continued

vigilance they properly exercised in continuing to search beyond the October 5, 2012 deadline."

Moreover, the Court "erroneously concluded that defendants purposefully hid audio recordings for

an extended period of time - - and therefore lied about it directly in corresponding with opposing

counsel and the District Judge - - but then, after receiving plaintiff's motion for sanctions, changed

tactics and 'found' them."

> *The Finding that the Defendants Willfully Disobeyed the Discovery Orders and That Counsel Advised Them To Do So Is Unsupported*

The defendants maintain that no evidence exists to support the finding that they wilfully

disobeyed the discovery orders and that counsel advised them to do so, because the evidence shows

that the defendants complied with the June 27 and September 7, 2012 orders.

> *The Court Overlooked the Effect of Prior Counsel's Death on the Defendant's Ability To Locate and Identify the Audio Recordings*

According to the defendants, the Court "gave no consideration or weight to the effect of

Mr. [Russell] Divak's death on defendants' ability to locate and identify the recordings."  They

contend that "[o]ne of the chief difficulties encountered by defendants in their effort to find audio

recordings was the sudden and untimely death of Mr. Divak, who had been spearheading the

effort," and with

> Yacyshyn stepping into the role as AXA's primary in–house counsel on this matter in August 2012, defendants continued to make diligent efforts to find audio recordings,

but these efforts of course necessarily were made without the benefit of Mr. Divak's first-hand knowledge of his recent efforts to locate them, and the burden that would be involved in identifying responsive recordings and producing them.

*In Ordering Both Production of Audio Recordings and Additional Depositions, the Court Ignored That the Plaintiff Sought Only One or the Other Remedy*

The defendants contend that the plaintiff, in his reply papers, requested remedies in the alternative, but "the Court went beyond the alternative framework of plaintiff's request and ordered that both production of audio recordings and the five additional depositions take place, all at defendants' expense." Furthermore, "the District Judge previously had rejected the notion of plaintiff conducting additional depositions." The defendants assert that, while they do not object to depositions going forward, it is not warranted that they should pay for the depositions. They request oral arguments and leave to file: (1) "an attorney affidavit submitting the July 27, 2012 and November 20, 2012 letters from defendants' counsel"; (2) "an affidavit from Mr. [Frank] Massa and/or Mr. [Mike] Gogliormelia regarding AXA's search for audio recordings"; (3) "an affidavit from a representative of Stroz Friedberg to explain the process and efforts made to comply with the order of production in the M&O [Memorandum and Order] and costs involved with this effort"; and (4) "affidavits from Mr. [Edward] Dane and Mr. Rynicker stating that their office telephone lines were not recorded during the requested period."

***Plaintiff's Contentions***

The plaintiff contends that the Court did not overlook any relevant matters. He asserts that the defendants' "contention, that they were not previously required to produce audio recordings is irrelevant, because they were previously ordered to produce information *about* the audio recordings, which was previously represented to this Court and Plaintiff to be in their possession." According to the plaintiff, the defendants failed to comply with the court orders "when they were unable to produce this information, and asserted that they were unable to locate *any* audio

recordings." Moreover, the fact that the defendants did not provide information about audio recordings until after the plaintiff's motion was made "is justification enough for sanctions," since it is "apparent that Plaintiff's Motion for Sanctions was the catalyst needed for the Defendants' renewed vigor to search the storage closet where the audio recordings were now located." Since in their opposition to the motion, filed on April 19, 2013, the defendants indicated they located the audio recordings, yet failed to produce them, "the Court already heard Defendants [sic] arguments and summarily denied same," warranting sanctions.

The plaintiff contends that sanctions were not imposed for the defendants' violation of the June 27, 2012 order because the decision "does not specifically state that it is imposing sanctions for violation of a specific Court Order." He maintains that, while the Court referred to the June 27, 2012 discovery order, the majority of the decision referred to the September 7, 2012 order, which "was unequivocally disobeyed" by the defendants. Given that the defendants' October 5, 2012 advice that no audio recordings existed was false, that fact "is sufficient to mean" that the September 7, 2012 order was violated.

The plaintiff asserts that the defendants failed to provide information concerning the "one further inquiry" by October 5, 2012, and even assuming they did, their representation, on October 5, 2012, and November 20, 2012, that no recordings exist, was false. The defendants' attempt to "portray their efforts to locate the recordings as problematic," does not make sense and is not plausible, because they contend in their motion that a "new In-House Counsel was able to make one (1) telephone call and the person he called (Mr. Massa) ironically knew who to call to find the recordings."

According to the plaintiff, the Court considered the fact that the plaintiff's new request for relief was contained in his reply and rejected the defendants' arguments, finding sanctions

7

warranted.  The defendants do not provide any rationale for reconsidering the Court's finding that the search for the audio recordings "strains credulity" and, even if their recitation of facts is true, it is irrelevant.  Moreover, the defendants provide no rationale to reconsider the Court's finding that the defendants willfully disobeyed the order.  The defendants' excuse that "only Mr. Divak might have known where the recordings were kept and therefore, they should not be sanctioned for being unable to find them when he died," should be rejected because it took only two telephone calls to find the audio recordings, and "it is hard to fathom why Mr. Divak could not have taken the same action."  The plaintiff contends that the Court is empowered to fashion sanctions it deems appropriate and, given that the defendants do not object to production of audio recordings or depositions, only to paying the cost of the plaintiff's motion and depositions, no ground exists to reverse the Court's decision.  Additionally, the plaintiff asserts, the defendants "have still failed to provide all audio recordings for the requested time period," and no circumstance exists warranting oral arguments.

### Defendants' Reply

According to the defendants, the plaintiff concedes that the Court overlooked the fact that the "defendants had not been ordered to produce audio recordings previously."  They contend that the Court's decision "specifically states that it is imposing sanctions for violation of specific orders - - the June 27 and September 7, 2012 orders."  Since the September 7, 2012 order was not "disobeyed," the "defendants should not be punished for their continued efforts to locate the audio recording," and they advised the plaintiff of the one remaining inquiry in their November 20, 2012 letter.  Moreover, the defendants "were denied the required procedural protections because they were not provided particularized notice that they would be sanctioned for failing to: (a) produce audio recordings pursuant to a (nonexistent) court order . . . , (b) obey the June 27, 2012 order, and

(c) obey the September 7, 2012 order."  Additionally, "counsel never received <u>any</u> particularized

notice that counsel was the subject of a sanctions motion."  The Court's finding that counsel

advised the defendants to disobey discovery orders was not based on any evidence.  The

defendants content that the Court "deferred any consideration of a spoliation sanction and there is

no evidentiary or legal basis on the current record to impose any sanction."

***Legal Standard***

      Local Civil Rule 6.3 of this court provides for a motion for reconsideration or

reargument, requiring the movant to set forth, in a memorandum of law, "concisely the matters or

controlling decisions which counsel believes the Court has overlooked. . . .  No affidavits shall be

filed by any party unless directed by the Court."  Local Civil Rule 6.3.

> The standard for granting [a motion for reconsideration] is strict, and reconsideration
> will generally be denied unless the moving party can point to controlling decisions or
> data that the court overlooked-matters, in other words, that might reasonably be
> expected to alter the conclusion reached by the court. . . .  Admittedly, a motion to
> reconsider should not be granted where the moving party seeks solely to relitigate an
> issue already decided.
>
> <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995).

"To be entitled to reargument under Local Rule [6.3, the movant] must demonstrate that the court

overlooked controlling decisions or factual matters that were put before the court on the underlying

motion."  <u>Ashley Meadows Farm, Inc. v. Am. Horse Shows Ass'n, Inc.</u>, 624 F. Supp. 856, 857

(S.D.NY. 1985).  A disagreement with a credibility determination is not a valid basis for a motion

for reconsideration.  <u>See</u> <u>Bennett v. Watson Wyatt & Co.</u>, 156 F. Supp. 2d 270, 272 (S.D.N.Y.

2001).

***Application of Legal Standard***

>*Decision Is Based Erroneously on the Conclusion that the District Judge Previously
Ordered the Defendants To Produce Audio Recordings*

The Court did not overlook "the fact that the district judge never ordered [the defendants] to produce audio recordings," because the Court did not find that the defendants violated an order by the district judge to produce audio recordings, which is apparent from the Court's analysis in the section of its memorandum and order entitled "failure to Obey Discovery Orders." (Docket Entry No. 203, pp.13-15). However, the defendants are correct that the Court "erroneously characterized [its] directive as '[c]ompelling discovery that was ordered previously.'" The Court stated:

>Compelling discovery that was ordered previously, at the defendants' expense, will ensure that the defendants will comply with the court's previous discovery orders and not benefit from their failure to comply with those orders, and it will serve as a strong deterrent to the defendants as well as others who may contemplate flouting discovery orders in the future.

Instead of stating "[c]ompelling discovery that was ordered previously," the Court meant to state: "Compelling discovery that was subject to the previous discovery orders." The Court's analysis of the defendants' failure to obey the discovery orders makes it clear that the Court did not make its findings under the erroneous assumption that the assigned district judge ordered the defendants to produce audio recordings previous to the June 27, 2012 and the September 7, 2012 orders. The above-mentioned statement in the section of the Court's memorandum and order entitled "Compelling Discovery and Ordering Depositions," while erroneous, does not show that the Court overlooked "the fact that the district judge never ordered them to produce audio recordings," or that the Court's erroneous statement might reasonably be expected to alter the conclusion reached by the Court.

10

*Defendants Did Not Violate the June 27, 2012 or September 7, 2012 Discovery Orders*

<u>June 27, 2012 Order</u>

The Court overlooked the fact that "the District Judge changed [the] July 13, 2012 deadline to July 27, 2012 just moments after he set it." The transcript of the June 27, 2012 hearing was submitted in opposition to the plaintiff's motion as Exhibit No. 14. During the June 27, 2012 conference, the assigned district judge directed the plaintiff to produce to the defendants "10 names that you search for issuance of writings," namely e-mail messages, "[b]y July 13." (Docket Entry No. 148, pp.15-16). The following colloquy ensued:

> THE COURT: Here is the ruling. The ruling is by July 13 or an earlier date, [the defendants' counsel] will write a letter to [the plaintiff's counsel], telling you how many audiotapes are in the period June 1, 2006 to December 31, 2006, with respect to the 10 individuals, hopefully a few. Then you will make an agreement on what has to be done. You could proceed by sampling particular audiotapes, you can choose a sample, recognizing that people won't know what's inside until they hear it, and that takes a lot of time, Or we can . . . supply a monitor, a neutral monitor to listen, with expenses shared and subject to taxation of costs to the winner of the case eventually. We can do a number of things. I am going to defer the obligation to do more than just identify with regard to the audiotapes. . . .
> [THE DEFENDANTS' COUNSEL]: If [the plaintiff's counsel] is to identify the same people by July 13, I would need to respond.
> THE COURT: July 27. At the time you make production of the emails, you will also let him know about the audiotapes. We are finished with both emails and audiotapes.
> (Docket Entry No. 148, pp. 20-21).

On September 14, 2012, the plaintiff provided the names of ten custodians whose e-mail messages the defendants were required to search and the names of "five people for which audiotapes are requested." (Docket Entry No. 175-1, p. 32). Four names from the list of "five people for which audiotapes are requested" were also the names included in the list of ten custodians whose e-mail messages the defendants were required to search, thus making July 27, 2012, the deadline for the defendants to advise the plaintiff about the audiotapes. Inasmuch as the Court overlooked the fact pertaining to the deadline by which the defendants were to advise the plaintiff about the

11

audiotapes, its conclusion that the defendants failed to obey the June 27, 2012 order is erroneous and cannot stand.

September 7, 2012 Order

The defendants do not indicate any matter the Court overlooked with respect to its determination that the defendants failed to obey the September 7, 2012 order, as explained in the October 3, 2013 memorandum and order.  Although the defendants contend that, contrary to the Court's finding that "the defendants never advised the plaintiff about the result of the 'one remaining inquiry to complete regarding [the audio recordings]," they did advise the plaintiff about "one remaining inquiry" in their letter, dated November 20, 2012, they concede that the November 20, 2012 letter was not submitted as part of the underlying motion.  Accordingly, the defendants' November 20, 2012 letter cannot be considered in determining the instant motion for reconsideration, because it is a factual matter that was not before the Court on the underlying motion.  See Ashley Meadows Farm, Inc., 624 F. Supp. at 857.

*The Court Imposed Sanctions Without Affording the Defendants the Required Procedural Protections*

The defendants do not identify any matter that the Court overlooked with respect to imposing sanctions.  Although the defendants contend the Court imposed sanctions "on defendants and their counsel without affording either the procedural protections required by law," they do not make citation to any authority involving the imposition of Rule 37 sanctions; instead, they rely on cases involving sanctions pursuant to 28 U.S.C. § 1927 and Rule 11 of the Federal Rules of Civil Procedure.  However, the plaintiff's motion was made under Rule 37(b)(2), and the Court imposed sanctions on the defendants and their attorney pursuant to Rule 37(b)(2), not 28 U.S.C. § 1927, Rule 11 or any other authority.  Rule 37(b)(2) provides explicit notice that the court "may issue further just orders," not limited to the sanctions enumerated in Rule 37(b)(2)(A) or those

12

specifically requested by the plaintiff.  See Fed. R. Civ. P. 37(b)(2)(A).  Moreover, Rule 37(b)(2)

requires "the disobedient party, the attorney advising that party, or both to pay the reasonable

expenses, including attorney's fees, caused by the failure, unless the failure was substantially

justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

Since the plaintiff's motion was made pursuant to Rule 37(b)(2), (Docket Entry No. 174), the

defendants and their counsel had both notice and an opportunity to be heard when they opposed the

plaintiff's motion.  The defendants do not make citation to any authority requiring the Court to

provide additional notice and opportunity to be heard in connection with a Rule 37(b)(2) motion.

Accordingly, the Court did not overlook any matter concerning the defendants' notice and

opportunity to be heard on the plaintiff's Rule 37(b)(2) motion, before imposing sanctions on the

defendants and their counsel.

> *The Finding That the Defendants' Declaration Regarding Their Search "Strains*
> *Credulity" Is Unsupported*

The defendants do not identify any matter that the Court overlooked in determining that the

defendants' contentions "strain credulity."  Their argument that the Court's finding "is

unsupported" is not a valid ground upon which a motion for consideration can be granted.  See

Bennett, 156 F. Supp. 2d at 272.

> *The Finding that the Defendants Willfully Disobeyed the Discovery Orders and That*
> *Counsel Advised Them To Do So Is Unsupported*

Similarly, the defendants fail to identify any matter that the Court overlooked in

determining that both the defendants and their counsel should be sanctioned pursuant to Rule

37(b)(2).

*The Court Overlooked the Effect of Prior Counsel's Death on the Defendant's Ability To Locate and Identify the Audio Recordings*

The defendants' contention, that the Court "improperly gave no consideration or weight to the effect of Mr. Divak's death on defendants' ability to locate and identify the recordings," is rejected, as meritless.  In their opposition to the plaintiff's motion, the defendants referred to the passing of their prior counsel in three instances.  First, in their memorandum of law in opposition to the plaintiff's motion, under the section "Relevant Facts," the defendants stated: "The search was complicated by the fact that AXA's in-house attorney who had been handling this matter died suddenly and unexpectedly in August of 2012."  (Docket Entry No. 186).  The defendants' arguments in their memorandum of law do not refer to this fact and their memorandum of law does not explain how or why the search for audiotapes was complicated by the fact that their attorney passed away.  Next, the defendants' counsel, Aime Dempsey, stated in her affirmation  that "the difficulties entailed, including the sudden and untimely death of the AXA in-house counsel who had been spearheading the effort, are described in the Declaration of Paul Yacyshyn, dated April 19, 2013."  (Docket Entry No. 191, ¶14).  However, Paul Yacyshyn, in his declaration, stated only the following with respect to the defendants' prior in-house counsel:

> When I was first assigned to this seven-year old case as in-house counsel, in August 2012 due to the sudden and untimely passing of the gentleman and colleague who had been working on this litigation since its inception in 2006, I was made aware of a June 27, 2012 court order requiring AXA to determine the existence, the number of hours, and method of storage, of audio recordings containing telephone conversation of Dane, Rynicker, Tomesco and Press for the period of time June 1, 2006 through December 31, 2006.
>
> (Docket Entry No. 185, ¶ 19).

Nowhere in the defendants' opposition to the plaintiff's motion did the defendants identify or explain what "the effect of Mr. Divak's death on defendants' ability to locate and identify the

recordings" was, or whether information on prior in-house counsel's search efforts and the results of those efforts was perhaps inaccessible or destroyed.  Consequently, the Court could not have overlooked such a matter, since it was not presented to it.  Accordingly, the Court did not overlook any matter related to the defendants' prior in-house counsel.

> *In Ordering Both Production of Audio Recordings and Additional Depositions, the Court Ignored That the Plaintiff Sought Only One or the Other*

The Court did not overlook the fact that the "plaintiff sought only one or the other" remedy, because the Court quoted the plaintiff's request for relief articulated in his reply to the defendants' opposition to his motion.

**Defendants' Request for Oral Argument and Leave to Submit Affidavits**

The Court denies the defendants' request for oral argument because it is neither necessary nor helpful as an aid to the Court in: (a) determining the instant motion; and (b) reconsidering the plaintiff's motion.  The Court denies the defendants' request for leave to submit the above-mentioned affidavits, because the defendants had an opportunity to submit those affidavits in opposition to the plaintiff's motion, but failed to do so.

**Conclusion**

For the foregoing reasons, the defendants' motion for reconsideration of the Court's October 3, 2013 memorandum and order, Docket Entry No. 219, is granted.  Upon reconsideration of the plaintiff's motion, the Court finds that: (a) the finding in the October 3, 2013 memorandum and order that the defendants violated the June 27, 2012 discovery order should be, and hereby is

vacated; and (b) the remaining findings and sanctions, as articulated in the October 3, 2013

memorandum and order do not need to be modified.

Dated:  New York, New York                SO ORDERED:
        December 6, 2013

                                           _/Kevin Nathaniel Fox_
                                           KEVIN NATHANIEL FOX
                                           UNITED STATES MAGISTRATE JUDGE