UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
STEVEN S. NOVICK,                             :

                Plaintiff,          :

          -against-                    :          **MEMORANDUM AND ORDER**

AXA NETWORK, LLC, and                    :          07-CV-7767 (AKH) (KNF)
AXA ADVISORS, LLC,
                           :
                Defendants.
----------------------------------------------------X
AXA NETWORK, LLC, and                    :
AXA ADVISORS, LLC,
                           :

              Counter Claimants,          :

          -against-                    :

STEVEN S. NOVICK,                             :

              Counter Defendant.          :
----------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

      Before the Court is the plaintiff's motion for sanctions, pursuant to Rule 37(b)(2) of the

Federal Rules of Civil Procedure, "consisting of the striking of Defendants' Answer and

Counterclaims, allowing negative spoliation inferences being made against Defendants, and the

imposition of a monetary fine and/or costs incurred by Plaintiff in relation to his repeated

attempts to obtain the at-issue discovery and failure to preserve same." The defendants oppose

the motion.

***Plaintiff's Contentions***

      The plaintiff contends that the defendants committed five "strikes" which justify his

request for sanctions, namely: (1) after five years of "vacillating about whether or not audio

recordings to which Plaintiff is entitled either exist or are relevant," the defendants notified him, in March 2013, that they "located the audio recordings, however, said audio recordings could not be listened to"; (2) in December 2012, the defendants produced "a total of only 156 e-mails, virtually all of which" were irrelevant, but promised to correct the mistake; (3) in January 2013, the defendants produced "4,202 e-mails, purporting to rectify the mistake, however," they only produced "e-mails they deem favorable to Defendants"; (4) pursuant to the September 25, 2013 order, the defendants produced "a hard drive containing approximately 102,000 e-mails, which e-mail exchange was wholly deficient and omitted e-mails that the Plaintiff maintains exist and/or previously existed"; and (5) on March 28, 2014, the defendants sent a letter "admitting that their e-discovery was deficient," without specifying the extent of the deficiency, "and even this 43,200 e-mail production did not satisfy Defendants' outstanding production requirements."

The plaintiff contends that the defendants have spoliated audio recordings because "audio recordings from the time period August 28, 2006 through November 5, 2006 (approximately one-third of the entire time period ordered) are missing," and "Defendants admit that they were likely erased and taped over." The defendants represented the following to the plaintiff, in their October 25, 2013 letter:

> Our forensic analysis to date reveals that any recordings subject to Magistrate's [sic] Judge Fox's Order for those dates between September 8, 2006 and November 5, 2006, and between August 28 and August 31, 2006, were copied to DVDs created on or before November 1, 2006. Assuming the recordings for these dates were copied to double-sided and separate DVDs, our forensic analysis indicates that seven (7) double sided DVDs were created on August 28, 2006, and on various dates between September 7 and November 1, 2006, which have not been located or otherwise accounted for. The next DVD in sequence, created on November 6, 2006, contained recordings for November 6-9, 2006 that were produced to you. Except for the seven (7) DVDs created on August 28, 2006, and on various dates between September 7 and November 1, 2006, our forensic analysis has confirmed that all other DVDs created that contain recordings subject to Magistrate Judge Fox's Order

have been located.  All of the recordings subject to Magistrate Judge Fox's Order contained on these DVDs were produced to you on October 17, 2013.

According to the plaintiff, "these recordings are from the most important time period of all – directly before and directly after Mr. Novick's termination."

Similarly, the plaintiff asserts, "Defendants have spoliated e-mails," because

[t]here are practically no e-mails scribed by Mr. Miller and/or Mr. Haspel to any of Mr. Novick's clients during the period of October 2006–May 2007; and practically no e-mails between the Millers and Mr. Haspel.  There was nothing regarding Georgette Geller and/or AXA's hiring process at the Stamford branch.  There was nothing regarding any discussion between Plaintiff and Mr. Joel Miller about continuing business operations.  Only a single e-mail was provided between Joel Miller and Plaintiff (and that was sent to Mr. Novick's personal e-mail address).

The plaintiff maintains that this is "inconceivable based upon the fact that the Millers and Mr. Haspel were involved with the 'triaging' of Mr. Novick's accounts, Mr. Pirrone was his assistant and Ms. Geller was his supervisor and also involved in pre-determination meetings."  The plaintiff contends that the defendants must "have spoliated e-mails of seven custodians after due notice to preserve same," since they insisted that "they have provided all e-mails."  The plaintiff maintains that the Court sanctioned the defendants previously but those sanctions "have fallen on deaf ears" and "[f]urther sanctions of the same import would be meaningless."  The plaintiff asserts that striking the defendants' answer and counterclaims is warranted.  Furthermore, "[o]wing to the exorbitant expenses Plaintiff has incurred relating to discovery in this matter, due in no small measure to the dilatory discovery tactics" of the defendants, the plaintiff asserts that monetary sanctions are warranted, consisting of reasonable attorney's fees expended in making each of the plaintiff's discovery-related motions to date, including the instant motion, but excluding the attorney's fees for the prior motion for sanctions which were already reimbursed by the defendants.   The plaintiff contends "it is warranted that he be permitted to re-take

3

depositions at the Defendants' expense, using e-mails that should have been available prior to the original taking of depositions." Additionally, the plaintiff "demands the production of all e-mail sent to or received from Joel Miller, Joseph Miller, Georgette Geller, Ned Dane, and Robert Jones from June 2006 through June 2007." The plaintiff asserts that he

> should be permitted to depose Christopher Barber, the supervisor of Larry Passaretti, who would be familiar with the supervisory duties, policies, and procedures of AXA, in addition to the lack of consequences against Mr. Passaretti from AXA for his involvement with selling away interests in a Ponzi scheme, his eventual resignation and the lack of interference from AXA in transferring his clients to a new firm, and the FINRA investigation against him from his activities with AXA.

**Defendants' Contentions**

The defendants contend that "no responsive emails have been withheld and there is no evidence that any emails are missing." According to the defendants, the plaintiff's allegations are without any evidentiary support and incorrect. For example, the defendants assert, "the 2013 and 2014 email productions contained more than 11,900 emails from Joel Miller and more than 6,050 emails from Max Haspel, and at least hundreds more from most of each of the other custodians." Moreover, the plaintiff provides no evidence that only a single e-mail message between Joel Miller and the plaintiff was produced. The defendants maintain that, "[w]hile there were some well-documented technical difficulties with [e-mail message] searches due to their complexity, defendants worked to overcome those difficulties, as soon as they discovered or learned of them, and believe they have all been resolved." The defendants contend that their "assessment of the vast majority of the emails most recently produced is that they are utterly irrelevant to the issues in this action," because "the email search (designed by plaintiff) was not targeted to any of the issues in the case, not because anything of relevance was withheld - it was not." The defendants assert that the plaintiff failed to establish by any evidence that their

4

"production is incomplete, let alone spoliated."

According to Jay Mason ("Mason"), a director in the Information Technology group at AXA Equitable Life Insurance Company, whose team was asked to collect e-mail messages of ten custodians employed or affiliated with the defendants, "[i]n March 2014, a question was raised regarding the number of emails in the email boxes of one of the custodians, Joseph Pirrone. It appeared that, even though Pirrone left the company in or about October 2006, there should have been more emails in his email box than there were, so my staff and I investigated." According to Mason, "due to human error," an archive database known as "Frontbridge" was not searched, and "[i]t is clear that there was a large group of emails from each [Joseph Pirrone, Joel Miller, Joseph Miller and Max Haspel] that was not included in their original email boxes sent . . . for searching and production." Mason asserts that "emails from the four custodians" were gathered "as quickly as possible, and sent to Case Central to have the search terms run."

The defendants "acknowledge that there are approximately eight weeks of audio recordings, within the period of time for which production of audio recordings was eventually ordered, that cannot be located or produced," but "[t]his is not a new issue," and the defendants advised plaintiff of it, on October 17, 2013, when the majority of the recordings were produced to him, and "[t]he fact that these weeks of recordings are missing constitutes the only real issue in plaintiff's sanctions motion." The defendants maintain that they "cannot now explain the absence of these recordings," or identify any person who had knowledge of their existence, despite their efforts to do so. The defendants assert that "Plaintiff has already received sanctions appropriate to remedy the missing recordings," when he was permitted to take depositions of five individuals, at the defendants' expense; however, he took only four depositions. The defendants contend that, "[w]hile it is true that the previous sanctions motion did not specifically

5

address the missing eight weeks of recordings, the parties believed, at the time plaintiff made his first motion for sanctions, that all of the recordings were missing." The defendants maintain that harsh sanctions are not warranted because "there is no evidence concerning when, why or how the eight weeks of audio recordings went missing, and there is similarly no evidence as to whether those recordings were 'destroyed.'" The defendants assert that their "inability to produce the eight weeks of recordings constitutes, at most, mere negligence," and "no more culpable state of mind can be shown or should be inferred." Moreover, the plaintiff "makes no showing that any missing recordings might in fact be relevant to his claims or defenses."

### Plaintiff's Reply[1]

In reply, the plaintiff contends that the defendants "cite no authority for their assertions that the rest of the discovery they have provided somehow mitigates their failure to produce this discovery." Moreover, the defendants are incorrect when they claim that they have already been sanctioned for spoliation because the October 3, 2013 order stated that ruling on spoliation at that time was premature, and the defendants were sanctioned "for violation of a previous discovery order (namely, the failure to provide information about the audio recordings)." The plaintiff asserts that "[e]ven if the recordings were negligently erased, as Defendants claim, that is sufficient for the imposition of sanctions for spoliation," because they "took no proactive steps to ensure this material was preserved" and "admit that a litigation hold memorandum was not

---

[1] In reply, the plaintiff submitted: (a) Exhibit FF, the plaintiff's affidavit, dated August 15, 2014; and (b) Exhibit GG, which is not identified or referenced. The plaintiff's affidavit includes, improperly, arguments and legal conclusions, as well as certain facts. However, the plaintiff's affidavit addresses solely matter contained in the plaintiff's memorandum of law and should have been submitted at the time of the plaintiff's motion, not in reply. Unidentified Exhibit GG is attached to the plaintiff's reply without any citation to it or explanation. Accordingly, the Court will not consider Exhibits FF and GG to the plaintiff's reply in determining the motion.

circulated until October 19, 2007," despite the plaintiff's October 2006 preservation request. The plaintiff contends that the defendants were at least grossly negligent and, since the assigned district judge and the Court already determined that the recordings were relevant when they ordered their production, no need exists to demonstrate relevance. Moreover, the defendants' assertion that the plaintiff failed to take full advantage of the depositions is erroneous, because "Defendants failed to tell this Court that when Plaintiff asked the witnesses about the contents of specific conversations that occurred, the answer that Plaintiff received was mostly, 'I don't recall.'" According to the plaintiff, "[i]t is undisputed that Defendants have made four separate e-mail productions in response to the Court's order – and each time stating that the production was complete." The plaintiff contends that the defendants failed to controvert his "assertion that there are no or virtually no e-mails between the individuals he identifies."

*Legal Standard*

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include . . . striking pleadings in whole or in part.

> Fed. R. Civ. P. 37(b)(2)(A)(iii).

> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

> Fed. R. Civ. P. 37(b)(2)(C).

"When a party seeks to frustrate [the discovery of evidence relevant to the claims and defenses asserted in an action] by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." Daval Steel Prods.

v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991).  Sanctions imposed under Rule 37(b)(2) must: (1) "be 'just'"; and (2) "relate to the particular claim to which the discovery order was addressed."  Id. at 1366.  "A party who flouts [discovery] orders does so at his peril."  Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir. 1988).  "The propriety of the discovery sought is not at issue at the time sanctions are being imposed under Rule 37(b).  That question will have been decided when the court ordered the discovery."  8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2289 (3d ed. 2010).

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).  Sanctions may be imposed for spoliation in violation of a court order under Rule 37(b) of the Federal Rules of Civil Procedure or for spoliation absent a violation of a discovery order under the court's "inherent power to control litigation."  Id.  However, "a particularized showing of bad faith [is required] to justify the use of the court's inherent power."  United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991).

> The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.  Once a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence.  The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis.

> Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) (internal citations omitted).

> Although a district court has broad discretion in crafting a proper sanction for spoliation, . . . the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.  The sanction

should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.   Outright dismissal of a lawsuit . . . is within the court's discretion.   Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party.   However, because dismissal is a drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.

West, 167 F.3d at 779-80 (internal brackets, quotation marks and citations omitted).

Alternative sanctions can be combined to protect the innocent party from prejudice.  See West, 167 F.3d at 780 (combining instructions directing the jury to presume certain facts and precluding the party who destroyed the evidence from offering evidence on the presumed facts).

"It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998).

[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001)).

"Just how much evidence is enough to support an inference about the content of destroyed evidence cannot be precisely defined, and will necessarily vary from case to case, but . . . 'care should be taken' not to require too specific a level of proof"; thus, "the level of proof that will suffice to support an inference in favor of the innocent party on a particular issue must be less

than the amount that would suffice to survive summary judgment on that issue." Kronisch,

150 F.3d at 128 (citation omitted).

***Application of Legal Standard***

      Audio Recordings

      On October 3, 2013, the Court: (a) determined that "[t]he defendants' duty to preserve

evidence arose when the plaintiff's counsel notified the defendants, in the October 16, 2006

letter, that the audio recordings should be preserved because they may be relevant to future

litigation"; and (b) directed the defendants to produce to the plaintiff, on or before October 17,

2013, "the audio recordings, as directed by the September 7, 2012 order, at their expense."

(Docket Entry No. 203). On October 17, 2013, the defendants produced to the plaintiff certain

audio recordings. However, the defendants concede that "there are approximately eight weeks

of audio recordings that are missing within the period for which defendants have been ordered to

produce audio recordings," namely the period of August 28-31, 2006, and September 8-

November 5, 2006, and they "have not been able to determine when, why or how these audio

recordings came to be missing from the group of other audio recordings that were stored on

DVDs and have been produced." The Court finds that: (i) the defendants created audio

recordings for the period August 28-31, 2006, and September 8-November 5, 2006; (ii) the audio

recordings for the period August 28-31, 2006, and September 8-November 5, 2006, have not

been produced because they are missing; and (iii) the defendants were unable to provide any

explanation for why or how these audio recordings came to be missing. Accordingly, the Court

finds that the defendants spoliated relevant evidence, namely, audio recordings for the period

August 28-31, 2006, and September 8-November 5, 2006.

Since the plaintiff alleged in his complaint that, "[i]n or around October 2006," the defendants terminated his employment "without provocation, review, or the opportunity to be heard," the period of time for which the audio recordings were spoliated coincides with the critical time period, at the heart of this litigation. The defendants' repeated failure to search for properly, locate and produce audio recordings to the plaintiff, as noted in the October 3, 2013 order, as well as their inability to account for the audio recordings' disappearance, suggests nothing other than deliberate conduct and a culpable state of mind. The Court finds that the defendants acted in bad faith because, after representing to the assigned district judge, during the June 27, 2012 conference, that the audio recordings exist, but "are not searchable," the defendants represented to the plaintiff, on November 20, 2012, that they "have investigated and have not located any audio recordings of the trading desk (where the individuals identified by plaintiff were located) from 2006." Thereafter, it was not until after the plaintiff made a motion for sanctions that the defendants searched for and located the existing audio recordings, and, not until after the Court ordered their production on October 3, 2013, that the defendants admitted that the audio recordings, covering the period of time critical to the plaintiff's claims, were missing. The defendants' delay in properly searching for, locating and producing relevant audio recordings and their conflicting representations to the court and the plaintiff about the existence of audio recordings prejudiced the plaintiff by: (i) preventing him from discovering facts material to the adjudication of his claims; (ii) causing him to incur unnecessary costs making his motion for sanctions and the instant motion; and (iii) prolonging the litigation.

Moreover, the defendants' misconduct respecting the audio recordings was compounded by their deliberate and unjustified failure to search for and locate e-mail messages, as directed by the September 25, 2013 order. The defendants now admit that it was not until March 2014, that

11

they realized that the Frontbridge archive was not searched for responsive documents, but contend this delay was "due to human error," without explaining what that error was or why they waited until March 2014 to conduct the investigation concerning the production of e-mail messages. The defendants' delay tactics with respect to producing e-mail messages and audio recordings, their lack of explanation for the "human error," as well as their inability to account for the missing audio recordings, warrant a finding of bad faith conduct.

E-mail Messages

Although the plaintiff asserts in his memorandum of law that: (a) "practically" no e-mail messages were produced between the plaintiff and Georgette Geller, Joel Miller, Joseph Miller and Joe Pirrone; (b) "there was a complete absence of any contact from Joe Pirrone to any of Mr. Novick's clients"; (c) no e-mail messages were produced "by Mr. Miller and/or Mr. Haspel to any of Mr. Novick's clients during the period of October 2006-May 2007"; (d) "[t]here was nothing regarding any discussion between Plaintiff and Mr. Joel Miller about continuing business operations;" (e) "[o]nly a single e-mail was provided between Joel Miller and Plaintiff; (f) "virtually no e-mails at all between Joel Miller and Joseph Miller" were produced; and (g) "virtually no e-mails between Max Haspel and Joel Miller," suggesting that the defendants have either "failed to properly provide discovery, or they have spoiled e-mails of seven custodians after due notice to preserve the same," no evidence was provided by the plaintiff in support of these contentions. Notwithstanding that the plaintiff failed to convince the Court that the defendants spoliated e-mail messages, the Court finds that the defendants acted in bad faith respecting the production of e-mail messages, as explained above.

Appropriate Sanctions for Spoliation of Audio Recordings

Although the plaintiff, in his memorandum of law, asserts repeatedly that the defendants

12

disobeyed court orders, he failed to identify any specific orders that were disobeyed, other than those the Court previously determined were disobeyed.  The defendants complied with the Court's October 3, 2013 order to the extent that they produced certain audio recordings to the plaintiff.  Even though the production of audio recordings was incomplete because certain audio recordings were missing, it cannot be said that the defendants failed to comply with the October 3, 2013 order; thus, sanctions pursuant to Rule 37(b)(2) are not warranted.

However, the Court finds that sanctions for spoliation are warranted pursuant to the Court's inherent powers, since the Court determined, as explained above, that the defendants acted in bad faith respecting their production of e-mail messages, employed delay tactics, caused substantial costs to be incurred by the plaintiff and wasted the Court's time.  See Int'l Bhd. of Teamsters, 948 F.2d at 1345.  Given that striking the defendants' pleadings is an extreme sanction, and in light of this circuit's "strong preference for resolving disputes on the merits," New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (quotation marks and citation  omitted), the Court will consider a less drastic sanction: the adverse inference jury instruction.

The plaintiff established that an adverse inference jury instruction for spoliation of audio recordings is warranted because: (1) the defendants had an obligation to preserve the audio recordings at the time they vanished; (2) the audio recordings were spoliated with a culpable state of mind, namely in bad faith; and (3) the audio recordings were relevant to the plaintiff's claims such that a reasonable trier of fact could find that they would support his claims.  See Residential Funding Corp., 306 F.3d at 107.  Moreover, the Court finds that combining an adverse inference jury instruction with monetary sanctions, namely the attorney's fees and costs the plaintiff incurred in connection with the instant motion, is warranted.  Additionally, in light of the defendants' delayed production of e-mail messages, the

13

plaintiff is entitled to re-take depositions, at the defendants' expense, to examine deponents he examined previously about the e-mail messages that should have been produced prior to the depositions ordered by the Court on October 3, 2013. The Court finds that these combined sanctions will serve to deter the parties from engaging in spoliation, place the risk of an erroneous judgment on the defendants and restore the plaintiff to the position he would have been in absent the defendants' wrongful spoliation of the audio recordings. The plaintiff's request to depose Christopher Barber ("Barber"), the supervisor of Larry Passaretti, is denied, because the plaintiff failed to explain the relevance of this deposition to the issues raised in this motion or why he did not depose Barber earlier.

### *Conclusion*

For the foregoing reasons, the plaintiff's motion, Docket Entry No. 245, is granted. The following sanctions are imposed: (a) an adverse inference jury instruction concerning spoliated audio recordings; (b) the award of the plaintiff's reasonable attorney's fees and costs incurred in connection with the instant motion, which are to be paid by the defendants; and (c) the retaking of the depositions ordered by the Court on October 3, 2013, at the defendants' expense, by November 7, 2014.

Dated: New York, New York  
      October 22, 2014

SO ORDERED:

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

14